

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

### CASE NO.: 9:14-cv-80009-KLR

**John Pinson,**

      Plaintiff

vs

**ALBERTELLI LAW PARTNERS LLC,**

A Florida LLC,

      Defendant    /

### PLAINTIFF PRO SE'S AMENDED RESPONSE IN OPPOSITION TO DEFENDANTS ALBERTELLI LAW PARTNERS LLC AND JAMES E ALBERTELLI PA'S RENEWED MOTION TO DISMISS

**TO THE HONORABLE JUDGE OF THIS COURT:**

**COMES NOW** the Plaintiff John Pinson, *pro se*, who hereby submits his amended response to the Renewed Motion To Dismiss ("MTD") pursuant to FRCP Rule 12 (b)(1) and 12(b)(6) filed by Defendants Albertelli Law Partners LLC ("ALP") and James E Albertelli PA ("JEA"), and states as follows:

### STATEMENT OF FACTS

1. On March 24, 2014, Plaintiff filed his amended verified complaint[1] ("AVC") with 18 page appendix against Defendants ALP and JEA.

2. On May 1, 2014, the Clerks office corrected a scanning error it had made on March 25, 2014, on Plaintiff's AVC where it missed scanning page 28 of 30. The Clerks Notice of Docket Correction re 19 appears as Docket Entry 23[2].

3. "Jurisdiction arises from a Federal question."[3]

4. On April 15, 2014, Defendants, ALP and JEA, filed their MTD.[4]

5. The MTD[5] was not signed by any attorney of record for Defendants, as required by FRCP Rule 11(a), yet the Certificate of Service required by LR 5.2(a) was signed.

---

[1] See DE 19.
[2] See DE 23.
[3] See DE 23 ¶ 5.
[4] See DE 22.

6. At a date <u>after</u> Plaintiff filed his AVC against the Defendants ALP and JEA, the individual Defendants appear to have attempted a merger[6].

7. Defendants ALP and JEA failed to address any merger in their MTD[7].

8. "This is an action brought for damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq.; and, for damages for violations of the Florida Consumer Collection Practices Act (FCCPA) FLA. STAT. §559 (Part VI); and for declaratory and injunctive relief."[8]

9. In their MTD, Defendants fail to deny they are ""debt collector[s]" as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6)"[9] as alleged in Plaintiff's AVC.

10. In their MTD, Defendants fail to deny that they "regularly uses the instrumentality of mail and telephone in a business the principal purpose of which is the collection of debts, and regularly attempts to collect debts alleged to be due another"[10] or "regularly collects or attempts to collect debts from consumers"[11] or that "[a]t all times material to the allegations of this Complaint, DEFENDANTS were acting as debt collectors with respect to collection of Plaintiffs alleged debt"[12].

11. Defendants fail to deny Plaintiff "is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), Fla. Stat. § 559.55(2) and Fla. Stat. § 501.203(7)"[13] as alleged in Plaintiff's AVC.

12. Defendants fail to deny "[a]ny alleged debt herein is defined as a consumer debt under 15 U.S.C. § 1962a(5)"[14]

13. Defendant ALP has failed to file its corporate disclosure under FRCP 7.1.

14. Defendant JEA has failed to file its required corporate disclosure under FRCP 7.1.

15. "Plaintiff *pro se* contends that the Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect an alleged but nonexistent debt and knowingly making false assertions of ownership in relation to the debt."[15]

---

[5] See DE 22.
[6] http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2014%5C0408%5C0076915.Tif&documentNumber=P07000089088
[7] See De 22.
[8] See DE 23 ¶ 1.
[9] See DE 23 ¶ 12-13.
[10] See DE 23 ¶ 17.
[11] See DE 23 ¶ 18.
[12] See DE 23 ¶ 19.
[13] See DE 23 ¶ 11.
[14] See DE 23 ¶ 20.

16. "The Defendants are 3rd Party Debt Collectors located in the United States of America and as such are governed under the law by the Fair Debt Collection Practices Act 15 U.S.C. §1692, et seq."[16]

17. "The State of Florida abides by and adheres to these laws. Specifically the FDCPA 15 U.S.C. §1692, et sec. and also the Florida Consumer Collection Practices Act ("FCCPA") Fla. Stat. §559 et sec., and as such the Defendants are governed under these laws."[17]

18. "The communications in question here are all related to the collection of a[n un-validated alleged] consumer debt."[18]

19. "The communications from DEFENDANTS failed to use the true names of DEFENDANTS and by utilizing any other name was contrary to the form of 15 U.S.C. § 1692e(14)."[19]

20. "The Defendant failed to cease collection efforts after receipt of Pinson's two written demands for validation, and contrary to 15 U.S.C. §1692g(B), DEFENDANTS continued attempts to collect on a disputed and non-existent alleged debt from consumer without any validation or verification of the alleged debt."[20]

21. "Any alleged debt is not in question here. But the fact as to how it was or was not validated and wrongful actions of the DEFENDANTS in an attempt to collect an alleged debt, violated rights of the Plaintiff and the laws as outlined in the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. and the Florida Consumer Collection Practices Act ("FCCPA") Fla. Stat. §559 et sec."[21]

22. Plaintiff *pro se* did demand proper validation under the FDCPA of alleged debt, and defendants failed to provide the same notwithstanding Plaintiffs written dispute and demand.

