# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION



### CASE NO.: 9:14-cv-80009-KLR

**John Pinson,**

      Plaintiff

vs

**ALBERTELLI LAW PARTNERS LLC,**

A Florida LLC,

      Defendant    /

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATIONS ON DEFENDANT'S RESTATED MOTION TO DISMISS

COMES NOW Plaintiff, John Pinson, pro se who under FRCP Rule 72(b)(2) files the following Objections to the Magistrate Judge's Report & Recommendation ("R & R") entered June 2, 2014, showing the Court as follows.

## OVERVIEW

Albertelli Law a/k/a/ Albertelli Law Partners LLC ("ALP") and/or James E. Albertelli, P.A. ("JEA") (collectively "Defendants") . Defendants are third party debt collectors, debt collection law firm. Plaintiff has no contractual relation or obligation to Defendants. Defendants sent communications in the form of letters by US Mail to Plaintiff, in connection with the collection of an alleged debt, which failed to comply in all respects with the Fair Debt Collection Practices Act ("FDCPA"). Defendants communication made a false assertion of ownership of debt and false assertion of a legal right to collect. Defendants communication made false representations of the character, amount or legal status of the debt. Defendants communications were sent after Plaintiff demanded validation of alleged debt under FDCPA and said communications were not attempts to validate by Defendants. The intent of Defendants communications was to coerce payment or obtain information from consumer. Plaintiff has not received FDCPA required 15 USC 1692g notice of validation rights from debt collector defendants after initial communication. Defendants' violations are ongoing.

## PROCEDURAL POSTURE

Plaintiff filed his verified complaint [DE 1] alleging multiple violations of provisions of the FDCPA against defendant ALP. By Order the Court referred all pretrial matters to the Magistrate Judge [DE 5]. ALP filed a motion to dismiss [DE 9] alleging: 1) ALP is not a proper party; 2) 12(b)(1), lack of subject matter jurisdiction; and 3) 12(b)(6), failure to state a claim. Plaintiff amended his verified complaint as a matter of course under Rule 15(a)(1)(B) [DE 19] adding: 1) JEA as an additional defendant and proper party; 2) the sentence "Jurisdiction arises from a Federal question." notwithstanding Plaintiff previously correctly pleading Jurisdiction; and, 3) ????. A scanning error was made, noted at Docket entry 23 text: "Clerks Notice of Docket Correction re 19 Amended Complaint. ORIGINAL DOCUMENT REPLACED, one page missing. **Correction** other. (lbc)" [DE 23], thus the corrected amended verified complaint appears at D.E. 23. Defendants filed a renewed motion to dismiss [DE 22] the amended verified complaint [DE 19]. Plaintiff pro se filed a highly detailed response in opposing [DE 25]. The Court entered an Order Striking [DE 26] the pro se's response for exceeding the 20 page limit under LR 7.1(c)(2). Plaintiff pro se filed a highly detailed amended response in opposition [DE 27]. Plaintiff pro se's opposition requested leave to amend his complaint as an alternative to dismissal. The R & R [DE 29] on the renewed motion to dismiss the amended complaint, entered by the Magistrate Judge on June 2, 2014, recommended that Defendants motion to dismiss be granted and denied the pro se leave to amend. The R & R considered the amended verified complaint [DE 19] with missing page, not the amended verified complaint [DE 23] corrected by the clerks office and containing all appended documents.   Plaintiff pro se objects herein to the R & R under FRCP Rule 72(b)(2). These objections are timely made within Fourteen (14) days of the Magistrate Judge's R & R, pursuant to FRCP 72(b).

## SUMMARY OF FACTS

**The following material facts sworn to in the amended verified complaint are undisputed:**

Defendants are "debt collectors"; Plaintiff is a "consumer"; James E. Albertelli, P.A. is a "law firm in the business of collecting debts"; Defendants regularly uses the instrumentality of mail and telephone in a business the principal purpose of which is the collection of debts, and regularly attempts to collect debts alleged to be due another; Defendants regularly collects or

attempts to collect debts from consumers; At all times material to the allegations of this
Complaint, Defendants were acting as debt collectors with respect to collection of Plaintiffs
alleged debt; any alleged debt herein is defined as a consumer debt under 15 U.S.C. § 1962a(5);
the communications in question here are all related to the collection of a consumer debt; the
communications from Defendants failed to use the true names of Defendants; the Plaintiff denies
ever having any contractual agreement for credit, loans or services relationship with the
Defendants; on June 1, 2012 Chase sent a letter to Pinson stating "your loan was sold into a
public security…"; on August 13, 2013, Defendants sent a letter, on law firm letterhead; the
August 13, 2013, letter from Defendants failed to disclose to consumer … "that the
communication is from a debt collector" and that "the debt collector is attempting to collect a
debt and that any information obtained will be used for that purpose"; Pinson did not receive
from Defendants the required FDCPA 15 U.S.C. § 1692g(a) validation rights notice within five
day of Defendant's first contact with Consumer, or at any time thereafter; on December 24, 2013,
Defendants sent two letter, on law firm letterhead, asserting Chase owned the debt; Defendants
sent two letter, on law firm letterhead, asserting Chase owned the debt and had authorized
Defendants to collect on their behalf; Chase did not own the debt and therefore could not
authorize Defendants to collect; the assertion of ownership and authority was a false assertion of
a legal right to collect; Defendants knew the assertion was false; continuing to communicate and
failing to validate, after consumer's written dispute and demand for validation; Defendants
willfully engage in such conduct which can reasonably be expected to abuse or harass; the
December 24, 2013 Defendants communication's representation was false and misleading
regarding the character, amount, and/or legal status of the alleged debt; the alleged debt was not
validated; threatening nonpayment the of alleged debt will result in the seizure or sale of
property; no action had been taken or could be legally taken; threatening to take any action that
cannot legally be taken; Chase did not own the debt and therefore could not authorize
Defendants to collect or take any action; using false representations or deceptive means to collect
or attempt to collect any debt or to obtain information concerning a consumer; use of deceptive
means, and containing false representations in written communications sent by US mail;
attempting to collect an unauthorized amount; failing to cease collection efforts after receiving
consumers dispute and demand for validation, and failing to validate or verify the alleged debt
and while continuing collection efforts;