23. ALP and JEA threatened Plaintiff and attempted to collect and falsely represented they had taken a legal action; a legal action they could not and were legally not entitled to take.

24. Plaintiff *pro se's* FDCPA and FCCPA claims are based on the **wrongful actions of defendant**, not whether or not a valid debt existed.

25. Plaintiff did not state letter from Chase was the initial attempt to collect.

26. Plaintiff believed Defendants MTD was filed in bad faith and for improper purpose.

---

[15] See DE 23 ¶ 3.
[16] See DE 23 ¶ 22.
[17] See DE 23 ¶ 23.
[18] See DE 23 ¶ 24.
[19] See DE 23 ¶ 25.
[20] See DE 23 ¶ 44.
[21] See DE 23 ¶ 21.3

## STANDARD OF REVIEW

27. "When considering a motion to dismiss, all facts set forth in the plaintiffs complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting Lopez v. First Union Nat 'l Bank of Fla., 129 F.3d 1186, 1189 (11th Cir. 1997)).

28. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," Id. At 555, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* At 570.

29. "[T]he accepted rule for appraising the sufficiency of a complaint is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Trustees of Hotel Indus. Pension Fund v. Carol Mgmt. Corp., 880 F. Supp. 1548, 1552 (S.D. Fla. 1995) (quoting Conley, 355 U.S. 41,47 (1957)).

30. The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". *Friends of Lake View School District v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009). While "mere labels and conclusions" will not satisfy a plaintiff's burden, there is no need for detailed factual allegation or specific facts that describe the evidence to be presented. Id. A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". *Ashcroft v. Iqbal*, 129 W.Ct, 1937, 1950 (2009).

31. Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ARGUMENTS AND AUTHORITIES

32. To bring these matters in controversy before the Court, the Plaintiff *pro se* did file his AVC[22] outlining statements of fact that point to documents, as evidence of violations, that are appended[23] to his AVC and which the defendant fails to allege as being untrue.

33. In their MTD the Defendants fail provide case law setting forth the elements of the Fair Debt Collection Practices Act or the Florida Consumer Collection Practices Act and explain, with citation to case law, how the AVC does not meet these standards.

34. Additionally, the Defendants ALP and JEA, simply complain about procedural deficiencies and substantive deficiencies in Plaintiff *pro se's* AVC, but fails to refute or deny any of the Plaintiff *pro se's* factual allegations or contentions, and appended documents as fact evidence.

35. Further, the Defendants simply complain Plaintiffs AVC "riddled with vague assertions and conclusions of law"[24], yet Defendants fail to identify with specificity exactly what assertions they allege are vague or identify any conclusions of law.

36. It is inconceivable how Defendants can allege the AVC "routinely parrots the statute without providing any notice … of which communication violated which statute".[25]

37. Plaintiff clearly and concisely articulates, in his AVC, specific fact statements such as "[t]he December 24, 2013 DEFENDANTS communication's representation was false and misleading regarding the character, amount, and/or legal status of the alleged debt, and contrary to 15 U.S.C. §1692e(2), in that the alleged debt was not validated"[26] or "[t]he August 13, 2013, letter from DEFENDANTS failed to disclose to consumer per FDCPA 15 U.S.C. §1692e(10) "that the communication is from a debt collector" and that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose"."[27]

### Alleged Procedural Deficiencies

38. Defendants complain that "[u]nder the circumstances, a finding of an FDCPA violation is a pre-requisite for a finding of an FCCPA violation, because the two-count complaint

---

[22] See DE 23.
[23] See DE 23.
[24] See DE 22 ¶ 5.
[25] See DE 22 ¶ 5.
[26] See DE 23 ¶ 38.
[27] See DE 23 ¶ 30.

consistently intertwines facts that arguably serve as the basis for the allegations."[28] This presumably refers to the statement "Plaintiff alleges, restates, and incorporates by reference the information in all the paragraphs of this complaint as though fully stated herein."[29]

39. Plaintiff contends that the Defendant's vague and unsupported assertions fail to show exactly how a "FDCPA violation is a pre-requisite for a finding of an FCCPA violation"[30]

40. Defendants allege "conclusions of law" but Plaintiff *pro se* argues this is baseless as Defendant fails to identify what might be a conclusion of law and fails to state how it/they might be a conclusion of law. Moreover, since the FCCPA mirrors the FDCPA, and since the Plaintiff's FCCPA claims mirror plaintiff's FDCPA claims, it is relevant that the FDCPA allegations and factual allegations were restated under FCCPA in full, and that the FCCPA allegations and factual allegations were restated under FDCPA in full.