**The following material facts are disputed by the parties:**

Albertelli attempted to collect a debt from Pinson; Albertelli communications were made in connection with a debt; Albertelli communications were informative in nature; intent or animating purpose, of Albertelli communications was to get payment or collect information from Pinson.

## OBJECTIONS WITH ARGUMENT AND CITATION OF AUTHORITY

### I. De Novo Review of Magistrate Judge's Recommendations.

This Court considers the merits of a motion to dismiss on a de novo basis when a magistrate judge's recommendations have been objected to by a party. FRCP 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). Plaintiff pro se objects to the magistrate judge's recommendations, for the following specific reasons, and requests a de novo determination of its response and opposition to Defendants' renewed motion to dismiss. The following objections do not simply repeat Plaintiff's previously made arguments, but rather respond to the magistrate judge's recommendations.

### II. Plaintiff Objects to the Magistrate Judge's Recommendation that the "Defendant's communications in this case were not made in connection with a debt."

The Magistrate Judge recommended that the Court rule the Defendant's communications in this case were not made in connection with a debt. Magistrate recommendation at pp. 6; see p. 6 ("Nevertheless, several cases both within and outside of the Eleventh Circuit support the undersigned's conclusion that Defendant's communications in this case were not made in connection with a debt."). Those conclusions are inaccurate, and Plaintiff objects to that recommendation, for the following reasons.

#### A. Communication Made in Connection With the Collection of any Debt

Defendant's sole contention is that the letter are not within the purview of the FDCPA as a matter of law as they are informative in nature; thus, not in violation under the FDCPA or FCCPA. Therefore, defendant argues plaintiff's claims fail as a matter of law as he has not met

his threshold burden of demonstrating the communication is within the FDCPA's coverage. However, the relevant inquiry is whether the letter was sent in "relat[ion] to the collection of a debt." Thus, the Court must look to relevant Seventh Circuit precedent to determine whether defendant sent the letters "in connection with the collection of any debt."

In *Stricklin v. Jefferson Capital Systems, LLC*, Dist. Court, SD Illinois 2011,

> Neither the Eleventh Circuit nor any other circuit has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt. Most district courts analyzing this issue rely on several decisions from the Seventh Circuit for guidance with respect to the relevant factors. *Parker v. Midland Credit Management, Inc.*, 874 F. Supp. 2d 1353 - Dist. Court, MD Florida 2012.

> In Bailey v. Sec. Nat'l Servicing Corp., 154 F.3d 384 (7th Cir. 1998), a mortgage servicer sent a letter to a delinquent debtor listing its next payments due to the original creditor. The letter expressed a willingness to "work with" the debtor in resolution of its delinquency. Id. at 386. In affirming the district court's grant of summary judgment to the debt collector defendants, the Seventh Circuit held the letter did not qualify as a communication in connection with debt collection. The fact the letter did not demand payment and did not otherwise attempt to collect the debt, despite its warning that delinquent payment could trigger an obligation to pay the entirety of the loan immediately, were determinative to the court's holding. Opposed to a communication sent in connection with the collection of any debt, the court deemed the letter a mere description of the status of the debtor's account. Id. at 388-89. Thus, Bailey demonstrates the FDCPA does not apply to every communication between a debt collector and debtor.

> However, as the Seventh Circuit has since clarified, the absence of a demand for payment is not dispositive of whether the debt collector made the communication in connection to debt collection. *See Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769 (7th Cir. 2003). In *Horkey*, the debtor received a phone call from the debt collector at work, advised the debt collector she could not talk about the debt at that time, and hung up the phone. Changing tactics, the debt collector then called the debtor's co-worker and asked him to tell the debtor "to quit being such a [expletive] bi**." *Id.* at 772. In concluding the FDCPA applied to the phone call, the court looked to its intent. Although the caller made no demand for payment, the debt collector specifically intended the call to induce the debtor to settle her debt; thus, it triggered the FDCPA. *Id.* at 774.

> The Seventh Circuit further refined the relevant inquiry in *Ruth v. Triumph P'ships*, 577 F.3d 790 (7th Cir. 2009). In *Ruth*, a debt collector sent both a collection letter and a privacy notice in the same envelope to a debtor. Similarly arguing as defendant in the

instant motion, the debt collector in Ruth contended the privacy notice fell outside the FDCPA, although the collection letter indisputably fell within the scope of the FDCPA. The court found both documents constituted communication made in connection to debt collection as 1) the only relationship between the parties arose from their status as debtor and debt collector, and 2) the debt collector sent the privacy notice in the same envelope as the collection letter. *Id.* at 798-99. Thus, Ruth illustrates the relationship among the parties is also a factor determinative of whether a communication falls within the scope of the FDCPA. Importantly, Ruth, in reversing and remanding the district court's grant of summary judgment for the debt collector defendants, also clarified the standard for evaluating whether a debt collector made a communication in connection with the collection of debt is an objective one. Therefore, the question is whether an unsophisticated, but reasonable consumer would believe the debt collector sent the communication in connection with the collection of a debt. *Id.* at 798.