41. The Defendants merely allege the "FCCPA is narrower in scope than the FDCPA"[31]. Here Plaintiff argues that it is undisputed that: the FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute. *See* FLA. STAT. § 559.552 ("In the event of any inconsistency. . . the provision which is more protective of the consumer or debtor shall prevail.") Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement—that a[] "... debt collector" could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA. *See* *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

Alleged Substantive Deficiencies

A.  Alleged failure to state a cause of action under FDCPA and FCCPA

42. Defendants allege Plaintiff *pro se* failed to state a claim for various reasons and attempt to argue Plaintiff *pro se's* AVC should be held to the pleading standard of Bar licensed professional attorneys. Plaintiff *pro se* argues this is not the case.

43. Regarding *pro se* litigants the Court's findings are clear that "... the right to file a lawsuit *pro se* is one of the most important rights under the constitution and laws." *Elmore v.*

---

[28] See DE 22 ¶ 14.
[29] See DE 23 ¶ 47 & 61.
[30] See DE 22 ¶ 14.
[31] See DE 22 ¶ 13.

*McCammon* (1986) 640 F. Supp. 905. "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights." *Sherar v. Cullen*, 481 F. 2d 946 (1973).

44. "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. *Conley v. Gibson*, 355 U.S. 41 at 48 (1957).

45. "Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519 (1972).

46. "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 (1938).

47. In his first AVC, the Plaintiff *pro se* alleges claims for violations of FDCPA and FCCPA by the Defendants ALP and JEA; claims for which relief can be granted.[32]

48. Plaintiff *pro se* has listed factual allegations backed up with undisputed fact evidence appended to the AVC which the Defendants fail to refute the validity thereof.

49. An FDCPA claim has nothing to do with whether any underlying alleged debt is valid. An FDCPA claim concerns the methods of collecting the alleged debt. It does not arise out of any alleged transaction creating the alleged debt. *See Azar v. Hayter*, 874 F. Supp. 1314 (N.D. Fla. 1995).

50. The violations alleged in the complaint are based on Defendants' actions, omissions, methods of attempting to collect on alleged, un-validated debt; any alleged debt is not at issue here.

**THE FDCPA - 15 U.S.C. §1692 et. seq.**

51. Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote

---

[32] See DE 23 generally.

consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f. The FDCPA applies to "debt collectors," as defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Title 15 U.S.C. 1692e generally prohibits the use of any false, deceptive, or misleading representations or means to collect a debt. 15 U.S.C. § 1692e. *See Acosta v. Campbell*, Court of Appeals, 11th Circuit 2009

**THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.**

52. The FDCPA, 15 U.S.C. § 1692, et seq., is a strict liability statute, *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997): *see also Irwin v. Mascoti*, 112 F. Supp. 2d 937 (N.D. Cal. 2000): *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax, A.R.S.*, 74 F. 3d 30, 33-34 (2' Cir. 1996).

**THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER DEBTORS.**

53. The FDCPA is a remedial statute. *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F 3d 385, 392 (5th Cir. 2002). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F. 3d 1107, 1117 (20th Cir. 2002).

**THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.**

54. The FDCPA is to be interpreted "under an unsophisticated or least sophisticated consumer standard." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Sir. 2009) (*quoting Gaswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004); *Taylor v Perrin, Landry,*

*deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). The court must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami v. Am. Collections Inter., Inc.*, 377 F.3d at 495. The FDCPA was passed to eliminate "abusive, deceptive, and unfair debt collection practices." *Barany-Snyder v. Weiner*, 539 F.3d 327,332 (6th Cir. 2008) (citing IS U.S.C. § 1692(a)). Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). The least sophisticated consumer test is objective and is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F. 3d 433, 438 (6th Cir. 2008) (quotations and citation omitted). Claims under the Fair Debt Collections Practices Act adhere to the unsophisticated consumer standard. See *Grammon v. GC Services Ltd. Partnership*, C.A. 7(111)1994, 27 F. 3d 1254, on remand 162 F. R. D. 313.

## THE FDCPA PROTECTS CONSUMERS FROM DEBT COLLECTOR MISCONDUCT

55. The "Act is primarily a consumer protection statute, and we have consistently interpreted the statute with that congressional object in mind." *Jacobson v. Healthcare Fin. Servs., In*c., 516 F.3d 85 (2nd Cir. 2008).   The FDCPA is "an extraordinarily broad statute" and must be enforced "as Congress has written it." *Frey v. Gangwish*, 970 F.2d 1516 (6th Cir. 1992).   The FDCPA should be construed to accomplish the regulatory goals intended by Congress. *Ayala v. Dial Adjustment Bureau, Inc.*, 1986 U.S. Dist. LEXIS 30983 (D. Conn. Dec. 4, 1986). "The Sixth Circuit has described the statute as 'extraordinarily broad' and its terms must be literally enforced." *Deere v. Jvitch, Block & Rathbone L.L.P.*, 413 F. Supp. 2d 886 (S.D. Ohio 2006).

56. "The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).   "[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists." *Keele v. Wexler*, 149 F/3d 589. 594 (7th Cir. 1998).