Most recently, in *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010), the Seventh Circuit stressed again that a demand for payment is not in itself determinative of whether a debt collector made a communication in connection to debt collection. The debtor at issue was in default on her mortgage loan. The loan servicer sent her three letters offering to discuss "foreclosure alternatives" and asking for financial information to initiate this process. In reversing the district court's grant of the loan servicer defendant's motion to dismiss, the *Gburek* Court determined a loan servicer made numerous communications with a debtor in connection with debt collection, as it intended the communications to cause the debtor to settle or discuss the debt. *Id.* at 384-86 (citing *Horkey*, 333 F.3d at 772-74; *Ruth*, 577 F.3d at 798-99). Thus, the Seventh Circuit has clearly emphasized the relationship of the parties, the intent of the communication, as well as demand for payment, determine whether a communication falls within the scope of the FDCPA.

*Stricklin v. Jefferson Capital Systems, LLC*, Dist. Court, SD Illinois 2011,

Because of these instructive legal conclusions, which when applied to the instant matter show the letter as a communication in connection with the collection of any debt from the perspective of the least sophisticated consumer,  the Court should reject the Magistrate Judge's recommendation that  the "Defendant's communications in this case were not made in connection with a debt."

**B.  The communications were related to the collection of a debt.**

The Plaintiff's amended verified complaint states "The communications in question here are all related to the collection of a consumer debt." [DE 23 ¶ 24]. This fact allegation is not controverted by Defendant.

The aspects of a communication were examined in *Foti v. NCO Financial Systems, Inc.,* 424 F. Supp. 2d 643 - Dist. Court, SD New York 2006,

"The FDCPA defines `communication' very broadly as the conveying of information regarding a debt directly or indirectly to any person through any medium.'" Romea v. Heiberger & Assocs., 163 F.3d 111, 114 n. 2 (2d Cir.1998) (quoting 15 U.S.C. § 1692(a)(2)) (holding that notice demanding payment of rent arrearage or surrender of rented premises to landlord was a "communication" within the meaning of the FDCPA). While the Second Circuit has not precisely defined the scope of the term "communication," it has suggested in other contexts that, consistent with Congress's intent in enacting the FDCPA, the statute should be broadly construed. See Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.1989) Mt is apparent that the prescribed requirement can further the Congressional purpose in enacting the FDCPA in 1977, which was to prevent `abusive, deceptive, and unfair debt collection practices.'") (citations omitted) (holding that under the pre-amended version of § 1692e(11), disclosure is required in all communications);[20] see also Cavallaro v. Law Office of Shapiro & Kreisman, 933 F.Supp. 1148, 1153 (E.D.N.Y.1996) ("The Second Circuit also has warned debt collectors against loosely interpreting the FDCPA.") (citing Russell, 74 F.3d at 35); accord Blair v. Sherman Acquisition, No. 04 Civ. 4718, 2004 WL 2870080, at *2 (N.D.Ill. Dec. 13, 2004) ("Because it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose.").

In West v. Nationwide Credit, 998 F.Supp. 642, 644 (W.D.N.C.1998), the ... West court noted that "[i]n interpreting the meaning of a statute, it is well settled that `[t]he "plain meaning" of statutory language controls its construction,'" and went on to examine the dictionary definitions of "regarding." Id. (quoting *657 Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir.1995)). In particular, the court noted: "Webster's Ninth New Collegiate Dictionary (1st ed.1983) defines the term `regard' as, inter alia, `to relate to,' while it provides the following definition of the term `regarding': `with respect to: concerning.'" Id. "Based on these definitions, the court believes the ordinary meaning of the term `regarding' is consistent with the broader interpretation advocated by Plaintiff."

Thus, given the choice of language by Congress, the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected. Indeed, a narrow reading of the term "communication" to

exclude instances such as the present case where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold "communication" requirement, merely by not conveying specific information about the debt. ... Such a reading is inconsistent with Congress's intent to protect consumers from "serious and widespread" debt collection abuses.

*Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 - Dist. Court, SD New York 2006

Arguably, the [letters] sufficiently conveys information about a debt to be deemed a "communication," particularly given the Second Circuit's suggestion that the Act should be broadly construed, despite the fact the Court concludes that it is not in connection with the collection of any debt. *See Foti*

In the instant matter, the Plaintiff has argued fact in his amended verified complaint that "The communications in question here are all related to the collection of a consumer debt." [DE 23 ¶ 24], and this fact allegation is not controverted by Defendant. Thus, based on the Foti analysys the letters in question should be deemed communications related to or regarding, with respect to or concerning a debt. The court should accept the broad definition which is consistent with Congresses intent because the letter communications convey, directly or indirectly, any information relating to a debt.

Because of these instructive legal conclusions, which when applied to the instant matter show the letter as a communication in connection with the collection of any debt from the perspective of the least sophisticated consumer, the Court should reject the Magistrate Judge's recommendation that the "Defendant's communications in this case were not made in connection with a debt."