57. A non-debtor who was subjected to abusive collection tactics may not maintain an action for violations of § 1692c(c), since that section is limited to violations directed at a "consumer" as

defined in the Act, but may maintain an action for violation of §§ 1692d and 1692e, which have no such limitation and therefore apply to anyone who is the victim of prescribed misconduct. *Montgomery v. Huntington Bank & Silver Shadow Recovery, Inc.*, 346 F.3d 693 (6th Cir. 2003).

**FCCPA**

58. The FCCPA is Florida's counterpart to the FDCPA. It provides additional protections and is preempted to the extent that it conflicts with the FDCPA. Both statutes define "debt" in exactly the same manner. FLA. STAT. § 559.55(1); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1187 n.2 (11th Cir. 2010).

59. The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute. See FLA. STAT. § 559.552 ("In the event of any inconsistency. . . the provision which is more protective of the consumer or debtor shall prevail.") Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement—that a[] "... debt collector" could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

**<u>Count I - Plaintiff's FDCPA Claim</u>**

60. In Count I of the AVC, Plaintiff *pro se* alleges a claim for violations of the FDCPA. The Plaintiff *pro se* must prove the following essential elements to support a claim for 15 U.S.C. §1692 against each defendant: (1) the plaintiff has been the object of debt-collection activity arising from an alleged consumer debt; (2) the defendant is a debt collector under 15 U.S.C. § 1692a(6); and (3) the defendant has violated, through acts or omissions, §1692 of the FDCPA. The complaint provides defendant with fair notice of the claim. *See Brooks*, 578 F.3d at 581. Plaintiff *pro se's* verified complaint provides more than labels and conclusions and is more than a formulaic recitation of the elements of an FDCPA claim, and further the AVC offers appended documents as fact, further evidencing his claim.

61. In support of his claim for FDCPA violations, Plaintiff *pro se* made the following factual allegations for each element: (1) That Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), Fla. Stat. § 559.55(2) and Fla. Stat. § 501.203(7)[33], and that Plaintiff *pro*

---

[33] See DE 23 ¶ 11, 24.

*se* was threatened in a written communication[34] by Defendants with a collection action[35] wherein defendants stated "THIS IS AN ATTEMPT TO COLLECT A DEBT"[36]; (2) Defendants are "debt collector[s]" as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6)[37], Defendants indicated in writing that it is acting on behalf of Chase; (3) the defendant has violated, through acts or omissions, §1692 of the FDCPA. "Defendants' violations include, but are not limited to, the following:"[38]

62. Violation of 15 U.S.C. §1692g: "Pinson did not receive from Defendants the required FDCPA 15 U.S.C. §1692g disclosure notice within five day of the initial communication from Defendants, or at any time thereafter"[39]. Even as of this date the Plaintiff *pro se* has failed to receive a Validation Rights Notice under 15 U.S.C. §1692g from and named Defendant. This was a violation in that Defendants failed to provide consumer Pinson with a written 30-day notice of validation rights and the right to dispute the debt.

63. At no time was Plaintiff received a 1692g validation rights notice from any of the Defendants.

64. "Section 1692g of the FDCPA requires that a debt collector send a validation notice to the debtor, informing the debtor that he or she has thirty days to dispute the debt and to request the name and address of the original creditor." *Elliot v. GC Servs., LP*, No. 8:10-cv-1976-T-24TBM, 2011 WL 5975671, at *4 (M.D. Fla. Nov. 28, 2011). The courts have determined that the notice must be provided in a manner that effectively communicates its contents to the least sophisticated of consumers. *See Ellis v. Solomon & Solomon, PC.*, 591 F.3d 130 (2d Cir. 2010). ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."); *Sims v. GC Servs. L.P.*, 445 F.3d 959 (7th Cir. 2006). (The unsophisticated consumer standard applied. Since the FDCPA is a strict liability law, the good or bad intent of the debt collector is immaterial.); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982). (Applies unsophisticated consumer standard. Also, a consumer need not dispute the validity of a debt to recover for a failure to provide a proper notice of validation rights provided by § 1692g.).

**August 13, 2013 Letter**

---

[34] See DE 23 ¶ 39-42.
[35] See DE 23 pages 25-30.
[36] See DE 23 pages 25, 28.
[37] See DE 23 ¶ 12, 13, 22.
[38] See DE 23 ¶ 50.
[39] See DE 23 ¶ 31.

65. Defendants attempt to argue that the August 13, 2013, letter did not violate FDCPA and cite Parker v. Midland Credit Management, Inc., Dist. Court, MD Florida 2012. In the Parker case the communication in question was "Informative" because it was required to be sent by the FCCPA and as such did not violate the FDCPA. Plaintiff argues this is not the case here.

66. In Parker, the Court found: For the FDCPA to apply, however, two threshold criteria must be met. First, the defendant must qualify as a "debt collector," an issue which is not disputed here. The parties agree that Defendant is a "debt collector" under the statute. … Second, the communication by the debt collector that forms the basis of the suit must have been made "in connection with the collection of any debt." Plaintiff has met the two threshold criteria.