## C. Denying a matter of fact does not make it so; no proof of intentional violation required.

The Defendants make a simple and vague assertion, that essentially by denying the letters were communications related to the collection of a debt, that denial makes it so, and it will be shown in a further objection that the case law they rely on in *Parker* is not analogous to the instant matter. But here we can find instructive the *Foti* court's analysis.

Finally, Defendant suggests that its interpretation of "communication" is necessary to avoid placing debt collectors in a virtual "Hobson's choice"—debt collectors must disclose their identity as a debt collector to comply with § 1692e(11)'s requirements, but are prohibited from leaving a message identifying themselves as such by § 1692c(b)'s prohibition on communications to third parties. (NCO Mem. 7) Thus, Defendant argues that "[t]he safest thing to do is to recognize what it is. It is not a communication. Once you recognize that it is not a communication, then there is no obligation to identify that you are a debt collector." (Tr. 8) This argument is unconvincing.

Thus, the alleged "Hobson's Choice" in this case is self-imposed by NCO. It is only because of the method of debt collection selected—calling and leaving the type of pre-recorded messages— that NCO is faced with this potential dilemma. "As the Supreme Court has held in the general context of consumer protection—of which the Fair Debt Collection Practices Act is a part—`it does not seem unfair to require that one who goes deliberately close to an area of proscribed conduct shall take the risk that he may cross the line.'"[26] Russell, 74 F.3d at 35 (quoting *660 FTC v. Colgate-Palmolive Co., 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)) (additional quotations omitted).

_Foti v. NCO Financial Systems, Inc._, 424 F. Supp. 2d 643 - Dist. Court, SD New York 2006

Here we find in Foti that the defendant attempts to argue, in essence, that by not acknowledging a  fact as a communication, then it is not so. The Foti court found the argument unconvincing and went on to note that the Supreme Court held in consumer protection matters that is you go close to the line of violation, you may cross it.

In the instant matter, Defendants simply argue the letters were not communications in connection with the collection of a debt, and with one case citation attempt to dispose of the issue as a matter of law. The question of interpretation is actually a matter of fact for the fact finder, since as shown above interpretations can differ among people, sophisticated or not, and thus it is appropriate to apply the least sophisticated consumer standard in matters such as the instant.

In _LeBlanc v. Unifund CCR Partners_, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010, the Court found that the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as the use of "unfair or unconscionable" means of collection. 15 U.S.C. §§ 1692(e) and 1692f. The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by

some as a strict liability statute. See 15 U.S.C. § 1692k; Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir.2010). Thus, Defendants can be held strictly liable in the instant matter for violations found that are not intentional.

Because of these instructive legal conclusions, which when applied to the instant matter show the letter communications could cross the line of violation of FDCPA, the Court should reject the Magistrate Judge's recommendation that the "Defendant's communications in this case were not made in connection with a debt."

## D. The August 1 communications was made in connection with the collection of any debt.

In matters such as the instant, under the FDCPA the least sophisticated consumer standard is applied. This standard has been well established in the 11th Circuit. Notably in LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010. In LeBlanc, the Court rejected the "reasonable consumer" standard in favor of the "least-sophisticated consumer" standard:

> Because we believe that Congress intended the standard under the FDCPA to be the same as that enunciated in the relevant FTC cases . . . and because we believe that the FDCPA's purpose of protecting consumers is best served by a definition of "deceive" that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters . . ., we adopt the Exposition Press standard of least sophisticated consumer . . . . Jeter, 760 F.2d at 1175; Exposition Press, Inc. v. FTC, 295 F.2d 869 (2nd Cir.1961).

> The "least-sophisticated consumer" standard is consistent with basic consumer-protection principles. Jeter, 760 F.2d at 1172-75(internal citations omitted); Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir.1993) ("The basic purpose of the `least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.") As we discussed the FTC Act and its jurisprudence in Jeter, we noted:

> That law was not "made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous. . ." and [t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. Laws are made to protect the trusting as well as the

suspicious. Jeter, 760 F.2d at 1172-73 (quoting in part Fed. Trade Comm'n v. Standard Educ. Society, 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141 (1937)); see also Clomon, 988 F.2d at 1318; United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996).

LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

In the instant matter, the R & R recommends the August 13 letter is not a communication made in connection with the collection of a debt. It is understandable how a busy District Judge might come to a different conclusion than a pro se or a least sophisticated consumer. Because the consumer Plaintiff perceives the communication individually, he should be afforded to put the matter of fact to the trier of fact, the jury.

Considering the content of the August 13 letter, the plaintiff notes the following: The letter is on law firm stationary which is indicates legal involvement; the letter is signed by "Andrea Hearn, Litigation Legal Assistant to Joseph Dillon Esq. For the Firm" indicating attorney involvement to the extent the attorney supervises the issuance of the letter and that he has sufficiently reviewed the file and the letter before directing it be sent and the title Litigation Legal Assistant indicates threat of lawsuit; The letter indicates "Our File Number: 13-115767" indicating a file is already prepared presumably by the litigation department; the letter indicates "cc: All Parties" indicating parties to a lawsuit; The letter uses the terms "amounts to reinstate your loan" and "total amount due" these terms infer a debt is in default and that monies are due. Yet, the letter fails to contain any statutory notice or even an inference that the communication is from a debt collector, etc. Further, there is no disclosure stating that the communication is not an attempt to collect a debt.