67. Here the Plaintiff clearly argues the letter sent by Defendants on August 13, 2013, was sent "in connection with the collection of any debt".[40] The fact that it was sent in response to Plaintiff's demand for validation has nothing to do with Defendants requirements under the FDCPA, including noticing Plaintiff that Defendants are "debt collectors".

68. In Parker the Court concluded:

> The Court would like to see a bright-line rule adopted by the Circuits on this issue, so that cases like the instant case are prevented in the future. A letter, such as the one at issue here, that merely informs a debtor of the assignment of her debt, provides the debtor with the new information, and clearly states that the letter is not an attempt to collect a debt should stand as an example of a letter that does not constitute a communication in connection with the collection of a debt in violation of the FDCPA.
> Parker v. Midland Credit Management, Inc., Dist. Court, MD Florida 2012[41]

69. Plaintiff argues that Defendants August 13, 2013, letter could not be construed as an informative letter and as such is subject to the requirements of the FDCPA.

70. Violation of 15 U.S.C. § 1692g(B): "The Defendant failed to cease collection efforts after receipt of Pinson's two written demands for validation, and contrary to 15 U.S.C. § 1692g(B), DEFENDANTS continued attempts to collect on a disputed and non-existent alleged debt from consumer without any validation or verification of the alleged debt."[42]

---

[40] See DE 23 page 20.

[41] http://scholar.google.com/scholar_case?case=4743733837112814131&q=Parker+v.+Midland+Credit+Management&hl=en&as_sdt=40003&as_ylo=2010

[42] See DE 23 ¶ 44.

71. <u>Violation of 15 U.S.C. §1692f(6)</u>: In a written communication Defendant stated "Please be advised that we may not be able to cancel the foreclosure sale…"[43], yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase did not own the alleged debt and defendants do not refute that fact. Defendants threatened to unlawfully take consumer Pinson's property, and "was a false assertion of a legal right to collect"[44].

72. <u>Violation of 15 U.S.C. §1692f(1)</u>: Even though the defendant's communication states "You should verify … the amounts due and owing to ensure that these items are correct"[45], the defendant threatens "Please be advised that the [foreclosure] action will continue until the total reinstatement amount is received, in compliance with the terms in this letter"[46]. These statements appear contradictory, notwithstanding the fact that the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase did not own the alleged debt and defendants do not refute that fact.

73. <u>Violation of 15 U.S.C. §1692e(14)</u>: Plaintiff *pro se* has received debt collection communications from: "Albertelli Law" a name other than the true name of debt collector.

74. <u>Violation of 15 U.S.C. §1692e(11)</u>: The initial communication from Defendants was the August 13, 2013 letter asserting CHASE owned the debt and had authorized Defendants to collect on their behalf.[47] At that time the Plaintiff was not notified Defendants were "debt collector[s]" and that "any information obtained will be used for that purpose" even though the letter attempted to collect information on consumer by encouraging Plaintiff to call Defendant[48] . Further, the Defendants December 24, 2013 subsequent communication[49] fails to state it is a "communication from a debt collector", stating "we 'may be' considered a debt collector", not in the form prescribed by the FDCPA. This was a violation in that Defendant failed to disclose it was a debt collector in the initial communication and further failed to disclose it was a debt collector in subsequent communications.

---

[43] See DE 23 pages 25,28..
[44] See DE 23 ¶ 35.
[45] See DE 23 page 27, 30.
[46] See DE 23 page 29.
[47] See DE 23 ¶ 20.
[48] See DE 23 ¶ 20.
[49] See DE 23 page 25-30.

75. <u>Violation of 15 U.S.C. §1692e(10)</u>: The initial communication from Defendants was the August 13, 2013 letter asserting CHASE owned the debt and had authorized Defendants to collect on their behalf.[50]  At that time the Plaintiff was not notified Defendant was a "debt collector" and that "any information obtained will be used for that purpose" even though the letter attempted to collect information by encouraging Plaintiff to call Defendant[51].

76. Additionally, in its communications Defendants asserted Plaintiff was in foreclosure more than once when there was no foreclosure action; this was a false representation. In a written communication defendant stated "we may not be able to cancel the foreclosure sale"[52].

77. <u>Violation of 15 U.S.C. §1692e(2)</u>: In written communication defendant stated "we may not be able to cancel the foreclosure sale"[53]. Thus, defendants falsely represented the character, amount or legal status of the [alleged] debt to consumer in written communications.

78. <u>Violation of 15 U.S.C. §1692d</u>: Plaintiff received multiple communications stating a foreclosure action had been commenced against him, where the fact is that none was filed, and thus this action, as others, naturally harassed, oppressed and abused the Plaintiff, and this unfair and deceptive conduct was unnecessary on the part of Defendants.