In Goodson v. Bank ofAm., NA., 2014 WL 940492 (M.D. Tenn. Mar. 10, 2014,

> "Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer." Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 172 (6th Cir. 2011). "The test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." Id.

> "[T]o be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one," and thus "an 'explicit demand for payment' is not always necessary for the statute to apply." Id. at 173 (quoting Gburek v. Litton Loan Serv. LP,

614 F.3d 380, 385 (7th Cir. 2010)). "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Id.

"The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court." Estep v. Manley Deas Kochalski, LLC, 2014 WL 185391 (6th Cir. Jan. 16, 2014). Still, where "a reasonable jury could not find that an animating purpose of the statements was to induce payment," summary judgment is appropriate. Grden, 643 F.3d at 172.

Goodson v. Bank ofAm., NA., 2014 WL 940492 (M.D. Tenn. Mar. 10, 2014

Based on the content of the letter it can be reasonably inferred that the letter was a communication in connection with the collection of any debt. Further, based on the relation of the parties, consumer debtor and debt collector, the letter is clearly a communication in connection with the collection of any debt. This fact should be obvious from the perspective of the least sophisticated consumer.

Because of these instructive legal conclusions, which when applied to the instant matter show the letter as a communication in connection with the collection of any debt from the perspective of the least sophisticated consumer,  the Court should reject the Magistrate Judge's recommendation that  the "Defendant's communications in this case were not made in connection with a debt."

## C.  Both December 24 communications were made in connection with the collection of any debt.

As discussed, the least sophisticated consumer standard should be used to view the December 24 letters. Plaintiff received two letter from Defendants dated December 24. The R & R only makes reference to one letter. As noted above in the overview the clerks office made and corrected a scanning error of Plaintiffs amended verified complaint. The R & R looks to the complaint with missing pages that was replaced [DE 19] not the corrected version [DE 23]. Plaintiff objects to this oversight.

Nevertheless, considering the contents of one of  the two December 24th letters, the Plaintiff notes the following: The letter is on law firm stationary which is indicates legal involvement; The letter clearly states "this is an attempt to collect a debt'; The letter indicates

"Our File Number: 13-115767" indicating a file is already prepared presumably by the litigation department; The letter shows the style of a lawsuit "JPMorgan Chase Bank, National Association vs. John D. Pinson" indicating a legal action and asserting Chase is the owner of the debt and has granted authority to Defendants to collect; The letter states "the above delinquent loan" making a statement of the status of the debt; the letter states "for the lien to be released" making the representation that a lien had been placed; The letter states "the amount required to cure your loan delinquency is $224,061.56, good through 01/10/2014" indicating a representation of an amount of a debt and a date certain for payment; The letter states: if you are not prepared to tender the full payout amount today, then the amount owed may increase" indicating a negative consequence for Plaintiff for nonpayment; The letter states "please carefully read the following information concerning the foreclosure" the letter states "we may not be able to cancel the the foreclosure sale or other pending hearing" representing the status of a legal action; the letter states "until the loan deficiency is cured" representing the character of the debt; the letter states "quote does not change or extend the foreclosure date" representing a character or legal status of the debt; the letter states "if your payoff amount tendered is less than the total amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process" representing a character or legal status of the debt and containing a negative consequence for Plaintiff for nonpayment of an exacted amount on a specific date; the letter states very specific "payment instructions" including how payment "must be made payable to 'JP Morgan Chase Bank, National Association'" indicating alleged ownership of debt through entitlement of payment and that any payment is due on a debt; the letter states "funds must be sent to the attorney/trustee office listed on this letter" indicating how a payment must be made on a debt; the letter states "please be advised the action will continue until the total payoff amount is received, in compliance with the terms of this letter" representing a character or legal status of a debt and threatening the negative consequence for Plaintiff of continued legal action unless a specific total amount is paid according to payment instructions; the letter states "in obtaining the withdrawal of a foreclosure" indicating the character or legal status of the debt; the letter states "please reference the file no., case no., and borrower's last name" indicating a debt and referencing the character or legal status of the debt. The letter fails to contain the statutory FDCPA g notice. The second letter contained similar language and should be considered separately.

Based on the content of the letters it can be reasonably inferred that the letter was a communication in connection with the collection of any debt. Further, based on the relation of the parties, consumer debtor and debt collector, the letter is clearly a communication in connection with the collection of any debt. This fact should be obvious from the perspective of the least sophisticated consumer.

Because of these instructive legal conclusions, which when applied to the instant matter show the letter as a communication in connection with the collection of any debt from the perspective of the least sophisticated consumer, the Court should reject the Magistrate Judge's recommendation that the "Defendant's communications in this case were not made in connection with a debt."

### D. Both December 24 communications were attempts to collect a debt.

In this matter the R & R relies extensively on Goodson v. Bank ofAm., NA., 2014 WL 940492 (M.D. Tenn. Mar. 10, 2014. Based on the above list where Plaintiff considers the contents of one of the two December 24th letters, from the perspective of the least sophisticated consumer the letter could appear as an attempt to collect a debt. In fact the letter explicitly states it is an attempt to collect a debt by a debt collector. Further, the analysis in the R & R is erroneous because based on the *Goodson* factors and detailed in the above list, the letter clearly suggests "negative consequences that could befall the Plaintiff should he choose not to pay" and does in fact "request a payment" giving very specific payment instructions and does give a payment due date and amount due. From the perspective of the least sophisticated consumer the letter could appear as an attempt to collect a debt.