79. Congress included this general proscription in recognition of its inability to foresee every conceivable abusive debt collection method. According to the Senate report: "this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."[54] Consequently, a collector might violate the general proscription even though its conduct falls outside the specific listed activities.[55] *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051 (C.D. Cal. 2009); *Bank v. Pentagroup Fin., L.L.C.*, 2009 WL 1606420 (E.D.N.Y. June 9, 2009); *Cirkot v. Diversified Sys., Inc.*, 839 F. Supp. 941 (D. Conn. 1993); *Grassley v. Debt*

---

[50] See DE 23 page 20.
[51] See DE 23 page 20.
[52] See DE 23 page 25, 28.
[53] See DE 23 page 25, 28.
[54] See S. Rep. No. 382, 95th Con g., 1st Sess. 4, at 4, reprinted at 1977 U.S.C.C.A.N. 1695, 1696
[55] H.R. Rep. No. 1202, 94th Cong., 2d Sess. 7 (1976); H.R. Rep. No. 131, 95th Cong., 1st Sess. 13 (1977) ("[t]his section provides a general rule prohibiting any debt collector from harassing or intimidating any person in connection with the collection of any debt or the threat or attempt to do so. Six examples of what constitutes harassment or intimidation are enumerated. These examples do not limit the general application of this rule against harassment or intimidation."); FTC Official Staff Commentary § 806-1.

_Collectors, Inc._, 1992 U.S. Dist. LEXIS 22782 (D. Or. Dec. 4, 1992); _Rutyna v. Collection_
_Accounts Terminal, Inc.,_ 478 F. Supp. 980, 981 (N.D. Ill. 1979); _Henderson v. Credit_
_Bureau, Inc.,_ 1989 U.S. Dist. LEXIS 19138 (W.D.N.Y. July 13, 1989); _Riley v. Giguiere,_
631 F. Supp. 2d 1295 (E.D. Cal. 2009).

80. The term "harass" is not defined in the Act, but examples of actionable harassment are
provided by the prohibitions in the subsections of 15 U.S.C. § 1692d.[56] In the absence of
specific statutory definition, a word should be accorded its ordinary meaning, as given in the
dictionary. Thus, the term "oppress" means "to ... persecute by unjust ... use of force or
authority ... weigh heavily upon,"[57] and the term "abuse" means "to use wrongly or
improperly ... to hurt or injure by maltreatment."[58] The breadth of these terms indicates that
Congress intended broad prohibitions against improper debt collection conduct.

81. In _Jeter v. Credit Bureau, Inc.,_ 760 F.2d 1168 (11th Cir. 1985) the Eleventh Circuit
addressed the standard of analysis for claims under section 1692d, and used "a susceptible
consumer" standard as analogous to the "least sophisticated consumer" standard used under
section 1692e.

> Whether a consumer is more or less likely to be harassed, oppressed, or abused by certain
> debt collection practices does not relate solely to the consumer's relative sophistication;
> rather, such susceptibility might be affected by other circumstances of the consumer or by
> the relationship between the consumer and the debt collection agency. For example, a
> very intelligent and sophisticated consumer might well be susceptible to harassment,
> oppression, or abuse because he is poor (i.e., has limited access to the legal system), is on
> probation, or is otherwise at the mercy of a power relationship .... Thus, we hold that
> claims under section 1692d should be viewed from the perspective of a consumer whose
> circumstances makes him relatively more susceptible to harassment, oppression, or
> abuse.
> _Jeter v. Credit Bureau, Inc.,_ 760 F.2d 1168, 1179 (11 th Cir. 1985).

82. The phrase "conduct the natural consequence of which is to harass" requires that courts
should use objective standards in determining whether this provision has been violated. _Jeter_

---

[56] 122 Cong. Rec. H7792 (daily ed. July 28, 1976) (remarks of Rep. Wylie) ("[w]e have talked about threats and
harassment in the bill. They are not necessarily words of vagueness. All we have to do is go to the dictionary to find
out that 'harass' means to worry and impede by repeated ·raids; exhaust, fatigue, to annoy continuously. Harass is to
harass in a manner to injure, grieve or afflict; to cause to suffer because of belief; to annoy with persistent or urgent
approaches, to pester"); Rozga, FTC Informal Staff Letter (Sept. 5, 1978); Kolarov, FTC Informal Staff Letter (Dec.
6, 1977).
[57] American Heritage Dictionary 872 (2d College Ed. 1982).
[58] American Heritage Dictionary 872 (2d College Ed. 1982).

*v. Credit Bureau, Inc.*, 760 F.2d 1168 (II th Cir. 1985); *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 982 (N.D. Ill. 1979) The debt collector's intent may be inferred from his misconduct. *See Brandt v. I.C. Sys., Inc.*, 2010 WL 582051 (M.D. Fla. Feb. 19, 2010).

83. Insofar as Plaintiff stated "Defendants' violations include, but are not limited to", the plaintiff also alleges:

84. Violation of 15 U.S.C. §1692e(5): Defendants ALP and JEA failed to conduct a reasonable investigation with regard to Plaintiff's written dispute and demand for validation[59]. Since falsely represented it had filed a lawsuit, with an improper party, Defendants did take an[] action that cannot legally be taken thus violating 15 U.S.C. §1692e(5). *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010.