The question of whether the letters are attempts to collect a debt, considered under the least sophisticated consumer standard, are matters of fact and should be put to the trier of fact, the jury, as a conclusion of law is not equitable under the consumer law strict liability standard.

Based on the content of the letters it can be reasonably inferred that the letter was an attempt to collect a debt. Further, based on the relation of the parties, consumer debtor and debt collector, the letter is clearly a communication in connection with the collection of any debt. This fact should be obvious from the perspective of the least sophisticated consumer.

Because of those above instructive legal conclusions, which when applied to the instant matter show the letter was an attempt to collect a debt from the perspective of the least sophisticated consumer,  the Court should reject the Magistrate Judge's recommendation that  the "Defendant's communications in this case were not made in connection with a debt."

### E.  Goodson v Bank of Am is not analogous to the instant case.

In this matter the R & R relies extensively on _Goodson_. The Goodson case was put to summary judgment motion, whereas the R & R on instant matter from motion to dismiss. The issue in _Goodson_ was statute of limitations Discovery; equitable tooling; continuing violation doctrine), whereas in the instant matter parties argue a matter of fact on communications in connection with the collection of any debt. Goodson was dealing with a servicer Bank of America, whereas in the instant matter Plaintiff is dealing with a third party debt collector law firm as Defendants.

Two letters were in question in Goodson. The first Letter in question in Goodson was a notice of change of servicer. The second letter in Goodson was from a law firm attempting to validate the debt in response to Goodson's validation demand letter.

In the instant matter, the R & R takes to question a June 1 letter Plaintiff appended to his complaint. The June 1 letter was appended to evidence Chase stating Chase sold the loan to a public security. The plaintiff included this evidencing Chase did not own any loan and thus could not authorize Defendants to Collect. Plaintiff did not indicate or infer in his complaint that the June 1 letter was sent in connection with the collection of any debt. The court is in err to misconstrue this fact. The letter was sent in response to a qualified written request to determine who owned the loan.

Because Plaintiff persisted in his attempt to determine ownership he was directed to inquire of the Defendants in this matter, and he sent the Defendants a demand for debt validation, and in response the Defendants sent the August 13 letter discussed above. The August 13 letter was clearly a communication in connection with the collection of any debt from the perspective of the least sophisticated consumer. Whereas the second Goodson letter was from a lawfirm attempting to validate a debt, in the instant matter the August 13 letter was in no way an attempt to Validate and was clearly more than an informative letter. Further, the August 13 letter did not

contain the statutory FDCPA g notice of validation rights and a g notice was not sent to Plaintiff within 5 days of the August 13 letter. In fact the Defendants have not alleged they even sent Plaintiff a FDCPA g letter.

Because the August 13 letter was viewed by Plaintiff as being a communication in connection with the collection of any debt, and threatening in nature, for the reasons detailed above, Plaintiff send a second debt validation letter which included a demand for the name and address of the original creditor, the name and address of the current creditor, and complete validation of the amount of the alleged debt. Despite Plaintiffs specific demand, the Defendants sent two letters which were not attempts to validate and did not include the name and address of the original creditor, the name and address of the current creditor, and complete validation of the amount of the alleged debt. Instead the Defendants send a payoff letter and a reinstatement letter, things the Plaintiff did not ask for and which Plaintiff perceived as a communications in connection with the collection of any debt from the perspective of the least sophisticated consumer and attempts to collect a debt from the perspective of the least sophisticated consumer. Further, the December 24 letters did not contain the statutory FDCPA g notice of validation rights and a g notice was not sent to Plaintiff within 5 days of the December 24 letters. In fact the Defendants have not alleged they even sent Plaintiff a FDCPA g letter.

Because of those above, the Court should not consider Goodson as analogous and should disregard any inferences made that Goodson as analogous, the Court should reject the Magistrate Judge's recommendation that the "Defendant's communications in this case were not made in connection with a debt."

**F. Parker v Midland is not analogous to the instant case.**

In the instant matter, Defendant's sole contention is that the letter in question were not an attempt to collect a debt. Defendants rely on only one case <u>Parker v. Midland Credit Management, Inc., 874 F. Supp. 2d 1353 - Dist. Court, MD Florida 2012</u>; Defendants renewed motion to dismiss [DE 22 ¶6].

Plaintiff contends Parker is not analogous to the instant matter. In Parker, Parker was dealing with Midland Credit Management (a known junk debt buyer who buys defaulted alleged debts), whereas in the instant matter Pinson is dealing with a third party debt collector law firm.

Though the Parker case was considered on a motion to dismiss, the Parker case was also a class action.

The letter in question in Parker was required by Florida Statute 559.715 where a party must be noticed in at least 30 days advance of any collection action. Further, the Parker letter in question explicitly stated it was not an attempt to collect a debt and that it was a notice of new ownership and that it stated it was pre attorney review so as not to be threatening. This is not analogous to any of the letters in question in the instant matter.

Because of those above, the Court should not consider Parker as analogous and should disregard any inferences made that Parker as analogous, the Court should reject the Magistrate Judge's recommendation that the "Defendant's communications in this case were not made in connection with a debt."

## G. A genuine issue of material fact exists.

Central to the instant matter is the question of if Albertelli communications were made in connection with any debt. Plaintiff contends this is a matter of fact finding, and not for conclusion of law. In LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010,

A least-sophisticated consumer could read the letter as offering at least two options for responding. Taking the most literal reading, a reasonable juror could find the dunning letter was more informative than threatening and did not threaten imminent legal action.