**Count II - Plaintiff's FCCPA Claim**

85. In Count II of the complaint, plaintiff alleges a claim for violations of FCCPA. The elements of a FCCPA claim are (1) the plaintiff has been the object of debt-collection activity arising from an alleged consumer debt; (2) the defendant is a debt collector under Fla. Stat. § 559.55(6); and (3) the defendant has violated, through acts or omissions, Fla. Stat. § 559.72 of the FCCPA. The complaint provides defendant with fair notice of the claim. *See Brooks*, 578 F.3d at 581. Plaintiff *pro se's* AVC provides more than labels and conclusions and is more than a formulaic recitation of the elements of an FCCPA claim, and further the AVC offers appended documents as fact further evidencing his claim.

86. In support of his claim for FCCPA, plaintiff made the following factual allegations for each element: (1) That Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), Fla. Stat. § 559.55(2) and Fla. Stat. § 501.203(7)[60], and that Plaintiff *pro se* was threatened in a written communication[61] by Defendants with a collection action[62] wherein defendants stated "THIS IS AN ATTEMPT TO COLLECT A DEBT"[63], (2) Defendants ALP and JEA are "debt collector[s]" as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6)[64], and is clearly and unambiguously stated by Defendants that "**WE ARE A**

---

[59] See DE 23 page 17, 22.
[60] See DE 23 ¶ 11 & .
[61] See DE 23 pages 25 & 28.
[62] See DE 23 pages 25 & 28.
[63] See DE 23 pages 25 & 28.
[64] See DE 23 ¶ 12 & 13.

**DEBT COLLECTOR**"[65]; the Defendants have violated, through acts or omissions, Fla. Stat. § 559.72 of the FCCPA.

87. The Plaintiff's FCCPA claims mirror plaintiff's FDCPA claims, the FDCPA allegations and factual allegations were restated under FCCPA in full.[66]

88. The FCCPA is Florida's counterpart to the FDCPA. It provides additional protections and is preempted to the extent that it conflicts with the FDCPA. Both statutes define "debt" in exactly the same manner. FLA STAT. § 559.55(1); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1187 n.2 (11th Cir. 2010).

89. Unlike the FDCPA, the FCCPA applies to anyone attempting to collect a debt, not just those defined as "debt collectors." However, the FCCPA narrows liability by adding a requirement for knowledge of falsity as to claims made. FLA. STAT. § 559.72(9); see also *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) ("Plaintiff must prove, as part of the prima facie case alleging a violation of the FCCPA, that Defendants had actual knowledge that their claim of a right to enforce the debt" does not exist.).

90. Defendants were placed on notice that the alleged debt was disputed by Plaintiff when "On July 22, 2013, Pinson sent Defendants a dispute and debt validation letter[67] via US Mail Certified # 7012 1010 0001 1870 9565 Return Receipt Requested." The dispute letter triggers a requirement to conduct a reasonable investigation into the disputed facts.

91. Defendants were again placed on notice that the alleged debt was disputed by Plaintiff when "On August 19, 2013, Pinson sent Defendants a dispute and debt validation letter[68] via US Mail Certified # 7012 1010 0001 1870 9572 Return Receipt Requested."

92. Further Plaintiff's August 19, 2013, letter demanded "the name and address of the original creditor, the name and address of the current creditor, and complete validation of the amount of the alleged debt"[69] and Defendants failed to produce any of these items.

93. In response to Plaintiff's debt validation letters, Defendants, instead of providing Plaintiff proper validation under the FDCPA, sent Plaintiff threatening communications[70] representing that they had filed a foreclosure action against Plaintiff where none had been filed, thus

---

[65] See DE 23 pages 25 & 28.
[66] See DE 23 ¶ 61.
[67] See DE 23 pages 17-18.
[68] See DE 23 pages 22-23.
[69] See DE 23 page 22 ¶ 2.
[70] See DE 23 pages 25-30.

Defendants misrepresented that a legal action had already been taken that in fact had not, nor could not because Chase did not own the alleged debt[71].

94. The Florida Bar Rules of Professional Conduct states in: Rule 4-8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

95. Since Chase does not own the alleged debt, it lacks standing to collect on the alleged debt.

96. Counsel preparing foreclosure documents have an obligation to make a reasonable inquiry to ensure that factual contentions set forth in pleadings have evidentiary support.[72]

97. Servicers and their attorneys who misrepresent the authority to foreclose implicate not only court rules such as FRCP Rule 11, but may also violate statutory prohibitions against unfair and deceptive acts and improper debt collection practices.

98. The duty created under Rule 11 certainly encompasses investigation into the facts related to current ownership of notes and mortgages, as these facts form the very basis for the foreclosure proceeding. Courts have become increasingly vigilant in exercising their own authority under Rule 11 to scrutinize mortgage servicers' filings for blatantly inconsistent content related to the authority to foreclose. *Mainsource Bank v. Winafeld*, 2008 WL 4061415 (Ohio Ct. App. Sept. 2, 2008) (upholding imposition of Rule 11 sanctions against plaintiff who filed foreclosure action when it was not real party in interest).

99. Careless foreclosure practices undermine the functioning of the courts and harm property rights of homeowners, investors, and purchasers of properties at foreclosure sales.