However, a reasonable juror applying the "least-sophisticated consumer" standard could also view this letter as either an overt or thinly-veiled threat of suit. (See Summ.J. Order at 19.) Unifund mistakenly relies on the use of conditional language such as "if" and "may" in an effort to safeguard the letter from being construed as "threatening." Despite the conditional language, a reasonable juror could read the dunning letter as intimating that a lawsuit will follow immediately after the end of the 35 day "grace" period. More significantly, in the event of suit, the tone of the letter shifts to more forceful language — "If suit is filed and if judgment is rendered against you, we will collect payment utilizing all methods legally availab le to us . . . ." This portion of the letter supports a reasonable inference that Unifund is threatening LeBlanc with legal action, that it is Unifund's intent to deprive LeBlanc of his personal property. Finally, although not determinative, another hint or suggestion of intimidation is that the letter is sent from Unifund's "Legal Department."[20] See, e.g., Rosenau v. Unifund Corp., 539 F.3d 218, 224 (3d Cir.2008)

(analyzing identical language and discussing different inferences that could be drawn from fact that collection letter is sent from "Legal Department," including *1197 inference that an attorney is already 1197 involved).

In Jeter we explained that where the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact—not for the court on summary judgment. See Jeter, 760 F.2d at 1176. For these reasons, this issue is one best submitted to the finder of fact.

LeBlanc v. Unifund CCR Partners, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

Because of these instructive legal conclusions, which when applied to the instant matter show the letter as a communication in connection with the collection of any debt from the perspective of the least sophisticated consumer. Because a issue of material fact exists it should be put to the finder of fact, the jury, and conclusion of law would is objected to, therefore  the Court should reject the Magistrate Judge's recommendation that  the "Defendant's communications in this case were not made in connection with a debt."

**III. Plaintiff Objects to the Magistrate Judge's Recommendation that "the 'animating purpose' of the two letters sent by Defendant to Plaintiff was to respond to Plaintiff s own requests, not to demand payment."**

Animating purpose was discussed in Grden v. Leikin Ingber & Winters PC, 643 F. 3d 169 - Court of Appeals, 6th Circuit 2011.

The text of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be "connect[ed]" with one. Thus, we agree with the Seventh Circuit that an "explicit demand for payment" is not always necessary for the statute to apply. Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir.2010). But it is just as clear that "the statute does not apply to every communication between a debt collector and a debtor." Id. at 384-85 (emphasis in original). So the question is where to draw the line.

We draw it at the same place the Seventh Circuit did in Gburek: for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor. See id. at 385 ("a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections" of the Act). Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment. See,

e.g., id. at 386 (third-party letter directing debtor to contact creditor was sent in connection with collection of a debt). Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make a such an attempt more likely to succeed, is one that has the requisite connection.

Here, on one hand, the balance statements obviously came from a debt collector—indeed from one that had already sued Grden—and they stated a balance "due." On the other hand, the statements themselves did not demand payment or threaten any consequences if Grden did not pay. But for us the decisive point is that Leikin made the balance statements only after Grden called and asked for them. The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely. See Gburek, 614 F.3d at 384 (letter that was "merely a description of the current status of the debtor's account" did not have the requisite connection). Thus, under the circumstances present here, a reasonable jury could not find that an animating purpose of the statements was to induce payment by Grden. We therefore affirm the district court's grant of summary judgment as to those statements.

Grden v. Leikin Ingber & Winters PC, 643 F. 3d 169 - Court of Appeals, 6th Circuit 2011

As discussed above at II. D., and is incorporated herein by reference, the animating purpose of the letters was to induce payment.

Because of those above instructive legal conclusions, which when applied to the instant matter show the animating purpose of the letters was an attempt to collect a debt from the perspective of the least sophisticated consumer and thus the animating purpose was to induce payment, the Court should reject the Magistrate Judge's recommendation that the "Defendant's communications in this case were not made in connection with a debt."

**IV. Plaintiff Objects to the Magistrate Judge's Recommendation that the "letters do not constitute an attempt to collect on a debt, and therefore, neither the FDCPA nor the FCCPA applies."**

This was discussed above at II. D., and is incorporated herein by reference.

**V. Plaintiff Objects to the Magistrate Judge's Recommendation that the "Plaintiff has failed to state a cause of action, and his complaint should be dismissed."**

The Magistrate Judge recommended that the Court rule the Plaintiff has failed to state a cause of action, and his complaint should be dismissed. Magistrate recommendation at pp. 9; see

p. 9 ("Nevertheless, several cases both within and outside of the Eleventh Circuit support the undersigned's conclusion that Defendant's communications in this case were not made in connection with a debt."). Those conclusions are inaccurate, and Plaintiff objects to that recommendation.

This was discussed above at II., and is incorporated herein by reference.

## VI. Plaintiff Objects to the Magistrate Judge's Recommendation that "any further opportunity to amend would be futile."

The Magistrate Judge recommended that the Court that any further opportunity to amend would be futile. Magistrate recommendation at pp. 9-10; see p. 10 ("In this case, Plaintiff has already amended his Complaint once after being faced with nearly identical issues in Defendant's first Motion to Dismiss (DE 9). Yet Plaintiff failed to recognize or correct any of the problems in his original Complaint. For this reason and the foregoing discussion, any additional opportunity to amend would be futile."). Those conclusions are inaccurate, and Plaintiff objects to that recommendation, for the following reasons.