100. Defendants were on notice[73] Plaintiff disputed the alleged debt and as debt collectors Defendants had a duty to investigate any claims. Defendants had no required duty to respond to Plaintiff's dispute and debt validation request letters[74]. Defendants ALP and JEA failed to conduct a reasonable investigation and subsequently falsely represented it had taken a legal action and filed a lawsuit against the Plaintiff. If Defendants had properly investigated, then these acts may not have occurred.

101. Any person who violates the FCCPA is liable for actual damages and up to $1,000 in additional damages, if the court allows, unless "the violation was not intentional and resulted

---

[71] See DE 23 page 15.
[72] See Fed. R. Civ. P. 11.
[73] See DE 23 pages 17 & 22.
[74] See DE 23 pages 17 & 22.

from a bona fide error." FLA. STAT. § 559.77(2)-(3). Unlike the FDCPA, the FCCPA permits awarding punitive damages. Id.

102.    Defendants ALP and JEA failed to conduct a reasonable investigation with regard to Plaintiff's written disputes and demands for validation[75]. Since Defendants failed to comply with Fla. Stat. §559.715 and threatened a lawsuit, and falsely represented it had filed a lawsuit, with an improper party, Defendants did take an[] action that cannot legally be taken thus violating 15 U.S.C. §1692e(5). *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010, and in doing so violated FLA. STAT. § 559.72(9).

103.    These factual allegations show a right to relief that is plausible. That is, when the factual allegations are assumed to be true, they show a right to relief that is more than mere speculation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009); *see Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *Brooks*, 578 F.3d at 581.

**B.**    **Allegation Defendants did not "Attempt to Collect a Debt" and are not subject to the FDCPA.**

104.    Here Plaintiff *pro se* questions whether Defendants ALP and JEA bothered to look at the documents appended to Plaintiff *pro se's* AVC. Plaintiff *pro se* argues that in response to his debt validation letter, Defendants did state in writing and in bold type that "**THIS IS AN ATTEMPT TO COLLECT A DEBT**"[76]. How then can they deny the attempt to collect the alleged un-validated debt?

105.    Moreover, Defendants allege Plaintiff *pro se's* "Amended Complaint does not clearly assert a dispute in federal law"[77] and Plaintiff *pro se* argues this is a conclusory statement should be disregarded by the Court as a such.

106.    It is irrelevant whether or not Albertelli Law Partners LLC is a law firm;  ALP is a "debt collector" which defendants fail to deny.

107.    Further, any alleged debt is not in question here under a FDCPA and/or FCCPA claim(s).

108.    To date Defendants have not validated the alleged debt per 15 U.S.C. § 1692.

109.    Plaintiff did not state letter from Chase was the initial attempt to collect.

110.    Plaintiff believes Defendants MTD was filed in bad faith and for improper purpose.

---

[75] See DE 23 pages 17 & 22.
[76] See DE 23 Pages 25 & 28.
[77] See DE 22 ¶ 16.

## CONCLUSION

111.   The facts raised in the AVC are not mere speculation. In ruling on MTD, the Court is required to construe the allegations in the pleadings liberally and draw all reasonable inferences in favor of the Plaintiff *pro se.*

112.   Plaintiff has stated a Federal question providing subject matter jurisdiction in this Court.

113.   Plaintiff has stated a cause of action upon which relief can be granted.

114.   At this stage in the litigation Plaintiff *pro se* believes additional violations may exist, and they should be identified and determined through Discovery.

115.   Defendants should comply with Rules and file their required FRCP Rule 7.1 disclosures.

116.   Plaintiff *pro se* has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies his burden of pleading under the FDCPA and FCCPA at this stage. *See Ashcroft v. Iqbal*, 129 S.C. at 1950. Plaintiff has also alleged that he has been damaged by the Defendants ALP and JEA. Plaintiff *pro se's* claims should therefore survive dismissal.

**WHEREFORE**, Plaintiff *pro se* respectfully requests that this honorable Court enter an order denying the Defendants Albertelli Law Partners LLC and James E Albertelli PA's Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6). In the alternative, if the Court determines Plaintiff *pro se* has failed to state a claim, Plaintiff *pro se* asks the Court to grant leave and sufficient time to amend his complaint.

Dated: May 16, 2014                    Respectfully Submitted,

John Pinson, *pro se*
526 Westwood Road
West Palm Beach, Florida 33401
561-329-2524
john@pinson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Clerk of the Court, and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, on the Service List below.

Signed May 16, 2014

John Pinson

### Service List

Rubina K. Shaldjian, Esq.
rshaldjian@albertellilaw.com
Albertelli Law
P.O. Box 23028
Tampa, FL 33623
Tel. 813-221-4743 x1508
Fax. 813-221-9171
*Attorney for Defendant:*
Albertelli Law Partners LLC

Matthew L. Schulis, Esq.
mschulis@albertellilaw.com
Albertelli Law
P.O. Box 23028
Tampa, FL 33623
Tel: 813-221-4743x 2621
Fax: 813-221-9171
*Attorney for Defendant:*
James E Albertelli PA