In the instant matter, the Plaintiff pro se's complaint was faced with a motion to dismiss alleging an improper defendant and lack of jurisdiction, and the Plaintiff promptly amended his complaint as a matter of course. Then the defendant restated its motion to dismiss, choosing to ignore the corrections Plaintiff made. Even the R & R fails to recognize Plaintiff's amendments cured some deficiencies. Defendant further alleges failure to state a claim, which Plaintiff argued against in his response in opposition. The Plaintiff pro se included sufficient information and clarification in the opposition brief to show the complaint could be amended and in the interest of justice.

Nevertheless, the Plaintiff has argued his complaint contained sufficient facts to state a claim and did argue in his opposition against the Defendants assertion that the letters in question were not communications in connection with the collection of a debt. Further, the Plaintiff has re-alleged herein in his Statement of Facts sufficient facts which are uncontroverted to state a claim. "Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519 (1972). "Following the simple guide of rule 8(f) that

all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. Conley v. Gibson, 355 U.S. 41 at 48 (1957). The FDCPA is a remedial statute. Hamilton v. United Healthcare of Louisiana, Inc., 310 F 3d 385, 392 (5th Cir. 2002). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107, 1117 (20th Cir. 2002).

In Nichols v. NIAGARA CREDIT RECOVERY, INC., Dist. Court, ND New York 2013, the Plaintiff is faced with a 12(b)(6) motion to dismiss, just as in the instant matter. In Nichols,

It has long been "well-established that `outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'" Harrison v. Enventure Capital Group, Inc., 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting Nagler v. Admiral Corporation, 248 F.2d 319, 322 (2d Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." Stern v. General Elec. Co., 924 F.2d 472, 477 (2d Cir. 1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so. See O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir. 2002) (citing Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995)). *Nichols*

In the present matter, the Court finds that it is not clear at this point whether amendment would be futile; and, therefore, Plaintiffs will be afforded an opportunity to amend their complaint. Plaintiffs shall have twenty (20) days from the date of this Memorandum-Decision and Order to file their amended complaint.

Nichols v. NIAGARA CREDIT RECOVERY, INC., Dist. Court, ND New York 2013

In *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010, the Court found the FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute. See 15 U.S.C. § 1692k; Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir.2010).

The plaintiff has pled sufficient uncontroverted facts to state a claim for relief to be granted, and has appended uncontroverted fact evidence supporting his contention of violations of the FDCPA and FCCPA. Because of the liberal consumer protection nature of the statutes, and the intent of Congress to protect consumers, it would be in the best interest of justice, and not be a futile effort, to allow the Plaintiff pro se to amend his complaint if the court deems he has failed to state a claim for relief to be granted.

Because of these instructive legal conclusions, which when applied to the instant matter show the liberal consumer protection nature of the FDCPA and the lesser pleading standards applied to pro se litigants, and given the fact the pro se corrected deficiencies in his amendment as a matter of course, without the Courts comments on any deficiencies, and in the interest of justice, the Court should reject the Magistrate Judge's recommendation that "any further opportunity to amend would be futile."

## CONCLUSION

The Plaintiff is proceeding pro se in this matter, and stated above, the Plaintiff has given an overview, procedural position, statement of facts both undisputed and disputed, and listed his objections to the R & R and included supporting citations.

Plaintiff amended his complaint as a matter of course to promptly correct improper party defendant allegations and jurisdictional allegations and enhance facts, but the Defendants only made vague reference to conclusions the Plaintiff could not consider what was conclusory. Certainly alleging a fact is contrary to statute is not conclusory when it points to facts giving rise to a cause of action.

The Plaintiff specifically objects to the conclusion of law in the R & R regarding the letters not communications made in connection with any debt, and asserts that under the least sophisticated consumer standard that question is a question of fact and should be put to a trier of fact, the jury.

If the court determines the Plaintiff has failed to state a claim, Plaintiff argues that the court should freely give him leave to amend the complaint because justice so requires. FRCP 15. Further, because the claim is under the liberal consumer protection statute the FDCPA and

considering Plaintiff is proceeding pro se and is not a trained attorney, it would be in the interest of justice to grant leave to amend the complaint.

**Wherefore**, for the foregoing reasons Plaintiff pro se prays that this Court reject the Magistrate Judge's recommendations and deny Defendants Motion to Dismiss. In the alternative, if the Court determines Plaintiff pro se has failed to state a claim, Plaintiff pro se asks the Court to grant leave and sufficient time to amend his complaint.

Dated: June 19, 2014                    Respectfully Submitted,

                                        _____
                                        John Pinson, *pro se*
                                        526 Westwood Road
                                        West Palm Beach, Florida 33401
                                        561-833-4816
                                        john@pinson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Clerk of the Court, and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, on the Service List below.

                                        Signed June 19, 2014

                                        _____
                                        John Pinson

### Service List

Rubina K. Shaldjian, Esq.                   Matthew L. Schulis, Esq.
rshaldjian@albertellilaw.com                mschulis@albertellilaw.com
Albertelli Law                              Albertelli Law
P.O. Box 23028                              P.O. Box 23028
Tampa, FL 33623                             Tampa, FL 33623
Tel. 813-221-4743 x1508                     Tel: 813-221-4743x 2621
Fax. 813-221-9171                           Fax: 813-221-9171
Attorney for Defendant:                     Attorney for Defendant:
Albertelli Law Partners LLC                 James E Albertelli PA