FILED BY _____ D.C.

OCT 2 5 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

## CASE NO.: 14-80009-CIV-HURLEY/HOPKINS

John Pinson,

      Plaintiff

vs

**ALBERTELLI LAW PARTNERS LLC, et. al**

      Defendant    /

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
## AND INCORPORATED MEMORANDUM OF LAW

**COMES NOW**, the Plaintiff *pro se*, John Pinson, pursuant to Federal Rule 26(c), file this Motion for Protective Order and Incorporated Memorandum of Law. For the reasons set forth below, Plaintiff request the entry of a protective order, and in support thereof states:

### MEMORANDUM OF LAW

A case management hearing was held on October 3, 2016, in the West Palm Beach Courthouse Room 5 before the Honorable Judge Hurley. Both Plaintiff and counsel for Defendants were present at the hearing. On October 3, the Court authorized that "[w]ithin five days of today, the Defendants have a right to propound a request for admissions." *See* transcript of hearing pg.15 ¶2,3 attached as "Exhibit A". On October 5, 2016, the Court entered an order which states "Defendants' may propound, within 5 days of this order, a new request for admissions, which shall be sent to the Plaintiff by Federal Express, signed receipt required." *See* DE 135 at ¶1 attached as "Exhibit B".

Despite the clear limitations of the Court's Order authorizing discovery, Defendants have propounded discovery requests outside of the permissible timeframe Ordered by the Court. The Defendants sent the request for admissions (attached as "Exhibit C") on October 14, 2016, or eleven (11) days after the hearing and nine (9) days after entry of the Order. Plaintiff only received the requests on October 20, 2016.

Plaintiff's Motion for Protective order on Defendants' Untimely Requests for Admissions - Case No.: 14-cv-80009 - Page 1 of 5

Case No.: 14-cv-80009 - Page 001 of 74

## I.     Background

This action commenced on January 6, 2014. Plaintiff sues defendants James E Albertelli PA and Albertelli Law Partners LLC for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq.; and of the Florida Consumer Collection Practices Act (FCCPA) FLA. STAT. §559 (Part VI).

A case management hearing was held on October 3rd, 2016, at which several discovery motions were ordered upon. All parties or their representatives were present to hear the Courts Orders.

## II.     Relief Requested

Plaintiff seek a protective order protecting him from having to respond to the untimely request for admissions.  Plaintiff also argues the requests for admissions seek information outside of the four corners of the complaint which are immaterial to the specific allegations set forth in Plaintiff's complaint of Defendants' violations of FDCPA and FCCPA.

As set forth in Plaintiff's second amended verified complaint in paragraph 25:

> Any alleged debt is not in question here. But the fact as to how it was or was not validated and wrongful actions of the DEFENDANTS in an attempts to collect an alleged debt, violated rights of the Plaintiff and the laws as outlined in the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. and the Florida Consumer Collection Practices Act ("FCCPA") Fla. Stat. §559 et sec.

DE 58 ¶25.

The Defendants are required to comply with the FDCPA whether or not any debt is owed. 15 U.S.C. § 1692a(3), (5),(6). The existence or validity of an underlying debt is not material in an FDCPA action. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). Defendants should not be permitted to examine or refer to any debt or to whether the Plaintiff owes any debt underlying this case. It is simply irrelevant as to whether Defendants violated the FDCPA. Thus, Defendants should not be permitted to examine any debt and Defendants' requests for admissions are objectionable.

Moreover, Plaintiff seeks a protective order protecting him from having to respond to the untimely request for admissions which were sent outside of the permissible time frame Ordered by the Court. In other words, Plaintiff seeks protection from having to respond to all request for admissions untimely propounded by Defendants on October 14, 2016.

Plaintiff's Motion for Protective order on Defendants' Untimely Requests for Admissions - Case No.: 14-cv-80009 - Page 2 of 5

Case No.: 14-cv-80009 - Page 002 of 74

### III. Certification

Plaintiff certifies that he attempted to confer via telephone with Defendants in an effort to limit the discovery requests in this manner, but Plaintiff was not able to reach counsel at such short notice and was unable to ascertain whether or not Defendants would agree to withdraw their untimely discovery request which fails to comport with this Courts Order. Because of the urgency of this motion Plaintiff submits it without response of the opposing counsel.

### IV. Argument

Federal Rule 26(c)(1) authorizes a party from whom discovery is sought to move for a protective order, stating that, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c)(1). To determine whether good cause exists for the issuance of a protective order, a court considers: (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order. *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). Good cause exists here to protect Plaintiff from the annoyance, oppression, and undue burden or expense of having to respond to the discovery requests that exceed the scope of permissible discovery under the Court's October 5 Order. At this stage in the litigation, the Court is considering only whether Defendants violated the FDCPA and FCCPA, in addition to the factual allegations and appended documents in the complaint. The scope of Defendants' requests are objectionable in that they seek irrelevant and immaterial information outside the four corners of the complaint, which is beyond the allowable scope and is oppressive and harassing, and intended to embarrass the Plaintiff. Additionally, the Court has appropriately limited the time allowed for Defendants to send requests for admissions. Under these circumstances, it is wholly appropriate to protect the plaintiff from the annoyance, oppression, and undue burden and expense of having to respond to these untimely, irrelevant, immaterial, and improper, objectionable discovery requests. *See,* e.g., *Avirgan v. Hull*, 116 F.R.D. 591, 592 (S.D. Fla. 1987) (limiting discovery to the issues clearly related to the central allegations of the complaint).

The four factors are met, as Plaintiff will suffer harm by having to respond to requests sent outside of the time permitted in the October 5 Order which already crafted the limited time for the discovery, no alternative is better in this stage of the litigation, and no discovery is required beyond the scope already provided for by the Court. Accordingly, by protecting

Plaintiff in the manner described above, discovery will be appropriately limited as set forth in the Court's October 5 Order.

## CERTIFICATE OF GOOD FAITH

Pursuant to Local Rule 7.1(a)(3), Plaintiff certifies that he attempted to confer via telephone with Defendants in an effort to limit the discovery requests in this manner, but Plaintiff was not able to reach counsel at such short notice and was unable to ascertain whether or not Defendants would agree to withdraw their untimely discovery request which fails to comport with this Courts Order. Because of the urgency of this motion Plaintiff submits it without response of the opposing counsel.

**WHEREFORE**, the Plaintiff *pro se*, John Pinson, respectfully moves this Honorable Court to issue a Protective Order limiting the discovery in the manner provided above by: (a) protecting Plaintiff from having to respond to any untimely requests for admissions; and, (b) protecting Plaintiff from having to respond to any irrelevant and immaterial requests for admissions; and any other relief as deemed equitable and just.

Dated: October 21, 2016

Respectfully Submitted,

John Pinson
526 Westwood Road
West Palm Beach, Florida 33401
561-833-4816
john@pinson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Clerk of the Court, and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, on the Service List below.

Signed October 21, 2016

John Pinson

## Service List

Matthew L. Schulis, Esq.
mschulis@albertellilaw.com
Albertelli Law
P.O. Box 23028
Tampa, FL 33623
Tel: 813-221-4743x 2621
Fax: 813-221-9171
*Attorney for Defendants:*
Albertelli Law Partners LLC
James E Albertelli PA

## Attached Exhibits:

| | | |
|---|---|---|
| Exhibit A | Oct 3, 2016, hearing transcript | 63 pages |
| Exhibit B | Oct 5, 2016 Order DE 136 | 3 pages |
| Exhibit C | Oct 14, 2016, Req's for admissions | 4 pages |

Plaintiff's Motion for Protective order on Defendants' Untimely Requests for Admissions - Case No.: 14-cv-80009 - Page 5 of 5

Case No.: 14-cv-80009 - Page 005 of 74

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 14-CV-80009-HURLEY

**JOHN PINSON,**                        .        "Exhibit A"

Plaintiff,                    .

        vs.                          .
                                     .
**ALBERTELLI LAW PARTNERS,**    .  West Palm Beach, FL
**LLC, et al.,**                .  October 3, 2016

Defendants.                   .

STATUS CONFERENCE
BEFORE THE HONORABLE DANIEL T. K.HURLEY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:        **JOHN PINSON**
                          Pro Se
                          **526 Westwood Road**
                          West Palm Beach, FL 33401

FOR THE DEFENDANTS:       **MATTHEW L. SCHULIS, ESQ.**
                          Albertelli Law
                          5404 Cypress Center Drive
                          Suite 300
                          Tampa, FL 33609
                          813-221-4743

Official Court Reporter:  Pauline A. Stipes
                          Fort Pierce/West Palm Beach
                          772-467-2337
                          HON. ROBIN L. ROSENBERG

```
 1              THE COURT:  Ladies and gentlemen, good afternoon.
 2         Case Number 14-80009, this is John Pinson versus the
 3    Albertelli Law Partners, LLC and James E. Albertelli, P.A.
 4         Let me begin by allowing the parties to make
 5    appearances.
 6              Why don't I recognize the Plaintiff.
 7         MR. PINSON:  John Pinson, the Plaintiff in this
 8    action.
 9              THE COURT:  Good afternoon.
10         Counsel for the Defense.
11         MR. SCHULIS:  Matthew Schulis on behalf of the
12    Defendant.
13         THE COURT:  Nice to see you.
14         Mr. Pinson, could you come up to the lectern for a
15    minute to help me out.
16         If I understand this case properly, there are two
17    letters that serve as kind of the basis of the lawsuit.
18         Are you okay?  What happened to your foot?
19         MR. PINSON:  I broke my leg.
20         THE COURT:  Are you all right?
21         MR. PINSON:  It is painful.  I put it in one of the
22    motions.
23         THE COURT:  This is a recent thing?
24         MR. PINSON:  Yes, I did a torque break on my leg.
25         THE COURT:  Is it painful to stand?
```

1          Let's bring a chair up to the lectern so I can see you
2      and you can sit down there.
3          Once we are done, I will let you go back to the desk.
4          If I understand the lawsuit, there are two letters
5      that serve as the basis of the lawsuit.
6          What is it you are claiming is wrong with the letters?
7          What was said in there that is not true, or you think
8      constitutes the gravamen of the lawsuit?  I want to make sure I
9      understand that.
10         *MR. PINSON:*  I requested validation under 15 U.S.C.
11     Section --
12         *THE COURT:*  Put the legalese aside.  You wrote them
13     what, how much do I owe you?
14         *MR. PINSON:*  No validation under the FDCPA.  From what
15     I understand, the original account level documentation --
16         *THE COURT:*  Let me back up for a minute.  What did you
17     do to incur a debt?  Did you incur a debt?
18         *MR. PINSON:*  Did I incur a debt?
19         *THE COURT:*  Yes.
20         *MR. PINSON:*  This is related to a mortgage I had.
21     They sent me a letter that stated that JPMorgan was a creditor.
22     I had a prior letter from JPMorgan stating that they weren't.
23         *THE COURT:*  At some point you borrowed money from
24     JPMorgan, you had a mortgage?
25         *MR. PINSON:*  I had a mortgage, I don't know if it is

Pauline A. Stipes, Official Federal Reporter

```
 1   JPMorgan.

 2           THE COURT:  Who gave you the mortgage?

 3           MR. PINSON:  Sir, I was trying to figure that out.

 4           THE COURT:  You are the borrower.  Who did you go to

 5   to get a mortgage?

 6           MR. PINSON:  This was a refinance I applied for on

 7   line from Continental Airlines.

 8           THE COURT:  At some point, are you informed that

 9   somebody believes you owe money to them?

10           MR. PINSON:  I have had numerous people say that.

11           THE COURT:  In this case, in this mortgage.

12           MR. PINSON:  Yes.

13           THE COURT:  So, you get two letters from Albertelli --

14   if you don't mind I will call it that for short -- is that

15   right?

16           MR. PINSON:  In response to my request for validation.

17           THE COURT:  What puts you on to Albertelli?

18           Rather than call them Albertelli, could I call them

19   the law firm?

20           MR. PINSON:  Sure.

21           THE COURT:  How did you know about them?

22           MR. PINSON:  I sent several requests for validation

23   and they responded back saying that Albertelli was going to be

24   involved, so I sent them a request for validation.  I didn't

25   get a straight answer.
```

1          *THE COURT:*  You wrote to Albertelli, the law firm?

2          *MR. PINSON:*  Yes.

3          *THE COURT:*  You said I would like validation of what?

4          *MR. PINSON:*  The letter is attached to my complaint.

5          *THE COURT:*  What did you say you wanted validation of?

6          *MR. PINSON:*  Validation of an alleged debt.

7          I am not trying to be difficult, Your Honor.

8          *THE COURT:*  By that I take it you meant, I want to

9    know that I owe you money.

10         Tell me in English what you are asking for.

11         *MR. PINSON:*  I am requesting someone to validate a

12   debt, show account level documentation, and who owns it and how

13   I could possibly owe a debt to a party they are claiming I

14   would owe a debt to.

15         *THE COURT:*  Okay, and they responded with three

16   letters, as I understand it.

17         The first letter we all agree is not a debt

18   collection, but there are two subsequent letters that the

19   Eleventh Circuit says qualify as debt collection letters.

20         *MR. PINSON:*  Correct.

21         *THE COURT:*  What is wrong with those letters?

22         *MR. PINSON:*  Under the FDCPA, they require a party not

23   to attempt to collect a debt until they have validated a debt.

24         Because the Defendants sent the offending letters

25   before they validated the debt, they violated the FDCPA, and in

1  like kind violated the Florida Consumer Practices Act.

2       THE COURT:  You are saying the violation of the

3  Federal act is an attempt to collect without first validating?

4       MR. PINSON:  Correct.

5       THE COURT:  Do you contend what they did say to you is

6  in any way in error?

7       MR. PINSON:  Yes.

8       THE COURT:  Is that alleged in the lawsuit?

9       MR. PINSON:  Yes.

10      THE COURT:  Okay, what is in error?

11      MR. PINSON:  They attempted to collect an alleged debt

12  they are not legally entitled to collect.

13      THE COURT:  No, we are not connecting, I guess.

14          In what they said to you, is there any erroneous

15  information they sent to you, that you contend is erroneous?

16      MR. PINSON:  They listed in the letter that JPMorgan

17  was a Plaintiff where JPMorgan does not own the debt.  JPMorgan

18  sent me a letter stating they don't own the debt.  That is

19  attached to the complaint.

20      THE COURT:  So, you are saying that the assertion that

21  JPMorgan owned the debt is erroneous.  Is that what you are

22  contending?

23      MR. PINSON:  Yes.

24      THE COURT:  Anything else?

25      MR. PINSON:  They included amounts that they were

Pauline A. Stipes, Official Federal Reporter

7

1  attempting to charge that weren't earned, and that violates the

2  FDCPA.

3        *THE COURT:*  You are saying the amounts that they were

4  claiming cannot be justified under the agreement that you had

5  with the lender?

6        *MR. PINSON:*  I don't know if it is under the agreement

7  I had with the lender, but you can't charge someone -- you

8  can't tell someone you have to pay amounts that aren't earned.

9        *THE COURT:*  Well, what determines whether the amounts

10  are earned?  You agree amounts owing is the agreement with the

11  lender, aren't they?

12        *MR. PINSON:*  I disagree with that.

13        If services are to be provided in the future, you

14  can't force someone to make the payments when they haven't been

15  earned.

16        *THE COURT:*  You are saying the amounts were wrong?

17        *MR. PINSON:*  That is part of it.

18        *THE COURT:*  What else?

19        *MR. PINSON:*  I am having trouble reading, Your Honor,

20  I am taking medication, and I thought we were here for a

21  motions hearing.

22        I am not trying to be difficult.  I have to review my

23  documents.

24        *THE COURT:*  Why don't you do that?

25        Mr. Marshal, could I ask you to move the lectern so I

```
 1    can see Mr. Pinson.
 2            Mr. Pinson, would you adjust that microphone so we can
 3    hear you?
 4            MR. PINSON:  This one?
 5            THE COURT:  Yes.
 6            MR. PINSON:  All right.
 7            I have alleged the Defendants falsely represented the
 8    character, amount and legal status of an alleged debt, and by
 9    threatening nonpayment of alleged debt would result in sale and
10    seizure of property where they didn't have a right to do so,
11    threatening to take a legal action they are not legally
12    entitled to take.
13            In fact, the documents referred to a case being filed
14    where no case is on the record in county court.
15            THE COURT:  What are you reading from, the second
16    amended complaint?
17            MR. PINSON:  Yes, Docket Entry 48.
18            THE COURT:  All right.
19            MR. PINSON:  In an attempt to collect an alleged debt,
20    they are attempting to collect information about a party.  In
21    this instance, when you look at the letter it simply states
22    that, call us for more information or call to do this.
23            If you call their phone number, if I call opposing
24    counsel, it states we are a debt collector.  Anything you say
25    can be used against you in a court of law.  This is an attempt
```

Pauline A. Stipes, Official Federal Reporter

1    to collect a debt.

2            For them to ask a party to call on the telephone under

3    those circumstances is an attempt to gain information on a

4    party that they don't have a right to do, to use it against

5    them.

6            THE COURT:  All right.  Now --

7            MR. PINSON:  There is one other --

8            THE COURT:  Let's stop right here.  I wanted to get a

9    sense of what the case is about.

10           MR. PINSON:  May I --

11           THE COURT:  Hold on a second.

12           I want to deal first with the issue of the admissions.

13           There is a motion to withdraw -- I take it what

14    happened here is, there was a request for admissions, and there

15    was no response.  There is a question about whether Mr. Pinson

16    received it, but Defense took the position it was entitled to

17    deem certain facts as admitted.

18           MR. SCHULIS:  That is correct, Your Honor; however, if

19    I may, we can short it cut and simplify this process.

20           As Your Honor clarified, the Eleventh Circuit narrowed

21    this down to two letters, both of which, if found to be

22    violations, my client takes the position it does not require

23    responses.

24           If they are violations, each would be entitled to

25    $1,000 in damages, plus costs.

Pauline A. Stipes, Official Federal Reporter

1          To clarify for the record, Your Honor, my office has

2     extended a Rule 28 offer for judgment for what would be the

3     maximum amount of this claim, $2,000, $1,000 for each letter,

4     plus $500 for costs.

5          The filing fee was 400, we are assuming summons costs

6     were incurred, and we rounded it up to 500.  I have a check

7     made payable for $2,500 today, Your Honor, to simplify this

8     matter.

9          Quite honestly, there are 18 motions pending before

10    you filed by the Plaintiff.  All of them can be resolved.

11         My client would stipulate to the entry of judgment, we

12    prepared an offer for judgment form, and we can all go home.

13         Under the controlling statute, Your Honor, out of this

14    district, Southern District, in Abby versus Page, 553 Federal

15    Appendix 970, which was affirmed by the Eleventh Circuit in

16    2014, which cited to the Florida Supreme Court case, there

17    cannot be a double recovery in this matter for FDCPA and FCCPA.

18         You can't be compensated twice for the same two

19    letters, which would clarify and simplify, one recovery for

20    each letter, or up to $1,000 each.

21         In addition, it is long held Florida case law you are

22    not entitled under Section K unless you are an attorney.  The

23    Plaintiff is pro se, so that takes that out of the equation.

24         Furthermore, Your Honor, the second amended complaint

25    requests equitable relief which, under Sibley versus Fulton

1  Dekalb Collection Service, 677 F.2d, 830, an Eleventh Circuit

2  ruling out of 1982, equitable relief, specifically declaratory

3  relief or injunctive relief is not available under the FCCPA.

4       So, simplifying this whole equation, we are looking at

5  the potential of a thousand dollars per letter and costs which

6  my client is ready, willing and able to pay right now.

7       So, I would make an ore tenus motion, Your Honor,

8  for --

9       THE COURT:  Mr. Schulis, let me ask you, if somebody

10 declines an offer like that, and let's assume that they prevail

11 at the trial, what are the consequences?

12      MR. SCHULIS:  Even if the Plaintiff prevails at trial,

13 the maximum recovery he would receive would be $2,500, which we

14 are willing to tender today.

15      THE COURT:  No, I am asking you -- it has been awhile

16 since I looked at it.  There is a Florida offer of judgment

17 statute, and so if someone declines that and they prevail at

18 the trial, what are the negative consequences attendant?  Are

19 there any?  Do they lose their costs or anything like that?

20      MR. SCHULIS:  Under the scenario, you are inquiring as

21 to potential impacts if the Plaintiff prevails at trial or does

22 not prevail at trial?

23      If the Plaintiff --

24      THE COURT:  Let's go with both of them.

25      Mr. Pinson believes he has a valid case that he could

 1   win.

 2            *MR. PINSON:*  Your Honor, can I answer that question?

 3            *THE COURT:*  Mr. Pinson believes he has a case that he

 4   could prevail.

 5            Let's assume he could prevail and there is an offer of

 6   judgment of $2,500.  What are the negative consequences, if

 7   any, to Mr. Pinson for that?

 8            *MR. SCHULIS:*  It would depend on the damages awarded.

 9   Under Section K, up to $1,000 can be awarded.

10            The Defendant has taken a position to offer it and

11   extend the maximum.

12            If the jury, or the Court under a directed verdict,

13   finds that they only want to award $500 per letter, the damage

14   to the Plaintiff would be reduced recovery.

15            *THE COURT:*  What happens if the Defendant wins at the

16   trial and there has been this offer of judgment?

17            *MR. SCHULIS:*  Under Rule 68, any costs incurred from

18   the offer of judgment through the entry in the event of a

19   Defense verdict would be awarded as damages under Section K.

20            *THE COURT:*  To the Defendant against the Plaintiff?

21            *MR. SCHULIS:*  Correct.

22            *THE COURT:*  It sounds like the real problem is if the

23   Defense wins and in the process of getting ready to go to trial

24   it had incurred significant costs.

25            *MR. SCHULIS:*  Correct, Your Honor.

Pauline A. Stipes, Official Federal Reporter

1          At this point, significant costs have been incurred

2    and the contemplation of the time involved not only arguing all

3    18 motions, but trial --

4          THE COURT:  I hear you.

5          Mr. Pinson, does that 2,500 sound good to you or not?

6          MR. PINSON:  Mr. Schulis fails to say in the complaint

7    the FCCPA Florida Statute provides for equitable relief.

8          THE COURT:  I come back to you once more.

9          Do you want to take the $2,500?

10         MR. PINSON:  No, sir.

11         THE COURT:  Okay, that is your decision.

12         Go ahead and memorialize it.  You made that offer and

13   we will deal with it appropriately.

14         MR. SCHULIS:  Notice of serving the offer is filed at

15   Docket Entry 112.

16         At this point, Your Honor, I make an ore tenus motion

17   for judgment on the pleadings.

18         THE COURT:  No.  No.  Let's stop right here.

19         Please make a note that you made the offer of

20   judgment, and we will deal with that at the appropriate time.

21         Okay, now let's go back to where we are.

22         Mr. Pinson, I want to make sure I understand your

23   position on the admissions.

24         Did you get a request for admissions?

25         MR. PINSON:  No, sir.

```
 1              THE COURT:  You say you never got them?

 2              MR. PINSON:  I never received them.

 3              THE COURT:  You say like you were sick and some other

 4    things.

 5              I want to know, did you receive a request for

 6    admissions?

 7              MR. PINSON:  I did not.

 8              THE COURT:  Your view is, A, I didn't get it; B, I

 9    shouldn't suffer the consequences of having these things deemed

10    admitted.

11              MR. PINSON:  I did not receive any --

12              THE COURT:  That is your position?

13              MR. PINSON:  Yes, sir.

14              THE COURT:  What is Defense's view on the admissions

15    issue?

16              MR. SCHULIS:  The request for admissions were noticed,

17    they were noticed that they were served.  They were served

18    according to the Court order by U.S. Mail, which is required in

19    this case.

20              THE COURT:  Did you get a return receipt requested?

21              MR. SCHULIS:  We put it in the U.S. Mail.  They were

22    printed, the notice was uploaded, a copy of the notice, as well

23    as request for admissions, interrogatories were all placed in

24    the U.S. Mail.

25              THE COURT:  All right.
```

1    MR. SCHULIS:  Notwithstanding, Your Honor, the

2    admissions only request to seek the Plaintiff's admission, A,

3    he took out the mortgage; and B, he has been in default since

4    2012, and there are no damages incurred, which none have been

5    pled.

6         THE COURT:  Okay.  Do actual damages have to be pled?

7         MR. SCHULIS:  If they are sought.

8         The Plaintiff proffered that he is seeking actual

9    damages.

10        THE COURT:  You don't see those having been pled?

11        MR. SCHULIS:  He produced no evidence --

12        THE COURT:  Is there a pleading for actual damages?

13        MR. SCHULIS:  It is contained within the boiler plate

14   second amended complaint.

15        THE COURT:  Here is my ruling on the admissions

16   issues:  I am granting the Plaintiff's motion to deem the

17   admissions withdrawn.

18        I will allow the Defense within five days of today to

19   once more issue a request for admissions.

20        I ask you keep them short and to the point, which I

21   think you did, and I will require the Plaintiff to respond

22   within five days of the receipt of the admissions.

23        Now, let's get back here for a second.

24        Mr. Pinson, when something is filed in the court file,

25   do you get it?

1          MR. PINSON:  Your Honor, I do not.

2          THE COURT:  No, when something is filed in the court

3    file, do you get a copy under CM/ECF?

4          MR. PINSON:  No, sir, pro se parties are prohibited

5    from participating in CM/ECF.

6          THE COURT:  When I enter an order, do you get a copy

7    of the order I entered on CM/ECF?

8          MR. PINSON:  I do not receive anything from you under

9    CM/ECF.

10         THE COURT:  Does the clerk mail a copy?

11         MR. PINSON:  Miami mails the order, if it is a

12   paperless order, it is a cover sheet --

13         THE COURT:  One more time, does the clerk mail you a

14   copy of an order I entered on CM/ECF?

15         MR. PINSON:  Yes, if you enter it, I get a paper copy.

16   If opposing counsel files something, I don't --

17         THE COURT:  Now, listen to me, stop.  We have had

18   problems in this case, I am not sure who is at fault and I am

19   not about to get into that.

20         I want to make sure requests for admissions get to Mr.

21   Pinson.

22         MR. SCHULIS:  I will serve it FedEx, signature

23   required.

24         THE COURT:  I want Mr. Pinson to do the same thing,

25   return them FedEx, signature required.

```
 1              MR. PINSON:  Yes, sir.

 2              THE COURT:  Within five days of today, the Defendants

 3    have a right to propound a request for admissions.  Within five

 4    days of the receipt of them the Plaintiff must respond.

 5    Failure to respond, they will be deemed admitted.  Okay.

 6              Now, let's move on to the next issue.

 7              Let's deal with the motion to continue.

 8              This case is now set on the October trial calendar.

 9              We need to address this case.  This is a case that

10    seems to me to be -- I don't minimize its importance, but it is

11    contained in these two letters, and it looks like it is

12    blossoming into all kinds of things.

13              I don't want that to happen.  I want you to get the

14    case to trial and present all of the issues that need to be

15    presented.

16              We all work together on that.

17              My inclination is to deny the motion.  I am about to

18    have a calendar call and I have a lot of criminal cases.  They

19    are going to take precedence, and you know that.

20              I will grant the Plaintiff's motion to continue.  I am

21    going to place this case on the November trial calendar.

22              I don't want you sitting back thinking you are rushing

23    to do these other things, but I want everybody to be prepared.

24              That takes those two motions off the table.

25              MR. SCHULIS:  Would it be possible to be set on the
```

```
 1    December calendar instead?

 2          THE COURT:  No.

 3          MR. SCHULIS:  I have oral arguments scheduled in two

 4    different districts.

 5          THE COURT:  I will work with you on this.

 6          Is this a jury trial or nonjury?

 7          MR. PINSON:  This is a jury trial.

 8          THE COURT:  All right.

 9          MR. PINSON:  Your Honor, I thank you for moving the

10    trial calendar.  I have pending motions for discovery --

11          THE COURT:  No.  We are not on that.  I have continued

12    the trial.

13          What documents, Mr. Pinson, have you not received?

14          Take them one at a time.

15          You have a request for production, do you not?

16          MR. PINSON:  I would rather start with the

17    interrogatory.

18          THE COURT:  No, start with the request for production.

19    What documents have you not received?

20          MR. PINSON:  I have not received any documents.

21          THE COURT:  What documents have you asked for that you

22    have not received?

23          MR. PINSON:  The first instance, I had requested

24    something to prove the first --

25          THE COURT:  What documents have you asked for that you
```

1    have not received?

2            Read me the documents you asked for, and I will rule

3    on them as we go.

4            *MR. PINSON:*  Produce a document evidencing the person

5    answering interrogatory number one.  Interrogatory number one

6    is the person answering interrogatories under oath.  That was

7    not provided.

8            *THE COURT:*  I overrule that.

9            What is the next document?

10           *MR. PINSON:*  Produce documents evidencing answer to

11   interrogatory number two which had to do with parties that had

12   knowledge about the suit.

13           *THE COURT:*  No.  No.  We are not doing this.

14           *MR. PINSON:*  Well --

15           *THE COURT:*  We are not doing this.

16           *MR. PINSON:*  Number three is relevant.

17           *THE COURT:*  What document do you want that you haven't

18   received?

19           *MR. PINSON:*  Produce the manuals with practices and

20   their dissemination or disposable -- data for the preceding

21   five years, and the incident arose in 2013, so that is well

22   within reason.

23           And, actually, I was thinking of a different one

24   which -- I requested information relating to their policies on

25   avoiding violations of FDCPA and FCCPA, training materials and

1  things like that, which is relevant to the affirmative defense

2  of bona fide error.

3       THE COURT:  I grant that.

4       I want you to produce whatever documents you have

5  outlining the policies of the law firm to avoid errors.  And

6  this is with reference to the bona fide defense, bona fide

7  error defense.

8       MR. SCHULIS:  Your Honor, if I may, for the Court's

9  reference, this impacts our pending motion for protective order

10 which has been filed, as well as a motion in limine, Docket

11 Entry 108 and 109, with respect to production.

12      Our objection with regard to the documents is that

13 procedures which may or may not exist are attorney/client

14 privilege documents, they are specific to each client.

15      THE COURT:  Did you serve a bona fide error defense?

16 I thought you did.  That is why I am concerned.

17      MR. SCHULIS:  I believe so.

18      THE COURT:  If you did, then the Plaintiff has a right

19 to see the policies and procedures you have in effect so that

20 errors don't occur.

21      If you want to assert this defense, you have a right

22 to do it, or withdraw it.

23      MR. SCHULIS:  We'll withdraw the defense.

24      THE COURT:  You are going to withdraw the defense?

25      MR. SCHULIS:  In open court.

```
 1              THE COURT:  Then it is withdrawn.  All right.

 2              Where does that leave us?  They are withdrawing their

 3    bona fide error defense.

 4              They are operating on a strict liability.  They are

 5    going to go on the position what they did was not erroneous.

 6              Is that right?

 7              MR. SCHULIS:  That is right.

 8              THE COURT:  The bona fide error defense is off the

 9    table.

10              Is that your understanding, Mr. Schulis?

11              MR. SCHULIS:  That is right.

12              THE COURT:  I will grant that motion to withdraw the

13    bona fide defense.  That is off the table.

14              Now, what documents do you need that you did not

15    receive?

16              MR. PINSON:  I requested copies of liability policies

17    that would require the alleged liability --

18              THE COURT:  I overrule that.  What is the next

19    document?

20              MR. PINSON:  Any consumer reports that they may have

21    gained on me.

22              THE COURT:  I overrule that.

23              What is the next request?

24              MR. PINSON:  Copies of any complaints or partitions in

25    any action filed by the Defendants against me.
```

1      *THE COURT:*  Why don't you have those, Mr. Pinson?

2      *MR. PINSON:*  As part of my complaint, I don't

3   believe --

4      *THE COURT:*  You are asking them to give you something

5   they filed against you.  If they did, why wouldn't you have a

6   copy of it?

7      *MR. PINSON:*  I don't know.

8      *THE COURT:*  I will overrule that.

9      What is the next one?

10     *MR. PINSON:*  Any investigative reports they prepared

11  or retained which reference me.

12     *THE COURT:*  What is the purpose of that?

13     *MR. PINSON:*  An investigative report is something

14  which would be obtained from a consumer reporting agency that

15  goes beyond a normal credit report.  It includes information

16  related to insurance, prior legal claims, lawsuits --

17     *THE COURT:*  What is the relevance of that to the

18  lawsuit?

19     Let's assume they did do it.  They get a complaint

20  filed by John Pinson, they say we want to see who Mr. Pinson

21  is.  Let's assume they did that.  Why is it relevant to the

22  lawsuit that you should have it?

23     *MR. PINSON:*  In my FCCPA claim, there's a level in

24  there you could go for willfulness, willfulness is part of the

25  standard.  If they had made a report and they didn't -- they

1    still sent letters alleging an alleged creditor that is not a

2    creditor, then they were willful when they sent the letters.

3            I am sorry if I am not making sense.

4            THE COURT:  All right.  Let me hear the response.

5            MR. SCHULIS:  I would argue these documents, if they

6    exist, which I don't believe they actually do, aren't relevant.

7            The Eleventh Circuit narrowed this issue to two

8    letters sent in response to a request for validation.

9            THE COURT:  I sustain the objection.  I overrule the

10   request for that.

11           What is the next thing?

12           MR. PINSON:  I don't remember, but the -- I don't

13   believe the Eleventh Circuit referenced the error issues.

14           Any other identifiers, Social Security number,

15   communication between the Defendant and any other entity or

16   person.

17           THE COURT:  I will overrule that.

18           What is the next one?

19           MR. PINSON:  I requested financial information to see

20   if they are capable of settling against them, actual damages.

21           THE COURT:  I will overrule that.

22           MR. PINSON:  There is case law that supports it.

23   Attached to the complaint, the first letter I received from the

24   Defendant which the Eleventh Circuit said wasn't in violation

25   was signed by an individual, Andrea Hearn.  It was also signed

Pauline A. Stipes, Official Federal Reporter

24

1   on behalf of the litigation attorney Joseph Dillon.

2        Because those people signed that, they would have

3   knowledge about the violation that occurred and how it

4   occurred, and because the 24 letters weren't signed by any

5   individual, I wanted to know if there was anything in the file

6   about being reprimanded for violating FDCPA, and I would intend

7   to depose them to find out about the 24 letters and how they

8   were generated.

9        THE COURT:  I will overrule that, understanding I am

10  not overruling on deposition.

11       MR. PINSON:  Yes, sir, request for production, I

12  appreciate that.

13       Any telephone messages or logbooks, what might be

14  referred to as Bates records in collection actions that the

15  Defendant may have on their attempts to contact me.

16       I want to examine it to see if it was limited to just

17  the letters that I filed attached to my complaint so they don't

18  come up with something else later and say we did this and here

19  it is.

20       THE COURT:  I will overrule that.

21       MR. SCHULIS:  For clarification, when you are

22  overruling, you are overruling Defense's objection?

23       THE COURT:  No.  I'm sustaining the Defense objection.

24  I want to be clear, sustaining Defense objection to these

25  requests.

1      MR. SCHULIS:  Thank you.

2      MR. PINSON:  I requested documents evidencing

3  creditors they are alleging.

4      THE COURT:  Run that by me again.

5      MR. PINSON:  Producing documents of creditors of any

6  alleged debt.

7      To the extent that the Defendant sent letters alleging

8  a party that says they don't own the debt, who is the party

9  that owns it.

10     THE COURT:  You are asking for documentation as to the

11  particular debt?

12     MR. PINSON:  The owner of the debt.

13     THE COURT:  Let me turn to Mr. Schulis on that.

14     Is there an objection to that?

15     MR. SCHULIS:  I apologize, Your Honor.

16     MR. PINSON:  Producing documents of the creditor of

17  any alleged debt.  To the extent the letter indicated Chase,

18  and Chase tells me they don't own the debt, who is the

19  creditor.

20     MR. SCHULIS:  I would argue these are attorney/client

21  privilege documents.

22     Our position in this nexus of issues, Albertelli Law

23  was retained in prosecuting mortgage foreclosure actions, and

24  documents sent in the referral package evidencing the default,

25  balance due on the account, all of the original documents,

26

1    original mortgage, all constitute attorney/client privilege

2    documents that are received in the course of our representation

3    of the third party.

4         *THE COURT:*  I want to put this to you.

5         In the effort to collect the debt, the law firm

6    expressly indicated in the letter that it was a debt collector.

7    As I recall, that term is actually on the letter sent by the

8    law firm.

9         As I understand what Mr. Pinson is saying, will you

10   please provide to me the documentation that you relied upon in

11   sending the letter to him.

12        How can that be attorney/client privilege?

13        *MR. SCHULIS:*  At this point, Your Honor, it is the

14   original mortgage and the retention from our client indicating

15   a default and our office has been retained to represent them --

16        *THE COURT:*  He is not asking for that, he is asking

17   for the documentation that would support your -- I guess

18   assertion in the letter that he owes the money on this

19   particular mortgage.

20        Is that what you are asking for?

21        *MR. PINSON:*  They assert I owe this particular money

22   to JPMorgan Chase where Chase says they don't own the loan.

23        *THE COURT:*  Let's back up for a minute.

24        Let's assume the lender was Chase and Chase sold the

25   mortgage to somebody else.  We all know that is the way it

Pauline A. Stipes, Official Federal Reporter

1    operates.

2         In the old days, you go to First Federal, you have a

3    mortgage, and you can go 20 years later and the mortgage is

4    right there in the safe.  For better or worse, those days are

5    long gone.

6         One of the great problems in the mortgage foreclosure

7    crisis, if you will, was tracking down who had the mortgage and

8    to whom it had been assigned and going down that chain.

9         I understand what Mr. Pinson is contending, he just

10   wants to see the documentation that establishes the mortgage

11   liability.  That is not attorney/client privilege.

12        *MR. SCHULIS:*  I would argue it is.  Upon receipt of

13   the debt validation request, we contacted our client requesting

14   they provide payoff filings and redemption filings.  That

15   correspondence is attorney/client privilege.

16        We responded, the December 24th letter, and this

17   matter was proceeding to foreclosure, State Court foreclosure,

18   which Mr. Pinson was more than willing to raise standing issues

19   and all those other issues, but that is notified because we

20   have been sued for these two letters.

21        So, we have still been retained as counsel for Chase

22   to prosecute the mortgage foreclosure.  Those communications

23   were sent from our client to us in furtherance of responding to

24   the request and in furtherance of prosecuting the mortgage

25   foreclosure action, so I would argue they are privileged

1    communications, Your Honor.

2         THE COURT:  Maybe I am missing something, and you can

3    help me on this.

4         The Plaintiff has the burden of proof here.  The

5    Plaintiff is going to have to prove that whatever

6    representation you made in the letter is erroneous.

7         Does he not?

8         That is one of the grounds.  Remember I started by

9    saying what was wrong, and one of the grounds, as I understood

10   Mr. Pinson, was a statement in the letter asserting that

11   JPMorgan owned the debt.

12        So, he is going to have to prove that, and I assume he

13   has to prove that is erroneous.

14        Aren't you going to come back and prove the statement,

15   whatever it was, is correct?

16        MR. SCHULIS:  Your Honor, my client has taken the

17   position it is irrelevant.  We are willing to stipulate to a

18   judgment.

19        THE COURT:  No.  Wait a minute.  Put the judgment

20   aside for a minute.  That doesn't make it relevant or not

21   relevant.  He doesn't accept your judgment.

22        Let's come back.  He is contending you made a factual

23   misstatement in the letter to him.  He wants to see the

24   documentation that supports the statement you made.

25        You are saying that is attorney/client privilege?

1      MR. SCHULIS:  The communications evidencing the

2   filings --

3      THE COURT:  He is not asking for communications, he is

4   asking for documentation that shows that whatever lending

5   institution --

6      MR. SCHULIS:  That is the communication in addition to

7   the attorney/client privilege retainer agreement with our

8   client to prosecute the foreclosure case.

9      To that end, any issues regarding the validity of the

10  amount owed I think are issues that are retained for the

11  foreclosure actions themselves.  Part of that is to prove

12  standing, holding of the note, default, amount due, damages,

13  and judgment will be entered.

14     THE COURT:  Undoubtedly you are correct on that, a

15  foreclosure action, but this is an assertion there is a

16  violation of the Federal Debt Collection Practices Act.

17     So, as I understand it, if the Plaintiff contends you

18  made an erroneous statement to collect the debt, you may be

19  liable.

20     Are you admitting you did make an erroneous statement?

21     MR. SCHULIS:  That is not the case.

22     THE COURT:  If you are not, doesn't he need to obtain

23  the documentation you are relying upon to justify your

24  assertion?

25     MR. SCHULIS:  The information contained in the letter,

 1    the balance due, reinstatement amounts, repayment amounts, all

 2    are contained within the email correspondence and verification

 3    that was the attorney/client privilege communication.

 4              THE COURT:  Can you help me out on this?  Does

 5    somebody have a copy of the two letters?

 6              Can you help me out on that?

 7              MR. PINSON:  May I approach?

 8              THE COURT:  Yes.  Give it to the Marshal.

 9              MR. PINSON:  I point to --

10              THE COURT:  No, give it to the Marshal.

11              MR. PINSON:  Flip back a couple of pages.

12              THE COURT:  I want to see the assertion.

13              Mr. Pinson, is this the letter up top?

14              MR. PINSON:  That is the letter where they say they

15    sold the mortgage.

16              THE COURT:  Where are the two letters that you say --

17              MR. PINSON:  I think it might be D, I am not sure.

18              MR. SCHULIS:  I believe it is E, Your Honor.

19              THE COURT:  Albertelli at the top and to Mr. Pinson?

20              MR. SCHULIS:  Correct.

21              THE COURT:  Okay.

22              Let me read this.  It says Re: Payoff Statement,

23    JPMorgan Chase Bank National Association versus John D. Pinson,

24    a loan number, a property address, and so on.

25              Now, do I understand you want, Mr. Pinson, the

1    documentation behind this?

2            MR. PINSON: My request is for the documents

3    evidencing the creditor of any alleged debt, that would include

4    not only a note and mortgage, but any assignments to the extent

5    that their alleged client, JPMorgan Chase, wrote to me saying

6    the loan was sold to a --

7            THE COURT: I will grant that and require the

8    Defendant, if they have it, to produce the documents dealing

9    with the mortgage that is alleged here.

10           Not your correspondence from your client, the

11   documents, if you have them, that show the mortgage.

12           MR. SCHULIS: Your Honor, I would request that

13   certified copies be acceptable rather than the original note

14   and mortgage.

15           THE COURT: Any problem with certified copies?

16           MR. PINSON: At some point, it is important to see the

17   original.

18           THE COURT: I am going to allow certified copies.

19           I want you to produce a certified copy of the mortgage

20   that is referred to here from JPMorgan Chase.

21           Not the correspondence with your client, but the

22   mortgage documentation that you have.

23           What is the next thing?

24           MR. PINSON: Does that include assignments, Your

25   Honor?

Pauline A. Stipes, Official Federal Reporter

1    THE COURT:  Yes, if it has been assigned to some other

2  bank, if they have it.

3    MR. PINSON:  Right.

4    THE COURT:  What is next?

5    MR. PINSON:  That was the last thing in request for

6  production.

7    THE COURT:  All right.  Now, we have real problems

8  with interrogatories, you are all over the place.

9    I put this to you:  Wouldn't it make sense, if you are

10  not going to settle the case, to simply take depositions?

11    MR. PINSON:  In order to conserve resources --

12    THE COURT:  We are not conserving resources --

13    MR. PINSON:  -- and the narrow issues that I would

14  seek in deposition, I submit interrogatories.

15    THE COURT:  I will not allow that.  You are not

16  conserving anything.  This is getting out of hand.

17    I want you to set somebody down for deposition and

18  answer the question.  Who do you want to depose?

19    MR. PINSON:  I was trying to find the best party to

20  depose.

21    THE COURT:  Who do you want to depose?

22    MR. PINSON:  Probably a corporate representative, or

23  the attorney, Dillon, or Andrea --

24    THE COURT:  Is that all right?

25    MR. SCHULIS:  Corporate representative, that would not

33

1    be a problem, the attorney who sent the letter --

2          THE COURT:  Who would be the corporate person

3    concerning the case?

4          MR. SCHULIS:  I don't know which partner is

5    responsible for this aspect.

6          With regard to the actual people signing the letters,

7    they may or may not still be employees of the firm.  They would

8    be acting as agents for the firm, a corporate depo would

9    accomplish the information.

10         THE COURT:  How about taking a deposition of the

11   corporate representative and come back to me if that is not

12   adequate?

13         MR. PINSON:  We can do that.  My intent was even to

14   determine if these people that I had requested information on

15   were still associated with the firm.  As Mr. Schulis said, they

16   might not be.

17         THE COURT:  You can ask that from the corporate

18   representative, and if what you get is not adequate, come back

19   to me.  Okay?

20         MR. PINSON:  That is reasonable.

21         THE COURT:  All right.  Does that cover everything?

22         MR. SCHULIS:  We have not discussed the motion in

23   limine and protection order.

24         Your Honor --

25         THE COURT:  Who filed a motion in limine?

1    *MR. SCHULIS:*  We filed one, and I believe the

2    Plaintiff filed six.

3    *THE COURT:*  Let me tell you what my general approach

4    is.  You tell me if this is acceptable to you and adequate.

5    I have generally found it is very difficult, if not

6    dangerous to grant motions in limine before trial.

7    I don't know about the case like you folks do, you

8    have lived it and spent all this time.  I would be in a better

9    position to make those judgments as we go along during the

10   trial.

11   Obviously, I would deal with it before the issue

12   arose.  Every night when the jury would go home we'd deal with

13   whatever is coming up the next day.

14   I know there are some things in there about referring

15   to people as deadbeats and things like that, and we will deal

16   with all of that before the opening statements.

17   So, I don't think there is a problem.

18   My suggestion would be everybody should sit back and

19   relax and get ready for trial and let's deal with the motions

20   in limine when we get ready for trial.

21   I want you folks to have a fair trial and I will deal

22   with that, but I think I will understand the landscape better

23   as we get closer to the trial date.

24   I want you to get prepared and I want you to stop

25   filing motions and getting yourselves caught up in the motion

Pauline A. Stipes, Official Federal Reporter

1    and response and what have you rather than really getting ready

2    for trial.

3         Mr. Pinson, look, my job is to give you a trial if you

4    want it, and I am willing to do that.

5         I would ask you to give real thought to taking that

6    check for $2,500 and bringing this whole thing to a close,

7    because I have found situations where people think they are

8    going to get the world and they walk out in a different

9    situation.

10        I don't know that, you may get a jury that looks at

11   this and says there are actual damages, and you pled them and

12   so on.

13        Now, if there is a request for actual damages and you

14   pled it, and they acknowledge you pled it, they are going to

15   take depositions from you as to what are your actual damages.

16        You ought to think about that.

17        I leave that to you folks.  I wish I could help you to

18   bring this problem to closure.  I know you have been all

19   involved in it.

20        One of the things about the adversary position is, it

21   pits you against each other, and in a lot of respects that is a

22   good thing.

23        The problem is, sometimes you could lose your

24   perspective about what the case is really worth and everything.

25        I don't know, maybe you do have actual damages that

1    you could establish and a finder of fact -- that the jury would

2    find credible.  I just don't know that.

3            It sounds to me that is what you are going on,

4    statutory damages don't reflect what the case really involves.

5            That is what you ought to be looking at.

6        MR. SCHULIS:  Your Honor, if I may, the motion in

7    limine, I understand Your Honor wants to address it before we

8    get to trial, but this seems to be shaping up as a one-hour

9    trial possibly --

10        THE COURT:  I don't know.

11        MR. SCHULIS:  Plaintiff's witness and exhibit list

12   indicates no witnesses.

13        THE COURT:  I understood that.  I don't know if Mr.

14   Pinson is sticking with that.

15           You filed something that suggested you are calling no

16   witnesses and you have five exhibits.

17        MR. PINSON:  I filed that at the time it was due, I

18   hadn't received responses to discovery.  You have extended the

19   time for discovery to do depositions, and I would seek to

20   supplement that based on what I find.

21        THE COURT:  Let's address that, that is important.

22           Can you give me a sense, what kind of damages are you

23   seeking here?

24        MR. PINSON:  It is going to be related to what is in

25   the letter and what I find out in deposition.

Pauline A. Stipes, Official Federal Reporter

1          *THE COURT:*  You know what your damages are.  Did you

2     lose your job?

3          What happened as a result of all of this?

4          *MR. PINSON:*  Them sending the letters?

5          *THE COURT:*  Yes.

6          *MR. PINSON:*  The allegations they leveled against me

7     in those letters?

8          *THE COURT:*  What happened to you because of that?

9          I know you were angry and you filed a lawsuit.  What

10    are your damages?

11         *MR. PINSON:*  I am not able to answer that.

12         *THE COURT:*  Do you have actual damages?

13         *MR. PINSON:*  I believe I do.

14         *THE COURT:*  Do you know what actual damages are?

15         *MR. PINSON:*  I believe I do, I can't recite them at

16    the moment.

17         *THE COURT:*  Let me tell you this, you will have to

18    recite it to them.  They will take your deposition and say tell

19    me what are your damages, what are they, how much did you lose,

20    do you have a receipt, did you lose your job, so on and so

21    forth.

22         You will have to deal with this to the dime, you

23    understand this?

24         *MR. PINSON:*  Yes.

25         *THE COURT:*  All right.  Let's see if we can reach some

1    agreements.

2         We know we are looking at a November trial calendar.

3         When should discovery stop?

4         Here we are, today is October 3rd.  How about if

5    discovery stops Wednesday, October 26th.

6         That gives you almost four weeks of discovery, to

7    conduct your depositions.

8         *MR. SCHULIS:*  I believe the Defendant can work with

9    that, notwithstanding geographical challenges.

10        *THE COURT:*  Tell me what they are.  Where are you, Mr?

11   Schulis?

12        *MR. SCHULIS:*  We practice out of Tampa.

13        *THE COURT:*  Do you really?

14        *MR. SCHULIS:*  Yes.

15        *THE COURT:*  You came all the way over?

16        *MR. SCHULIS:*  Yes.

17        *THE COURT:*  You are not in the Albertelli law firm?

18        *MR. SCHULIS:*  I am.

19        *THE COURT:*  Where are you, Mr. Pinson?

20        *MR. PINSON:*  Here.  I guess I would have to go to

21   Tampa, notice them properly and find a place to conduct it.

22        *THE COURT:*  They'd probably use their office if you

23   feel comfortable there.

24        I leave it up to you folks.  Probably it would be more

25   convenient for their person, whoever it is, and the documents.

```
 1              How about Wednesday, October 26th?

 2         MR. PINSON:  I have to prepare a notice for deposition

 3    and the items that they need to answer and serve that upon

 4    them, and I believe I have to give them at least 14 days

 5    advance notice, and I have to find a court reporter and others

 6    that are available at that time.

 7              It is cutting it tight for me as a pro se and having

 8    to go to Tampa with a broken leg.

 9         THE COURT:  Friday, October 28th, how does that sound

10    to you?

11         MR. PINSON:  I can try to work with that if that is

12    what Your Honor decides.

13         THE COURT:  All right.  I am not granting any

14    extensions.

15         MR. PINSON:  You asked me to come back to you after

16    deposition if I need to.

17         THE COURT:  You need to do it early.

18              I am not going to extend the deposition time.  Get

19    with Mr. Schulis, you can waive that 14 day time, if you agree

20    to it.  Get them to get the corporate representative, get it

21    set and get it done.

22         MR. PINSON:  In the event another party would need to

23    be deposed, I have to have 14 days to set that up, too.

24         THE COURT:  I leave that to you.

25         MR. PINSON:  That is where it cuts the time short.  If
```

Pauline A. Stipes, Official Federal Reporter

1    I depose the corporate representative and find out about Andrea

2    Hearn and choose to depose her, I have to serve her --

3           THE COURT:  If Andrea Hearn works for the law firm, I

4    suspect maybe you deal with each other, not as litigants but

5    people talking to each other.  Maybe Ms. Hearn will be there

6    and willing to allow you to take her deposition.

7           If the other fellow is with the firm, maybe he would

8    come down the hall and you do it in one fell swoop.  That can

9    happen.  That is a degree of cooperation.

10          MR. PINSON:  They have to assent to that.

11          THE COURT:  They would, I am sure they would.

12          This is tough when someone is pro se doing these

13   things.  Depositions are factual questions, you ask a question,

14   you get an answer, ask a question, get an answer.  You can't

15   argue, you ask questions and get their answers.

16          You want to think about that and be prepared.

17          How about the deadline for submitting your witness

18   list and your exhibit list?  I think that should be no later

19   than Friday, October 14th.

20          MR. PINSON:  Before potentially deposing the parties?

21          If information comes up --

22          THE COURT:  Let's deal with one thing at a time.

23          You need to know who the witnesses are going to be so

24   you decide who you are going to depose, don't you?

25          MR. PINSON:  Yes.

1          THE COURT:  You know who your witnesses are going to

2     be now.

3          MR. PINSON:  But I could find out during deposition if

4     there are other witnesses.

5          THE COURT:  I agree, but don't we need to know who the

6     witnesses are before discovery cut off, doesn't that make

7     sense?

8          MR. PINSON:  It is just tight.

9          THE COURT:  It is very tight.  I am suggesting Friday,

10    October 14th.

11         That means that on Friday, October 14th, you will file

12    in the court file a copy of all of your intended witnesses for

13    trial and all of the exhibits that you are going to offer.

14    Okay?  Both sides, same day.

15         MR. PINSON:  How long do the Defendants have to

16    respond to the request for production that you authorized?

17         THE COURT:  Hold that.  Is that agreed now?

18         MR. PINSON:  Yes.

19         THE COURT:  The deadline for filing the list of

20    exhibits for each side is October 14th, and your complete list

21    of exhibits.  Okay?

22         All right.  Discovery cut off is Friday, the 28th.

23    The case is going to be on the November trial calendar.

24         The production of the documents I mentioned from the

25    Defense to the Plaintiff should -- remember, these are the

1    documents that are in the possession of the Defense -- Friday,

2    October 7th.

3              Can you do it this Friday?

4              MR. SCHULIS:  I should be able to get it by Friday.

5              THE COURT:  All right.  Okay.

6              What else do we have to talk about?

7              MR. PINSON:  What is the date of pretrial set for

8    November out of curiosity?

9              THE COURT:  There is a calendar call.

10             Let me tell you what happens.

11             There is a calendar call and the calendar is really a

12   November-December calendar.

13             I know this is frustrating for civil parties, but the

14   problem is, as you know, criminal cases come in, sometimes they

15   come totally out of the blue and they have speedy trial

16   concerns so they jump to the top of the calendar.

17             Now, I will do everything in my power to accommodate

18   all of your concerns, your other obligations, the length of the

19   trial and so on.

20             We don't want to try this case over Thanksgiving,

21   nobody wants to be here then.  You don't want a jury that

22   doesn't want to be here.

23             How long will this case take to try from what you know

24   today, Mr. Pinson, your case?

25             MR. PINSON:  Depending on what is produced in

1   discovery, not even a day.

2          *THE COURT:*  Roughly a day.  I have to tell you, I am

3   not being unduly pessimistic, I usually take the estimates and

4   multiply them by three.

5          How about the Defense case?

6          *MR. SCHULIS:*  Should be half a day at the very most.

7          *THE COURT:*  Think about this, we are talking about

8   maybe two, three days, four days.  It takes a little time to

9   pick a jury.

10          In Federal Court the minimum number of jurors is six.

11   Probably we want to pick seven or eight jurors in a short case.

12   If somebody got sick you would have a comfort level.

13          Remember, there are no alternate jurors in Federal

14   Court, anybody who sits goes back and deliberates.

15          As we get closer to the time of trial I will ask your

16   help in the kinds of questions you think we need to put to the

17   jury venire, the whole group, to help you select who you want

18   on this jury, what concerns you have, people who have problems

19   with banks, people who have been foreclosed on, people harassed

20   by debt collectors, all that kind of stuff.

21          You want to think about that.

22          What I want you to do is sit down, stop filing

23   motions, and please get ready for trial.

24          That means look at your documentation, focus your

25   case.  We don't want somebody who is coming in who is really an

1    important witness and they haven't been disclosed.  I can't

2    tell you the problems that causes.

3            I know that $2,500 doesn't sound like adequate

4    compensation for you.  They are willing -- with all due

5    respect, they are willing to give it to you and say please go

6    away.

7            For you to get more than that, if you are relying on

8    actual damages, you have to have actual damages.  You have to

9    be prepared to say here are the damages I have, and they in

10   fact meet the definition for actual damages, and I can prove

11   it.  You have to be prepared to do it.

12           They are going into it.  They will take your

13   deposition and they are going to ask you to validate what

14   damages you are claiming and what proof you have and they have

15   a right to go behind that to be able to look at that.

16           I want everybody to think about this.

17           If you folks are off on something like that and it

18   doesn't pan out, here is the $2,500 that would end the lawsuit

19   right off the bat.

20           You know that is not for me to decide, that is for you

21   folks to decide.

22           We all know that statutory damages are capped at a

23   thousand dollars a letter and then your cost.

24           Let's be candid with each other, if you move in the

25   direction you are talking about today, you are going to get

1    costs, your court reporter, the cost of transcripts and

2    everything else.

3           I want you to think about that.  Those are the kind of

4    judgments.

5           Mr. Pinson, you have a broken leg, you have other

6    things in your life concerning you.  You are talking about

7    going over to Tampa for the deposition.  These are human

8    factors that enter into the decision about how you go, and

9    whether you do it, so on and so forth.

10          I leave this with you.  This case has been festering

11   for awhile.  It needs to come to an end.

12          I will do everything I can to make sure you are

13   prepared and we have a trial date suitable for both parties.

14          I would ask you to think more about the $2,500 and

15   whether you think it is acceptable or not.

16          Whatever you decide is fine with me.  We will go from

17   there and move forward.

18          *MR. PINSON:*  Your Honor, if I prevail in my case, are

19   my costs recoverable for the appeal to the Eleventh Circuit?

20          *THE COURT:*  You mean the --

21          *MR. PINSON:*  Filing, if that was -- the transcript

22   that was filed.

23          *THE COURT:*  What did they say?

24          *MR. PINSON:*  Just reversed and remanded.

25          *THE COURT:*  Did you ask for them?

1        I only had one case for this, I go back to where there
2   was an appeal and reversal.  The Eleventh Circuit awarded costs
3   and it became my obligation to factor that in the judgment.

4        If the Eleventh Circuit didn't award costs, I don't
5   know that I am authorized -- my suspicion is that I don't have
6   the authority to award those costs.

7        That is something you want to think about when you are
8   evaluating do I take the $2,500 or not.

9        *MR. PINSON:*  That was a thousand bucks.

10       *THE COURT:*  This is an expensive process.

11       I am asking you folks before you get driven by the
12   adversary aspect of it that you kind of sit back, there is a
13   business judgment thing.

14       I suspect that is what led the Defense to say, here,
15   take the $2,500.

16       If you talk to them, I am sure they would say
17   everything we did was fine.  That is their view, okay.  Who
18   knows whether it is right or wrong.

19       They made a business judgment to say take the $2,500,
20   rather than the protracted time and money.

21       I want you to think about that.

22       I am glad we had an opportunity to talk about this.

23       *MR. PINSON:*  There is another issue, two Defendants in
24   the case, two violations, that makes it four.

25       *THE COURT:*  You have a legal issue about double

1   recovery.  That is a legal matter, we have to look at it.

2        MR. PINSON:  There's plenty of case law that allows

3   FDCPA and FCCPA --

4        THE COURT:  You have been living with this lawsuit, I

5   deal with lots of lawsuits.  I need to come back and come up to

6   speed and help you out in this.  You help me out in that

7   regard.

8        It probably can't be double recovery.  If the law says

9   it can be, fine, okay, it is just that simple.

10       What else do we need to deal with to get ready for

11   trial?

12       MR. SCHULIS:  Production deadline, with the certified

13   copies, we said October 7th.  Certified copies coming from Palm

14   Beach County, I will request them tomorrow.  It may not be

15   until the following Monday.

16       THE COURT:  Let's change that.  The production is to

17   be achieved by -- let's say Tuesday, October 11th.

18       MR. SCHULIS:  Okay.

19       THE COURT:  Production, Tuesday, October 11th.

20       MR. SCHULIS:  Thank you, Your Honor.

21       MR. PINSON:  Your Honor, the exhibits to my complaint,

22   if I submit them in evidence is it okay if I have certified

23   copies of those?

24       THE COURT:  What are they?

25       MR. PINSON:  The letters from JPMorgan Chase, letters

1    from Albertelli.

2              THE COURT:  Do you have any objection to that?

3              MR. SCHULIS:  They are all the exhibits previously

4    filed and attached in the court record, attached to the second

5    amended complaint.

6              THE COURT:  Will there be a hearsay objection?

7              MR. PINSON:  Specifically with the letter with regard

8    to JPMorgan Chase.

9              MR. SCHULIS:  I would say a letter from JPMorgan Chase

10   is irrelevant to the letters sent by the Albertelli law firm.

11             Any correspondence between the Plaintiff and a third

12   party is irrelevant to the two letters sent.

13             THE COURT:  But is it your view you will have a

14   mortgage from JPMorgan Chase?

15             MR. SCHULIS:  Yes, we are pulling copies of the

16   original mortgage.

17             THE COURT:  They are from JPMorgan Chase?

18             MR. SCHULIS:  They were executed and filed in the

19   public record of Palm Beach County.

20             MR. PINSON:  The note is not in the record.

21             THE COURT:  Would you have any objection if he offered

22   the letters into evidence, and particularly the letter from

23   JPMorgan Chase supposedly saying we don't own that mortgage?

24             MR. SCHULIS:  The letters attached to the previous

25   complaint we have no objection to.

1          *THE COURT:*  The letter from JPMorgan Chase attached to

2   Mr. Pinson's second amended complaint can be admitted into

3   evidence.

4          *MR. PINSON:*  Yes.

5          *THE COURT:*  Good.

6          *MR. SCHULIS:*  Second amended complaint, I believe it

7   was attached as exhibit --

8          *MR. PINSON:*  A.

9          *MR. SCHULIS:*  A, yes.

10         *THE COURT:*  Mr. Pinson, could I ask you, what do you

11  think the case is worth in your mind as you are thinking about

12  it?

13         *MR. PINSON:*  Outside of actual --

14         *THE COURT:*  With your actual damages.

15         *MR. PINSON:*  I believe the statutory damages would be

16  $4,000.

17         *THE COURT:*  No, what is the case figure you think you

18  would get?

19         *MR. PINSON:*  I don't know.  I don't know how actual

20  damages are calculated properly, so I would have to do research

21  on that.

22         *THE COURT:*  Okay, all right.

23         *MR. PINSON:*  I apologize.

24         *THE COURT:*  All right.  I wish you had a better grip

25  on it because I think it would help you in many of these

Pauline A. Stipes, Official Federal Reporter

1    decisions.

2            Actual damages really are specific damages.  You have

3    to have them.

4            If you had a sense in your mind what you were asking

5    in the case, it would help the other side.  I leave that with

6    you, okay.

7            Anything else we need to talk about today?

8            MR. PINSON:  You refer to as a calendar call date in

9    November.

10           THE COURT:  Yes.

11           MR. PINSON:  What date is that?

12           THE COURT:   I can't tell you.  You will get it in

13   the mail.

14           MR. PINSON:  It is not set?

15           THE COURT:  It is set, it is a day we say are we ready

16   for trial, here is the batting order, okay.  When can we reach

17   you, what are your problems?

18           You heard Mr. Schulis say he has a couple of oral

19   arguments scheduled, we need to work around that.  You may have

20   issues, too.  Hopefully you will be feeling better.  We want

21   everybody to be okay and ready to go.

22           I will make an effort to bring the case to trial on

23   the trial calendar, so it is quite important you get all those

24   other things done.

25           MR. PINSON:  You say November-December?

1          *THE COURT:*  Yes, it is November-December, and we cut

2    off before the holidays at the end of December.

3          *MR. PINSON:*  Opposing counsel has a busy calendar.

4          *THE COURT:*  The calendar call is October 27th.

5          Now, you can come by telephone, Mr. Schulis, please

6    don't come over for that.  Get ahold of the courtroom deputy

7    and she will make arrangements for you.

8          *MR. SCHULIS:*  Thank you.  I will file notice of

9    unavailability for the argument dates.

10         *THE COURT:*  There is no such thing.

11         *MR. SCHULIS:*  Notice of conflict.

12         *THE COURT:*  I will work around these things.

13   Everybody is busy, and you can't be in two places at one time.

14         We need a three or four day period where we can try

15   the case without conflict, without anybody having a problem.

16         I want to urge you again, especially -- I would like

17   to see you do it before you get immersed in additional costs,

18   in evaluating your case.  If someone says to me I don't know

19   what my damages really are, that says a lot, Mr. Pinson.

20         I am wondering whether there really are damages that

21   you could sustain legally.

22         You know, emotional upset, I don't know that is an

23   actual damage in a case like this.

24         These kinds of things, there has to be actual damages

25   that are recognized.  So, you want to take a look at that.

Pauline A. Stipes, Official Federal Reporter

 1              I guess I would be the worst kind of person because I

 2      would be so tempted to grab the check and run, I have to admit

 3      that.

 4              I have seen cases where I have seen Plaintiffs do far

 5      better than that kind of an offer.

 6              You take my advice with a grain of salt.  I want to

 7      see you folks, if you can, resolve it yourself.

 8              Think about this, when you impanel a jury, what you

 9      are saying is we have this problem and we tried to solve it and

10      we cannot and we are going to ask you to solve it for us.

11              You run the risk in a case like that, a jury looks at

12      it and says this whole case is bogus, it is nothing.  That is

13      arresting.

14              The other side, from the Defense perspective is you

15      get people who say we have all been harassed by these debt

16      collectors, it is time to teach them a lesson.  That is the

17      other side.

18              Those are the risks you run in this process.

19              We hope that is not going to happen on either side,

20      but you have six people or eight people looking at your case,

21      you are asking them to take time out of their lives to resolve

22      this dispute.  It is a dispute over these two letters.

23              I am sure they are going to say how can we be forced

24      to be here for four days and these people can't make a judgment

25      about this particular problem about these letters.

1          You ought to think about that.  That is what goes

2     through people's minds.

3          Okay, anything else we need to talk about today?

4          *MR. PINSON:*  No, sir, thank you for your time.

5          *MR. SCHULIS:*  Thank you.

6          *THE COURT:*  Please work together on scheduling and

7     everything else.

8          Let me summarize, with respect to the interrogatories,

9     I've concluded, given the problems in this case, that it would

10    be a fruitless gesture to continue forward with the

11    interrogatory process, it is generating more time and expense

12    than justified.  While interrogatories serve a purpose of

13    narrowing issues and focusing, what we need to do is move on to

14    depositions.

15         I want to ask you to be very careful, no argument in

16    the depositions, ask factual questions, hopefully get factual

17    responses, and see where we go.

18         I think it would be a great idea, if you could, to do

19    all the depositions in one place at one time.

20         By that I mean, Mr. Pinson, you want to take the

21    corporate representative's deposition, and I suspect they will

22    want to take your deposition.

23         If you could agree to do it in one day, one place, get

24    it done, get it over with, one court reporter, one session,

25    being civil to everybody, you'll all know where you are after

Pauline A. Stipes, Official Federal Reporter

1    that.

2           It's just a suggestion.

3           Thank you all very much.   We will see you in November.

4      *(Thereupon, the hearing was concluded.)*

5                            *  *  *

6           I certify that the foregoing is a correct transcript

7    from the record of proceedings in the above matter.

8

9       Date:   Pauline A. Stipes

10                      /s/ Pauline A. Stipes, Official Federal Reporter

11                      Signature of Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Pauline A. Stipes, Official Federal Reporter

**$**

$1,000 [4]  9/25 10/3 10/20 12/9
$2,000 [1]  10/3
$2,500 [11]  10/7 11/13 12/6 13/9 35/6 44/3
 44/18 45/14 46/8 46/15 46/19
$4,000 [1]  49/16
$500 [2]  10/4 12/13

**/**

/s [1]  54/10

**1**

108 [1]  20/11
109 [1]  20/11
112 [1]  13/15
11th [2]  47/17 47/19
14 [3]  39/4 39/19 39/23
14-80009 [1]  2/2
14-CV-80009-HURLEY [1]  1/3
14th [4]  40/19 41/10 41/11 41/20
15 [1]  3/10
18 [2]  10/9 13/3
1982 [1]  11/2

**2**

2,500 [1]  13/5
20 [1]  27/3
2012 [1]  15/4
2013 [1]  19/21
2014 [1]  10/16
2016 [1]  1/9
2337 [1]  1/23
24 [2]  24/4 24/7
24th [1]  27/16
26th [2]  38/5 39/1
27th [1]  51/4
28 [1]  10/2
28th [2]  39/9 41/22

**3**

300 [1]  1/20
33401 [1]  1/17
33609 [1]  1/10
3rd [1]  38/4

**4**

400 [1]  10/5
4743 [1]  1/21
48 [1]  8/17

**5**

500 [1]  10/6
526 [1]  1/17
5404 [1]  1/19
553 [1]  10/14

**6**

677 [1]  11/1
68 [1]  12/17

**7**

772-467-2337 [1]  1/23
7th [2]  42/2 47/13

**8**

80009 [1]  2/2
813-221-4743 [1]  1/21
830 [1]  11/1

**9**

970 [1]  10/15

**A**

Abby [1]  10/14
able [4]  11/6 37/11 42/4 44/15
about [43]  4/21 8/20 9/9 9/15 16/19 17/17
 19/12 24/3 24/6 24/7 33/10 34/7 34/14 35/16
 35/20 35/24 38/4 39/1 40/1 40/16 40/17 42/6
 43/5 43/7 43/7 43/21 44/16 44/25 45/3 45/6
 45/8 45/14 46/7 46/21 46/22 46/25 49/11 50/7
 52/8 52/25 52/25 53/1 53/3
above [1]  54/7
accept [1]  28/21
acceptable [3]  31/13 34/4 45/15
accommodate [1]  42/17
accomplish [1]  33/9
according [1]  14/18
account [3]  3/15 5/12 25/25
achieved [1]  47/17
acknowledge [1]  35/14
act [3]  6/1 6/3 29/16
acting [1]  33/8
action [5]  2/8 8/11 21/25 27/25 29/15
actions [3]  24/14 25/23 29/11
actual [20]  15/6 15/8 15/12 23/20 33/6 35/11
 35/13 35/15 35/25 37/12 37/14 44/8 44/8
 44/10 49/13 49/14 49/19 50/2 51/23 51/24
actually [3]  19/23 23/6 26/7
addition [2]  10/21 29/6
additional [1]  51/17
address [4]  17/9 30/24 36/7 36/21
adequate [4]  33/12 33/18 34/4 44/3
adjust [1]  8/2
admission [1]  15/2
admissions [15]  9/12 9/14 13/23 13/24 14/6
 14/14 14/16 14/23 15/2 15/15 15/17 15/19
 15/22 16/20 17/3
admit [1]  52/2
admitted [4]  9/17 14/10 17/5 49/2
admitting [1]  29/20
advance [1]  39/5
adversary [2]  35/20 46/12
advice [1]  52/6
affirmative [1]  20/1
affirmed [1]  10/10
after [2]  39/15 53/25
afternoon [2]  2/1 2/9
again [2]  25/4 51/16
against [8]  8/25 9/4 12/20 21/25 22/5 23/20
 35/21 37/6
agency [1]  22/14
agents [1]  33/8
agree [5]  5/17 7/10 39/19 41/5 53/23
agreed [1]  41/17
agreement [4]  7/4 7/6 7/10 29/7
agreements [1]  38/1
ahead [1]  13/12
ahold [1]  51/6
Airlines [1]  4/7
al [1]  1/9
ALBERTELLI [14]  1/8 1/19 2/3 4/13
 4/17 4/18 4/23 5/1 25/22 30/19 38/17 48/1
 48/10
all [48]  2/20 5/17 8/6 8/18 9/6 10/10 10/12
 13/2 14/23 14/25 17/12 17/14 17/16 18/8 21/1
 23/4 25/25 26/1 26/25 27/19 30/1 32/7 32/8
 32/24 33/21 34/8 34/16 35/18 37/3 37/25
 38/15 39/13 41/12 41/13 41/22 42/5 42/18
 43/20 44/4 44/22 48/3 49/22 49/24 50/23
 52/15 53/19 53/25 54/3
allegations [1]  37/6
alleged [14]  5/6 6/8 6/11 8/7 8/8 8/9 8/19

21/17 23/1 25/6 25/17 31/3 31/5 31/9
alleging [3]  23/1 25/3 25/7
allow [4]  15/18 31/18 32/15 40/6
allowing [1]  2/4
allows [1]  47/2
almost [1]  38/6
along [1]  34/9
also [1]  23/25
alternate [1]  43/13
am [32]  5/7 5/11 7/19 7/20 7/22 11/15 15/16
 16/18 16/18 17/17 17/20 20/16 23/3 23/3 24/9
 28/2 30/17 31/18 35/4 37/11 38/18 39/13
 39/18 40/11 41/9 43/2 46/5 46/11 46/16 46/22
 51/20 52/23
amended [6]  8/16 10/24 15/14 48/5 49/2 49/6
amount [4]  8/8 10/3 29/10 29/12
amounts [8]  6/25 7/3 7/8 7/9 7/10 7/16 30/1
 30/1
Andrea [4]  23/25 32/23 40/1 40/3
angry [1]  37/9
another [2]  39/22 46/23
answer [8]  4/25 12/2 19/10 32/18 37/11 39/3
 40/14 40/14
answering [2]  19/5 19/6
answers [1]  40/15
any [25]  6/6 6/14 11/9 12/7 12/17 14/11
 18/20 21/20 21/24 21/25 22/10 23/14 23/15
 24/4 24/13 25/5 25/17 29/9 31/3 31/4 31/5
 39/13 48/2 48/11 48/21
anybody [2]  43/14 51/15
anything [8]  6/24 8/24 11/9 16/8 24/5 32/16
 50/7 53/3
apologize [2]  25/15 49/23
appeal [2]  45/19 46/2
appearances [2]  1/15 2/5
Appendix [1]  10/15
applied [1]  4/6
appreciate [1]  24/12
approach [2]  30/7 34/3
appropriate [1]  13/20
appropriately [1]  13/13
are [142]
aren't [4]  7/8 7/11 23/6 28/14
argue [5]  23/5 25/20 27/12 27/25 40/15
arguing [1]  13/2
argument [2]  51/9 53/15
arguments [2]  18/3 50/19
arose [2]  19/21 34/12
around [2]  50/19 51/12
arrangements [1]  51/7
arresting [1]  52/13
as [36]  2/17 3/5 5/16 5/19 9/17 9/20 11/20
 12/19 14/22 14/23 19/3 20/10 20/10 22/2
 24/14 25/10 26/7 26/9 27/21 28/9 29/17 33/8
 33/15 34/9 34/15 34/23 35/15 36/8 37/3 39/7
 40/4 42/14 43/15 49/7 49/11 50/8
aside [2]  3/12 28/20
ask [17]  7/25 9/2 11/9 15/20 33/17 35/5 40/13
 40/14 40/15 43/15 44/13 45/14 45/25 49/10
 52/10 53/15 53/16
asked [4]  18/21 18/25 19/2 39/15
asking [12]  5/10 11/15 22/4 25/10 26/16
 26/16 26/20 29/3 29/4 46/11 50/4 52/21
aspect [2]  33/5 46/12
assent [1]  40/10
assert [2]  20/21 26/21
asserting [1]  28/10
assertion [5]  6/20 26/18 29/15 29/24 30/12
assigned [2]  27/8 32/1
assignments [2]  31/4 31/24
associated [1]  33/15

**A**

Association [1] 30/23
assume [6] 11/10 12/5 22/19 22/21 26/24 28/12
assuming [1] 10/5
attached [9] 5/4 6/19 23/23 24/17 48/4 48/4 48/24 49/1 49/7
attempt [5] 5/23 6/3 8/19 8/25 9/3
attempted [1] 6/11
attempting [2] 7/1 8/20
attempts [1] 24/15
attendant [1] 11/18
attorney [13] 10/22 20/13 24/1 25/20 26/1 26/12 27/11 27/15 28/25 29/7 30/3 32/23 33/1
attorney/client [9] 20/13 25/20 26/1 26/12 27/11 27/15 28/25 29/7 30/3
authority [1] 46/6
authorized [2] 41/16 46/5
available [2] 11/3 39/6
avoid [1] 20/5
avoiding [1] 19/25
award [3] 12/13 46/4 46/6
awarded [4] 12/8 12/9 12/19 46/2
away [1] 44/24
awhile [2] 11/15 45/11

**B**

back [19] 3/3 3/16 4/23 13/8 13/21 15/23 17/22 26/23 28/14 28/22 30/11 33/11 33/18 34/18 39/15 43/14 46/1 46/12 47/5
balance [2] 25/25 30/1
bank [2] 30/23 32/2
banks [1] 43/19
based [1] 36/20
basis [2] 2/17 3/5
bat [1] 44/19
Bates [1] 24/14
batting [1] 50/16
be [75]
BEACH [6] 1/2 1/8 1/17 1/22 47/14 48/19
became [1] 46/3
because [8] 5/24 24/2 24/4 27/19 35/7 37/8 49/25 52/1
been [19] 7/14 11/15 12/16 13/1 15/3 15/4 15/10 20/10 26/15 27/8 27/20 27/21 32/1 35/18 43/19 44/1 45/10 47/4 52/15
before [12] 1/12 5/25 10/9 34/6 34/11 34/16 36/7 40/20 41/6 46/11 51/2 51/17
begin [1] 2/4
behalf [2] 2/11 24/1
behind [2] 31/1 44/15
being [4] 8/13 24/6 43/3 53/25
believe [12] 20/17 22/3 23/6 23/13 30/18 34/1 37/13 37/15 38/8 39/4 49/6 49/15
believes [3] 4/9 11/25 12/3
best [1] 32/19
better [6] 27/4 34/8 34/22 49/24 50/20 52/5
between [2] 23/15 48/11
beyond [1] 22/15
blossoming [1] 17/12
blue [1] 42/15
bogus [1] 52/12
boiler [1] 15/13
bona [7] 20/2 20/6 20/6 20/15 21/3 21/8 21/13
borrowed [1] 3/23
borrower [1] 4/4
both [4] 9/21 11/24 41/14 45/13
break [1] 2/24
bring [3] 3/1 35/18 50/22

bringing [1] 35/6
broke [1] 2/19
broken [2] 39/8 45/5
bucks [1] 46/9
burden [1] 28/4
business [2] 46/13 46/19
busy [2] 51/3 51/13

**C**

calculated [1] 49/20
calendar [16] 17/8 17/18 17/21 18/1 18/10 38/2 41/23 42/9 42/11 42/11 42/12 42/16 50/8 50/23 51/3 51/4
call [13] 4/14 4/18 4/18 8/22 8/22 8/23 8/23 9/2 17/18 42/9 42/11 50/8 51/4
calling [1] 36/15
came [1] 38/15
can [33] 3/1 3/2 8/1 8/2 8/25 9/19 10/10 10/12 12/2 12/9 26/12 27/3 28/2 30/4 30/6 33/13 33/17 36/22 37/25 38/8 39/11 39/19 40/8 42/3 44/10 45/12 47/9 49/2 50/16 51/5 51/14 52/7 52/23
can't [11] 7/7 7/8 7/14 10/18 37/15 40/14 44/1 47/8 50/12 51/13 52/24
candid [1] 23/20
cannot [3] 7/4 10/17 52/10
capable [1] 23/20
capped [1] 44/22
careful [1] 52/16
case [49] 1/3 2/2 2/16 4/11 8/13 8/14 9/9 10/16 10/21 11/25 12/3 14/19 16/18 17/18 17/9 17/14 17/21 23/22 29/8 29/21 32/10 33/3 34/7 35/24 36/4 41/23 42/20 42/23 42/24 43/11 43/25 45/10 45/18 46/1 46/24 47/2 49/11 49/17 50/5 50/22 51/15 51/18 51/23 52/11 52/12 52/20 53/9
cases [3] 17/18 42/14 52/4
caught [1] 26/1
causes [1] 44/2
Center [1] 1/19
certain [1] 9/17
certified [7] 31/13 31/15 31/18 31/19 47/12 47/13 47/22
certify [1] 54/6
chain [1] 27/8
chair [1] 3/1
challenges [1] 38/9
change [1] 47/16
character [1] 8/8
charge [2] 7/1 7/7
Chase [17] 25/17 25/18 26/22 26/22 26/24 26/24 27/21 30/23 31/5 31/20 47/25 48/8 48/9 48/14 48/17 48/23 49/1
check [3] 10/6 35/6 52/2
choose [1] 40/2
Circuit [10] 5/19 9/20 10/15 11/1 23/7 23/13 23/24 45/19 46/2 46/4
circumstances [1] 9/3
cited [1] 10/16
civil [2] 42/13 53/25
claim [2] 10/6 33/22
claiming [2] 3/6 5/13 7/4 44/14
claims [1] 22/16
clarification [1] 24/21
clarified [1] 9/20
clarify [2] 10/1 10/19
clear [1] 24/24
clerk [2] 16/10 16/13
client [21] 9/22 10/11 11/6 20/13 20/14 25/20 26/1 26/12 26/14 27/11 27/13 27/15 27/23 28/16 28/25 29/7 29/8 30/3 31/5 31/10 31/21

close [1] 35/6
closer [2] 34/23 43/15
closure [1] 35/18
CM [5] 16/3 16/5 16/7 16/9 16/14
CM/ECF [5] 16/3 16/5 16/7 16/9 16/14
collect [9] 5/23 6/3 6/12 8/19 8/20 9/1 26/5 29/18
collection [5] 5/18 5/19 11/1 24/14 29/16
collector [2] 8/24 26/6
collectors [2] 43/20 52/16
come [16] 2/14 13/8 24/18 28/14 28/22 33/11 33/18 39/15 40/8 42/14 42/15 45/11 47/5 47/5 51/5 51/6
comes [1] 40/21
comfort [1] 43/12
comfortable [1] 38/23
coming [3] 34/13 43/25 47/13
communication [3] 23/15 29/6 30/3
communications [4] 27/22 28/1 29/1 29/3
compensated [1] 10/18
compensation [1] 44/4
complaint [15] 5/4 6/19 8/16 10/24 13/6 15/14 22/2 22/19 23/23 24/17 47/21 48/5 48/25 49/2 49/6
complaints [1] 21/24
complete [1] 41/20
concerned [1] 20/16
concerning [2] 33/3 45/6
concerns [3] 42/16 42/18 43/18
concluded [2] 53/9 54/4
conduct [2] 38/7 38/21
CONFERENCE [1] 1/11
conflict [2] 51/11 51/15
connecting [1] 6/13
consequences [4] 11/11 11/18 12/6 14/9
conserve [1] 32/11
conserving [2] 32/12 32/16
constitute [1] 26/1
constitutes [1] 3/8
consumer [2] 6/1 21/20 22/14
contact [1] 24/15
contacted [1] 27/13
contained [4] 15/13 17/11 29/25 30/2
contemplation [1] 13/2
contend [2] 6/5 6/15
contending [2] 6/22 27/9 28/22
contends [1] 29/17
Continental [1] 4/7
continue [3] 17/7 17/20 53/10
continued [1] 18/11
controlling [1] 10/13
convenient [1] 38/25
cooperation [2] 40/9
copies [9] 21/16 21/24 31/13 31/15 31/18 47/13 47/13 47/23 48/15
copy [10] 14/22 16/3 16/6 16/10 16/14 16/15 22/6 30/5 31/19 41/12
corporate [9] 32/22 32/25 33/2 33/8 33/11 33/17 39/20 40/1 53/2
correct [9] 5/20 6/4 9/18 12/21 12/25 28/15 29/14 30/20 54/6
correspondence [5] 27/15 30/2 31/10 31/21 48/11
cost [2] 44/23 45/1
costs [14] 9/25 10/4 10/5 11/5 11/19 12/17 12/24 13/1 45/1 45/19 46/2 46/4 46/6 51/17
could [16] 2/14 4/18 5/13 7/25 11/25 12/4 12/5 22/24 35/17 35/23 36/1 41/3 49/10 51/21 53/18 53/23
counsel [5] 2/10 8/24 16/16 27/21 51/3
county [3] 8/14 47/14 48/19

**C**

couple [2] 30/11 50/18
course [1] 26/2
court [19] 1/1 1/22 8/14 8/25 10/16 12/12
14/18 15/24 16/2 20/25 27/17 39/5 41/12
43/10 43/14 45/1 48/4 53/24 54/11
Court's [1] 20/8
courtroom [1] 51/6
cover [2] 16/12 33/21
credible [1] 36/2
credit [1] 22/15
creditor [6] 3/21 23/1 23/2 25/16 25/19 31/3
creditors [2] 25/3 25/6
criminal [2] 17/18 42/14
crisis [1] 27/7
curiosity [1] 42/8
cut [4] 9/19 41/6 41/22 51/1
cuts [1] 39/25
cutting [1] 39/7
CV [1] 1/3
Cypress [1] 1/19

**D**

damage [2] 12/13 51/23
damages [34] 9/25 12/8 12/19 15/4 15/6 15/9
15/12 23/20 29/12 35/11 35/13 35/15 35/25
36/4 36/22 37/1 37/10 37/12 37/14 37/19 44/8
44/8 44/9 44/10 44/14 44/22 49/14 49/15
49/20 50/2 50/2 51/19 51/20 51/24
dangerous [1] 34/6
DANIEL [1] 1/12
data [1] 19/20
date [6] 34/2 42/7 45/13 50/8 50/11 54/9
dates [1] 51/9
day [9] 34/13 39/19 41/14 43/1 43/2 43/6
50/15 51/14 53/23
days [11] 15/18 15/22 17/2 17/4 27/2 27/4
39/4 39/23 43/8 43/8 52/24
deadbeats [1] 34/15
deadline [3] 40/17 41/19 47/12
deal [14] 9/12 13/13 13/20 17/7 34/11 34/12
34/15 34/19 34/21 37/22 40/4 40/22 47/5
47/10
dealing [1] 31/8
debt [36] 3/17 3/17 3/18 5/6 5/12 5/13 5/14
5/17 5/19 5/23 5/23 5/25 6/11 6/17 6/18 6/21
8/8 8/9 8/19 8/24 9/1 25/6 25/8 25/11 25/12
25/17 25/18 26/5 26/6 27/13 28/11 29/16
29/18 31/3 43/20 52/15
December [6] 18/1 27/16 42/12 50/25 51/1
51/2
December 24th [1] 27/16
decide [4] 40/24 44/20 44/21 45/16
decides [1] 39/12
decision [2] 13/11 45/8
decisions [1] 50/1
declaratory [1] 11/2
declines [2] 11/10 11/17
deem [2] 9/17 15/16
deemed [2] 14/9 17/5
default [4] 15/3 25/24 26/15 29/12
Defendant [10] 2/12 12/10 12/15 12/20 23/15
23/24 24/15 25/7 31/8 38/8
Defendants [8] 1/10 1/18 5/24 8/7 17/2 21/25
41/15 46/23
defense [22] 2/10 9/16 12/19 12/23 15/18
20/1 20/6 20/7 20/15 20/21 20/23 20/24 21/3
21/8 21/13 24/23 24/24 41/25 42/1 43/5 46/14
52/14
Defense's [2] 14/14 24/22

definition [1] 44/10
degree [1] 40/9
Dekalb [1] 1/1
deliberates [1] 43/14
deny [1] 17/17
depend [1] 12/8
Depending [1] 42/25
depo [1] 33/8
depose [7] 24/7 32/18 32/20 32/21 40/1 40/2
40/24
deposed [1] 39/23
deposing [1] 40/20
deposition [15] 24/10 32/14 32/17 33/10
36/25 37/18 39/2 39/16 39/18 40/6 41/3 44/13
45/7 53/21 53/22
depositions [8] 32/10 35/15 36/19 38/7 40/13
53/14 53/16 53/19
deputy [1] 51/6
desk [1] 3/3
determine [1] 33/14
determines [1] 7/9
did [30] 2/24 3/16 3/17 3/18 4/4 4/21 5/5 6/5
13/24 14/5 14/7 14/11 14/20 15/21 20/15
20/16 20/18 21/5 21/14 22/5 22/19 22/21
24/18 29/20 37/1 37/19 37/20 45/23 45/25
46/17
didn't [5] 4/24 8/10 14/8 22/25 46/4
different [3] 18/4 19/23 35/8
difficult [3] 5/7 7/22 34/5
Dillon [2] 24/1 32/23
dime [1] 37/22
directed [1] 12/12
direction [1] 44/25
disagree [1] 7/12
disclosed [1] 44/1
discovery [9] 18/10 36/18 36/19 38/3 38/5
38/6 41/6 41/22 43/1
discussed [1] 33/22
disposable [1] 19/20
dispute [2] 52/22 52/22
dissemination [1] 19/20
district [5] 1/1 1/1 1/2 10/14 10/14
districts [1] 18/4
DIVISION [1] 1/2
do [58]
Docket [3] 8/17 13/15 20/10
document [4] 19/4 19/9 19/17 21/19
documentation [12] 3/15 5/12 25/10 26/10
26/17 27/10 28/24 29/4 29/23 31/1 31/22
43/24
documents [27] 7/23 8/13 18/13 18/19 18/20
18/21 18/25 19/2 19/10 20/4 20/12 20/14
21/14 23/5 25/2 25/5 25/16 25/21 25/24 25/25
26/2 31/2 31/8 31/11 38/25 41/24 42/1
does [12] 6/17 9/22 11/21 13/5 16/10 16/13
21/2 28/7 30/4 31/24 33/21 39/9
doesn't [7] 28/20 28/21 29/22 41/6 42/22
44/3 44/18
doing [3] 19/13 19/15 40/12
dollars [2] 11/5 44/23
don't [45] 2/6 3/25 4/14 6/18 7/6 7/24 9/4
15/10 16/16 17/10 17/13 17/22 20/20 22/1
22/2 22/7 23/6 23/12 23/12 24/17 25/8 25/18
26/22 33/4 34/7 34/17 35/10 35/25 36/2 36/4
36/10 36/13 40/24 41/5 42/20 42/21 43/25
46/4 46/5 48/23 49/19 49/19 51/6 51/18 51/22
done [4] 3/3 39/21 50/24 53/24
double [3] 10/17 46/25 47/8
down [7] 3/2 9/21 27/7 27/8 32/17 40/8 43/22
Drive [1] 1/19
driven [1] 46/11

due [5] 25/25 29/12 30/1 36/17 44/4
during [2] 34/9 41/3

**E**

each [10] 9/24 10/3 10/20 10/20 20/14 35/21
40/4 40/5 41/20 44/24
early [1] 39/17
earned [4] 7/1 7/8 7/10 7/15
ECF [5] 16/3 16/5 16/7 16/9 16/14
effect [1] 20/19
effort [2] 26/5 50/22
eight [2] 43/11 52/20
either [1] 52/19
Eleventh [10] 5/19 9/20 10/15 11/1 23/7
23/13 23/24 45/19 46/2 46/4
else [10] 6/24 7/18 24/18 26/25 42/6 45/2
47/10 50/7 53/3 53/7
email [1] 30/2
emotional [1] 51/22
employees [1] 33/7
end [4] 29/9 44/18 45/11 51/2
English [1] 5/10
enter [3] 16/6 16/15 45/8
entered [3] 16/7 16/14 29/13
entitled [5] 6/12 8/12 9/16 9/24 10/22
entity [2] 23/15
entry [5] 8/17 10/11 12/18 13/15 20/11
equation [2] 10/23 11/4
equitable [3] 10/25 11/2 13/7
erroneous [8] 6/14 6/15 6/21 21/5 28/6 28/13
29/18 29/20
error [8] 6/6 6/10 20/2 20/7 20/15 21/3 21/8
23/13
errors [2] 20/5 20/20
especially [2] 51/16
ESQ [1] 1/18
establish [1] 36/1
establishes [1] 27/10
estimates [1] 43/3
et [1] 1/9
evaluating [2] 46/8 51/18
even [3] 11/12 33/13 43/1
event [2] 12/18 39/22
Every [1] 34/12
everybody [6] 17/23 34/18 44/16 50/21 51/13
53/25
everything [7] 33/21 35/24 42/17 45/2 45/12
46/17 53/7
evidence [4] 15/11 47/22 48/22 49/3
evidencing [6] 19/4 19/10 25/2 25/24 29/1
31/3
examine [1] 24/16
executed [1] 48/18
exhibit [3] 36/11 40/18 49/7
exhibits [6] 36/16 41/13 41/20 41/21 47/21
48/3
exist [2] 20/13 23/6
expense [1] 53/11
expensive [1] 46/10
expressly [1] 26/6
extend [2] 12/11 39/18
extended [1] 10/2 36/18
extensions [1] 39/14
extent [3] 25/7 25/17 31/4

**F**

F.2d [1] 11/1
fact [3] 8/13 36/1 44/10
factor [1] 46/3
factors [1] 45/8
facts [1] 9/17

**F**

factual [4]  28/22 40/13 53/16 53/16
fails [1]  13/6
Failure [1]  17/5
fair [1]  34/21
falsely [1]  8/7
far [1]  52/4
fault [1]  16/18
FCCPA [6]  10/17 11/3 13/7 19/25 22/23 47/3
FDCPA [8]  3/14 5/22 5/25 7/2 10/17 19/25 24/6 47/3
Federal [7]  6/3 10/14 27/2 29/16 43/10 43/13 54/10
FedEx [2]  16/22 16/25
fee [1]  10/5
feel [1]  38/23
feeling [1]  50/20
fell [1]  40/8
fellow [1]  40/7
festering [1]  45/10
fide [7]  20/2 20/6 20/6 20/15 21/3 21/8 21/13
figure [2]  4/3 49/17
file [6]  15/24 16/3 24/5 41/11 41/12 51/8
filed [19]  8/13 10/10 13/14 15/24 16/2 20/10 21/25 22/5 22/20 24/17 33/25 34/1 34/2 36/15 36/17 37/9 45/22 48/4 48/18
files [1]  16/16
filing [5]  10/5 34/25 41/19 43/22 45/21
filings [3]  27/14 27/14 29/2
financial [1]  23/19
find [9]  24/7 32/19 36/2 36/20 36/25 38/21 39/5 40/1 41/3
finder [1]  36/1
finds [1]  12/13
fine [3]  45/16 46/17 47/9
firm [12]  4/19 5/1 20/5 26/5 26/8 33/7 33/8 33/15 38/17 40/3 40/7 48/10
first [7]  5/17 6/3 9/12 18/23 18/24 23/23 27/2
five [6]  15/18 15/22 17/2 17/3 19/21 36/16
FL [3]  1/8 1/17 1/20
Flip [1]  30/11
FLORIDA [6]  1/1 6/1 10/16 10/21 11/16 13/7
focus [1]  43/24
focusing [1]  53/13
folks [8]  34/7 34/21 35/17 38/24 44/17 44/21 46/11 52/7
following [1]  47/15
foot [1]  2/18
force [1]  7/14
forced [1]  52/23
foreclosed [1]  43/19
foreclosure [9]  25/23 27/6 27/17 27/17 27/22 27/25 29/8 29/11 29/15
foregoing [1]  54/6
form [1]  10/12
Fort [1]  1/22
forth [2]  37/21 45/9
forward [2]  45/17 53/10
found [3]  9/21 34/5 35/7
four [5]  38/6 43/8 46/24 51/14 52/24
Friday [8]  39/9 40/19 41/9 41/11 41/22 42/1 42/3 42/4
fruitless [1]  53/10
frustrating [1]  42/13
Ft [1]  1/22
Fulton [1]  10/25
furtherance [2]  27/23 27/24
Furthermore [1]  10/24
future [1]  7/13

**G**

gain [1]  9/3
gained [1]  21/21
gave [1]  4/2
general [1]  34/3
generally [1]  34/5
generated [1]  24/8
generating [1]  53/11
gentlemen [1]  2/1
geographical [1]  38/9
gesture [1]  53/10
get [48]  4/5 4/13 4/25 9/8 13/24 14/8 14/20 15/23 15/25 16/3 16/6 16/15 16/19 16/20 17/13 22/19 33/18 34/19 34/20 34/23 34/24 35/8 35/10 36/8 39/18 39/20 39/20 39/20 39/21 40/14 40/14 40/15 42/4 43/15 43/23 44/7 44/25 47/10 49/18 50/12 50/23 51/6 51/17 52/15 53/16 53/23 53/24
getting [4]  12/23 32/16 34/25 35/1
give [8]  22/4 30/8 30/10 35/3 35/5 36/22 39/4 44/5
given [1]  53/9
gives [1]  38/6
glad [1]  46/22
go [23]  3/3 4/4 10/12 11/24 12/23 13/12 13/21 19/5 21/25 22/24 27/2 27/3 34/9 34/12 38/20 39/8 44/5 44/15 45/8 45/16 46/1 50/21 53/17
goes [3]  22/15 43/14 53/1
going [28]  4/23 17/19 17/21 20/24 21/5 27/8 28/5 28/12 28/14 31/18 32/10 35/8 35/14 36/3 36/24 39/8 40/23 40/24 41/1 41/13 41/23 44/12 44/13 44/25 45/7 52/10 52/19 52/23
gone [1]  27/5
good [5]  2/1 2/9 13/5 35/22 49/5
got [2]  14/1 43/12
grab [1]  52/2
grain [1]  52/6
grant [5]  17/20 20/3 21/12 31/7 34/6
granting [2]  15/16 39/13
gravamen [1]  3/8
great [2]  27/6 53/18
grip [1]  49/24
grounds [2]  28/8 28/9
group [1]  43/17
guess [4]  6/13 26/17 38/20 52/1

**H**

had [20]  3/20 3/22 3/24 3/25 4/10 7/4 7/7 12/24 16/17 18/23 19/11 19/11 22/25 27/7 27/8 33/14 46/1 46/22 49/24 50/4
hadn't [1]  36/18
half [1]  43/6
hall [1]  40/8
hand [1]  32/16
happen [3]  17/13 40/9 52/19
happened [4]  2/18 9/14 37/3 37/8
happens [2]  12/15 42/10
harassed [2]  43/19 52/15
has [18]  10/1 11/15 11/25 12/3 12/10 12/16 15/3 20/10 20/18 26/15 28/4 28/13 28/16 32/1 45/10 50/18 51/3 51/24
have [105]
haven't [3]  7/14 19/17 44/1
having [5]  7/19 14/9 15/10 39/7 51/15
he [26]  11/13 11/25 11/25 12/3 12/3 12/5 15/3 15/3 15/6 15/11 26/16 26/16 26/18 27/9 28/7 28/12 28/12 28/21 28/22 28/23 29/3 29/3 29/22 40/7 48/21 50/18
hear [3]  8/3 13/4 23/4
heard [1]  50/18
hearing [2]  7/21 54/4
Hearn [4]  23/25 40/2 40/3 40/5
hearsay [1]  48/6
held [1]  10/21
help [11]  2/15 28/3 30/4 30/6 35/17 43/16 43/17 47/6 47/6 49/25 50/5
her [3]  40/2 40/2 40/6
him [2]  26/11 28/23
Hold [2]  9/11 41/17
holding [1]  29/12
holidays [1]  51/2
home [2]  10/12 34/12
HON [1]  1/23
honestly [1]  10/9
Honor [30]  5/7 7/19 9/18 9/20 10/1 10/7 10/13 10/24 11/7 12/2 12/25 13/5 16/1 18/9 20/8 25/15 26/13 28/1 28/16 30/18 31/12 31/25 33/24 36/6 36/7 39/12 45/18 47/20 47/21
HONORABLE [1]  1/12
hope [1]  52/19
hopefully [2]  50/20 53/16
hour [1]  36/8
how [18]  3/13 4/21 5/12 24/3 24/7 26/12 33/10 37/19 38/4 39/1 39/9 40/17 41/15 42/3 43/5 45/8 49/19 52/23
however [1]  9/18
human [1]  45/7
HURLEY [1]  1/3

**I**

I'm [1]  24/23
I've [1]  53/9
idea [1]  53/18
identifiers [1]  23/14
immersed [1]  51/17
impacts [2]  11/21 20/9
impanel [1]  52/8
importance [1]  17/10
important [4]  31/16 36/21 44/1 50/23
incident [1]  19/21
inclination [1]  17/17
include [2]  31/3 31/24
included [1]  6/25
includes [1]  22/15
incur [3]  3/17 3/17 3/18
incurred [5]  10/6 12/17 12/24 13/1 15/4
indicated [2]  25/17 26/6
indicates [1]  36/12
indicating [1]  26/14
individual [2]  23/25 24/5
information [11]  6/15 8/20 8/22 9/3 19/24 22/15 23/19 29/25 33/9 33/14 40/21
informed [1]  4/8
injunctive [1]  11/3
inquiring [1]  11/20
instance [2]  8/21 18/23
instead [1]  18/1
institution [1]  29/5
insurance [1]  22/16
intend [1]  24/6
intended [1]  41/12
intent [1]  33/13
interrogatories [6]  14/23 19/6 32/8 32/14 53/8 53/12
interrogatory [5]  18/17 19/5 19/5 19/11 53/11

## I

investigative [2] 22/10 22/13
involved [3] 4/24 13/2 35/19
involves [1] 36/4
irrelevant [3] 28/17 48/10 48/12
is [229]
issue [8] 9/12 14/15 15/19 17/6 23/7 34/11
46/23 46/25
issues [11] 15/16 17/14 23/13 25/22 27/18
27/19 29/9 29/10 32/13 50/20 53/13
it [149]
It's [1] 54/2
items [1] 39/3
its [1] 17/10

## J

James [1] 2/3
job [3] 35/3 37/2 37/20
JOHN [6] 1/4 1/16 2/2 2/7 22/20 30/23
Joseph [1] 24/1
JPMorgan [20] 3/21 3/22 3/24 4/1 6/16 6/17
6/17 6/21 26/22 28/11 30/23 31/5 31/20 47/25
48/8 48/9 48/14 48/17 48/23 49/1
JUDGE [1] 1/12
judgment [17] 10/2 10/11 10/12 11/16 12/6
12/16 12/18 13/17 13/20 28/18 28/19 28/21
29/13 46/3 46/13 46/19 52/24
judgments [2] 34/9 45/4
jump [1] 42/16
jurors [3] 43/10 43/11 43/13
jury [12] 12/12 18/6 18/7 34/12 35/10 36/1
42/21 43/9 43/17 43/18 52/8 52/11
just [7] 24/16 27/9 36/2 41/8 45/24 47/9 54/2
justified [2] 7/4 53/12
justify [1] 29/23

## K

K.HURLEY [1] 1/12
keep [1] 15/20
kind [8] 2/17 6/1 36/22 43/20 45/3 46/12 52/1
52/5
kinds [3] 17/12 43/16 51/24
know [38] 3/25 4/21 5/9 7/6 14/5 17/19 22/7
24/5 26/25 33/4 34/7 34/14 35/10 35/18 35/25
36/2 36/10 36/13 37/1 37/9 37/14 38/2 40/23
41/1 41/5 42/13 42/14 42/23 44/3 44/20 44/22
46/5 49/19 49/19 51/18 51/22 51/22 53/25
knowledge [2] 19/12 24/3
knows [1] 46/18

## L

Ladies [1] 2/1
landscape [1] 34/22
last [1] 32/5
later [3] 24/18 27/3 40/18
law [17] 1/8 1/19 2/3 4/19 5/1 8/25 10/21
20/5 23/22 25/22 26/5 26/8 38/17 40/3 47/2
47/8 48/10
lawsuit [10] 2/17 3/4 3/5 3/8 6/8 22/18 22/22
37/9 44/18 47/4
lawsuits [2] 22/16 47/5
least [1] 39/4
leave [6] 21/2 35/17 38/24 39/24 45/10 50/5
lectern [3] 2/14 3/1 7/25
led [1] 46/14
leg [4] 2/19 2/24 39/8 45/5
legal [5] 8/8 8/11 22/16 46/25 47/1
legalese [1] 3/12
legally [3] 6/12 8/11 51/21
lender [4] 7/5 7/7 7/11 26/24

lending [1] 29/4
length [1] 42/18
lesson [1] 52/16
let [11] 2/4 3/3 3/16 11/9 23/4 25/13 30/22
34/3 37/17 42/10 53/8
let's [22] 3/1 9/8 11/10 11/24 12/5 13/18
13/21 15/23 17/6 17/7 22/19 22/21 26/23
26/24 28/22 34/19 36/21 37/25 40/22 44/24
47/16 47/17
letter [31] 3/21 3/22 5/4 5/17 6/16 6/18 8/21
10/3 10/20 11/5 12/13 23/23 25/17 26/6 26/7
26/11 26/18 27/16 28/6 28/10 29/24 29/25
30/13 30/14 33/1 36/25 44/23 48/7 48/9 48/22
49/1
letters [33] 2/17 3/4 3/6 4/13 5/16 5/18 5/19
5/21 5/24 9/21 10/19 17/11 23/1 23/2 23/8
24/4 24/7 24/17 25/7 27/20 30/5 30/16 33/6
37/4 37/7 47/25 47/25 48/10 48/12 48/22
48/24 52/22 52/25
level [4] 3/15 5/12 22/23 43/12
leveled [1] 37/6
liability [4] 21/4 21/16 21/17 27/11
liable [1] 29/19
life [1] 45/6
like [15] 5/3 6/1 11/10 11/19 12/22 14/3
17/11 20/1 34/7 34/15 44/3 44/17 51/16 51/23
52/11
limine [6] 20/10 33/23 33/25 34/6 34/20 36/7
limited [1] 24/16
line [1] 4/7
list [5] 36/11 40/18 40/18 41/19 41/20
listed [1] 6/16
listen [1] 16/17
litigants [1] 40/4
litigation [1] 24/1
little [1] 43/8
lived [1] 34/8
lives [1] 52/21
living [1] 47/4
LLC [2] 1/9 2/3
loan [3] 26/22 30/24 31/6
logbooks [1] 24/13
long [4] 10/21 27/5 41/15 42/23
look [6] 8/21 35/3 43/24 44/15 47/1 51/25
looked [1] 11/16
looking [4] 11/4 36/5 38/2 52/20
looks [3] 17/11 35/10 52/11
lose [5] 11/9 35/23 37/2 37/19 37/20
lot [3] 17/18 35/21 51/19
lots [1] 47/5

## M

made [9] 10/7 13/12 13/19 22/25 28/6 28/22
28/24 29/18 46/19
mail [6] 14/18 14/21 14/24 16/10 16/13 50/13
mails [1] 16/11
make [17] 3/8 7/14 11/7 13/16 13/19
13/22 16/20 28/20 29/20 32/9 34/9 41/6 45/12
50/22 51/7 52/24
makes [1] 46/24
making [1] 23/3
manuals [1] 19/19
many [1] 49/25
Marshal [3] 7/25 30/8 30/10
materials [1] 19/25
matter [5] 10/8 10/17 27/17 47/1 54/7
MATTHEW [2] 1/18 2/11
maximum [1] 10/3 11/13 12/11
may [15] 9/10 9/19 20/8 20/13 20/13 21/20
24/15 29/18 30/7 33/7 33/7 35/10 36/6 47/14
50/19

maybe [6] 28/2 35/25 40/4 40/5 40/7 43/8
me [42] 2/4 2/15 3/16 3/21 5/10 6/18 11/9
16/17 17/10 19/2 21/21 21/25 22/11 23/4
24/15 25/4 25/13 25/18 26/10 28/3 30/4 30/6
30/22 31/5 33/19 34/3 34/4 36/3 36/22
37/6 37/17 37/19 38/10 39/7 39/15 42/10
44/20 45/16 47/6 51/18 53/8
mean [2] 45/20 53/20
means [2] 41/11 43/24
meant [1] 5/8
medication [1] 7/20
meet [1] 44/10
memorialize [1] 13/12
mentioned [1] 41/24
messages [1] 24/13
Miami [1] 16/11
microphone [1] 8/2
might [3] 24/13 30/17 33/16
mind [3] 4/14 49/11 50/4
minds [1] 53/2
minimize [1] 17/10
minimum [1] 43/10
minute [5] 2/15 3/16 26/23 28/19 28/20
missing [1] 28/2
misstatement [1] 28/23
moment [1] 37/16
Monday [1] 47/15
money [6] 3/23 4/9 5/9 26/18 26/21 46/20
more [9] 8/22 13/8 15/19 16/13 27/18 38/24
44/7 45/14 53/11
mortgage [29] 3/20 3/24 3/25 4/2 4/5 4/11
15/3 25/23 26/1 26/14 26/19 26/25 27/3 27/3
27/6 27/7 27/10 27/22 27/24 30/15 31/4 31/9
31/11 31/14 31/19 31/22 48/14 48/16 48/23
most [1] 43/6
motion [14] 9/13 11/7 13/16 15/16 17/7 17/17
17/20 20/9 20/10 21/12 33/22 33/25 34/25
36/6
motions [10] 2/22 7/21 10/9 13/3 17/24 18/10
34/6 34/19 34/25 43/23
move [5] 7/25 17/6 44/24 45/17 53/13
moving [1] 18/9
Mr [41] 2/14 7/25 8/1 8/2 9/15 11/9 11/25
12/3 12/7 13/5 13/6 13/22 15/24 16/20 16/24
18/13 21/10 22/1 22/20 25/13 26/9 27/9 27/18
28/10 30/13 30/19 30/25 33/15 35/3 36/13
38/10 38/19 39/19 42/24 45/5 49/2 49/10
50/18 51/5 51/19 53/20
Ms. [1] 40/5
Ms. Hearn [1] 40/5
much [3] 3/13 37/19 54/3
multiply [1] 43/4
must [1] 17/4
my [28] 2/19 2/24 4/16 5/4 7/22 9/22 10/1
10/11 11/6 15/15 17/17 22/2 22/23 24/17
28/16 31/2 33/13 34/3 34/18 35/3 42/17 45/18
45/19 46/3 46/5 47/21 51/19 52/6

## N

narrow [1] 32/13
narrowed [2] 9/20 23/7
narrowing [1] 53/13
National [1] 30/23
need [18] 17/9 17/14 21/14 29/22 39/3 39/16
39/17 39/22 40/23 41/5 43/16 47/5 47/10 50/7
50/19 51/14 53/3 53/13
needs [1] 45/11
negative [2] 11/18 12/6
never [2] 14/1 14/2
next [10] 17/6 19/9 21/18 21/23 22/9 23/11
23/18 31/23 32/4 34/13

**N**

nexus [1]  25/22
Nice [1]  2/13
night [1]  34/12
no [31]  1/3 3/14 6/13 8/14 9/15 11/15 13/10
13/18 13/18 13/25 15/4 15/11 16/2 16/4 18/2
18/11 18/18 19/13 19/13 24/23 28/19 30/10
36/12 36/15 40/18 43/13 48/25 49/17 51/10
53/4 53/15
nobody [1]  42/21
none [1]  15/4
nonjury [1]  18/6
nonpayment [1]  8/9
normal [1]  22/15
not [73]
note [5]  13/19 29/12 31/4 31/13 48/20
nothing [1]  52/12
notice [8]  13/14 14/22 14/22 38/21 39/2 39/5
51/8 51/11
noticed [2]  14/16 14/17
notified [1]  27/19
notwithstanding [2]  15/1 38/9
November [9]  17/21 38/2 41/23 42/8 42/12
50/9 50/25 51/1 54/3
November-December [3]  42/12 50/25 51/1
now [15]  9/6 11/6 13/21 15/23 16/17 17/6
17/8 21/14 30/25 32/7 35/13 41/2 41/17 42/17
51/5
number [9]  2/2 8/23 19/5 19/5 19/11 19/16
23/14 30/24 43/10
numerous [1]  4/10

**O**

oath [1]  19/6
objection [10]  20/12 23/9 24/22 24/23 24/24
25/14 48/2 48/6 48/21 48/25
obligation [1]  46/3
obligations [1]  42/18
obtain [1]  29/22
obtained [1]  22/14
Obviously [1]  34/11
occur [1]  20/20
occurred [2]  24/3 24/4
October [15]  1/9 17/8 38/4 38/5 39/1 39/9
40/19 41/10 41/11 41/20 42/2 47/13 47/17
47/19 51/4
October 11th [2]  47/17 47/19
October 14th [4]  40/19 41/10 41/11 41/20
October 26th [2]  38/5 39/1
October 27th [1]  51/4
October 28th [1]  39/9
October 3rd [1]  38/4
October 7th [2]  42/2 47/13
off [8]  17/24 21/8 21/13 41/6 41/22 44/17
44/19 51/2
offending [1]  5/24
offer [13]  10/2 10/12 11/10 11/16 12/5 12/10
12/16 12/18 13/12 13/14 13/19 41/13 52/5
offered [1]  48/21
office [3]  10/1 26/15 38/22
Official [2]  1/22 54/10
okay [21]  2/18 5/15 6/10 13/11 13/21 15/6
17/5 30/21 33/19 41/14 41/21 42/5 46/17 47/9
47/18 47/22 49/22 50/6 50/16 50/21 53/3
old [1]  27/2
once [3]  3/3 13/8 15/19
one [27]  2/21 8/4 9/7 10/19 16/13 18/14 19/5
19/5 19/23 22/9 23/18 27/6 28/8 28/9 34/1
35/20 36/8 40/8 40/22 46/1 51/13 53/19 53/19
53/23 53/23 53/24 53/24

one-hour [1]  36/8
only [5]  12/13 13/2 15/2 31/4 46/1
open [1]  20/25
opening [1]  34/16
operates [1]  27/1
operating [1]  21/4
opportunity [1]  46/22
opposing [3]  8/23 16/16 51/3
oral [2]  18/3 50/18
order [10]  14/18 16/6 16/7 16/11 16/12 16/14
20/9 32/11 33/23 50/16
ore [2]  11/7 13/16
original [7]  3/15 25/25 26/1 26/14 31/13
31/17 48/16
other [19]  9/7 14/3 17/23 23/14 23/15 27/19
32/1 35/21 40/4 40/5 40/7 41/4 42/18 44/24
45/5 50/5 50/24 52/14 52/17
others [1]  39/5
ought [3]  35/16 36/5 53/1
our [9]  20/9 20/12 25/22 26/2 26/14 26/15
27/13 27/23 29/7
out [21]  2/15 4/3 10/13 10/23 11/2 15/3 24/7
30/4 30/6 32/16 35/8 36/25 38/12 40/1 41/3
42/8 42/15 44/18 47/6 47/6 52/21
outlining [1]  20/5
Outside [1]  49/13
over [7]  32/8 38/15 42/20 45/7 51/6 52/22
53/24
overrule [9]  19/8 21/18 21/22 22/8 23/9
23/17 23/21 24/9 24/20
overruling [3]  24/10 24/22 24/22
owe [6]  3/13 4/9 5/9 5/13 5/14 26/21
owed [1]  29/10
owes [1]  26/18
owing [1]  7/10
own [6]  6/17 6/18 25/8 25/18 26/22 48/23
owned [2]  6/21 28/11
owner [1]  25/12
owns [2]  5/12 25/9

**P**

P.A [1]  2/3
package [1]  25/24
Page [1]  10/14
pages [1]  30/11
painful [2]  2/21 2/25
PALM [6]  1/2 1/8 1/17 1/22 47/13 48/19
pan [1]  44/18
paper [1]  16/15
paperless [1]  16/12
part [4]  7/17 22/12 22/24 29/11
participating [1]  16/5
particular [4]  25/11 26/19 26/21 52/25
particularly [1]  48/22
parties [6]  2/4 16/4 19/11 40/20 42/13 45/13
partitions [1]  21/24
partner [1]  33/4
PARTNERS [2]  1/8 2/3
party [11]  5/13 5/22 8/20 9/2 9/4 25/8 25/8
26/3 32/19 39/22 48/12
Pauline [3]  1/22 54/9 54/10
pay [2]  7/8 11/6
payable [1]  10/7
payments [1]  7/14
payoff [2]  27/14 30/22
pending [3]  10/9 18/10 20/9
people [14]  4/10 24/2 33/6 33/14 34/15 35/7
40/5 43/18 43/19 43/19 52/15 52/20 52/20
52/24
people's [1]  53/2
per [2]  11/5 12/13

period [1]  51/14
person [6]  19/4 19/6 23/16 33/2 38/25 52/1
perspective [2]  35/24 52/14
pessimistic [1]  43/3
phone [1]  8/23
pick [2]  43/9 43/11
Pierce [1]  1/22
Pierce/West [1]  1/22
PINSON [36]  1/4 1/16 2/2 2/7 2/14 8/1 8/2
9/15 11/25 12/3 12/7 13/5 13/22 15/24 16/21
16/24 18/13 22/1 22/20 22/20 26/9 27/9 27/18
28/10 30/13 30/19 30/23 30/25 35/3 36/14
38/19 42/24 45/5 49/10 51/19 53/20
Pinson's [1]  49/2
pits [1]  35/21
place [5]  17/21 32/8 38/21 53/19 53/23
placed [1]  14/23
places [1]  51/13
Plaintiff [22]  1/6 1/16 2/6 2/7 6/17 10/10
10/23 11/12 11/21 11/23 12/14 12/20 15/8
15/21 17/4 20/18 28/4 28/5 29/17 34/2 41/25
48/11
Plaintiff's [4]  15/2 15/16 17/20 36/11
Plaintiffs [1]  52/4
plate [1]  15/13
pleading [1]  15/12
pleadings [1]  13/17
please [6]  13/19 26/10 43/23 44/5 51/5 53/6
pled [6]  15/5 15/6 15/10 35/11 35/14 35/14
plenty [1]  47/2
plus [2]  9/25 10/4
point [8]  3/23 4/8 13/1 13/16 15/20 26/13
30/9 31/16
policies [4]  19/24 20/5 20/19 21/16
position [10]  9/16 9/22 12/10 13/23 14/12
21/5 25/22 28/17 34/9 35/20
possession [1]  42/1
possible [1]  17/25
possibly [2]  5/13 36/9
potential [2]  11/5 11/21
potentially [1]  40/20
power [1]  42/17
practice [1]  38/12
practices [3]  6/1 19/19 29/16
practices and [1]  19/19
precedence [1]  17/19
preceding [1]  19/20
prepare [1]  39/2
prepared [8]  10/12 17/23 22/10 34/24 40/16
44/9 44/11 45/13
present [1]  17/14
presented [1]  17/15
pretrial [1]  42/7
prevail [6]  11/10 11/17 11/22 12/4 12/5 45/18
prevails [2]  11/12 11/21
previous [1]  48/24
previously [1]  48/3
printed [1]  14/22
prior [2]  3/22 22/16
privilege [9]  20/14 25/21 26/1 26/12 27/11
27/15 28/25 29/7 30/3
privileged [1]  27/25
pro [5]  1/16 10/23 16/4 39/7 40/12
probably [5]  32/22 38/22 38/24 43/11 47/8
problem [10]  12/22 31/15 33/1 34/17 35/18
35/23 42/14 51/15 52/9 52/25
problems [7]  16/18 27/6 32/7 43/18 44/2
50/17 53/9
procedures [2]  20/13 20/19
proceeding [1]  27/17
proceedings [1]  54/7

**P**

process [5]  9/19 12/23 46/10 52/18 53/11
produce [6]  19/4 19/10 19/19 20/4 31/8 31/19
produced [2]  15/11 42/25
Producing [2]  25/5 25/16
production [10]  18/15 18/18 20/11 24/11 32/6 41/16 41/24 47/12 47/16 47/19
proffered [1]  15/8
prohibited [1]  16/4
proof [2]  28/4 44/14
properly [3]  2/16 38/21 49/20
property [2]  8/10 30/24
propound [1]  17/3
prosecute [2]  27/22 29/8
prosecuting [2]  25/23 27/24
protection [1]  33/23
protective [1]  20/9
protracted [1]  46/20
prove [7]  18/24 28/5 28/12 28/13 28/14 29/11 44/10
provide [2]  26/10 27/14
provided [2]  7/13 19/7
provides [1]  13/7
public [1]  48/19
pulling [1]  48/15
purpose [2]  22/12 53/12
put [7]  2/21 3/12 14/21 26/4 28/19 32/9 43/16
puts [1]  4/17

**Q**

qualify [1]  5/19
question [5]  9/15 12/2 32/18 40/13 40/14
questions [4]  40/13 40/15 43/16 53/16
quite [2]  10/9 50/23

**R**

raise [1]  27/18
rather [5]  4/18 18/16 31/13 35/1 46/20
Re [1]  30/22
reach [2]  37/25 50/16
read [2]  19/2 30/22
reading [2]  7/19 8/15
ready [9]  11/6 12/23 34/19 34/20 35/1 43/23 47/10 50/15 50/21
real [3]  12/22 32/7 35/5
really [9]  35/1 35/24 36/4 38/13 42/11 43/25 50/2 51/19 51/20
reason [1]  19/22
reasonable [1]  33/20
recall [1]  26/7
receipt [5]  14/20 15/22 17/4 27/12 37/20
receive [5]  11/13 14/5 14/11 16/8 21/15
received [11]  9/16 14/2 18/13 18/19 18/20 18/22 19/1 19/18 23/23 26/2 36/18
recent [1]  2/23
recite [2]  37/15 37/18
recognize [1]  2/6
recognized [1]  51/25
record [6]  8/14 10/1 48/4 48/19 48/20 54/7
records [1]  24/14
recoverable [1]  45/19
recovery [6]  10/17 10/19 11/13 12/14 47/1 47/8
redemption [1]  27/14
reduced [1]  12/14
refer [1]  50/8
reference [3]  20/6 20/9 22/11
referenced [1]  23/13
referral [1]  25/24
referred [3]  8/13 24/14 31/20

referring [1]  34/14
refinance [1]  4/6
reflect [1]  36/4
regard [4]  20/12 33/6 47/7 48/7
regarding [1]  29/9
reinstatement [1]  30/1
related [3]  3/20 22/16 36/24
relating [1]  19/24
relax [1]  34/19
relevance [1]  22/17
relevant [6]  19/16 20/1 22/21 23/6 28/20 28/21
relied [1]  26/10
relief [5]  10/25 11/2 11/3 11/3 13/7
relying [2]  29/23 44/7
remanded [1]  45/24
remember [4]  23/12 28/8 41/25 43/13
repayment [1]  30/1
report [3]  22/13 22/15 22/25
reporter [6]  1/22 39/5 45/1 53/24 54/10 54/11
reporting [1]  22/14
reports [2]  21/20 22/10
represent [1]  26/15
representation [2]  26/2 28/6
representative [6]  32/22 32/25 33/11 33/18 39/20 40/1
representative's [1]  53/21
represented [1]  8/7
reprimanded [1]  24/6
request [24]  4/16 4/24 9/14 13/24 14/5 14/16 14/23 15/2 15/19 17/3 18/15 18/18 21/23 23/8 23/10 24/11 27/13 27/24 31/2 31/12 32/5 35/13 41/16 47/14
requested [8]  3/10 14/20 18/23 19/24 21/16 23/19 25/2 33/14
requesting [2]  5/11 27/13
requests [4]  4/22 10/25 16/20 24/25
require [5]  5/22 9/22 15/21 21/17 31/7
required [3]  14/18 16/23 16/25
research [1]  49/20
resolve [2]  52/7 52/21
resolved [1]  10/10
resources [2]  32/11 32/12
respect [3]  20/11 44/5 53/8
respects [1]  35/21
respond [4]  15/21 17/4 17/5 41/16
responded [3]  4/23 5/15 27/16
responding [1]  27/23
response [5]  4/16 9/15 23/4 23/8 35/1
responses [3]  9/23 36/18 53/17
responsible [1]  33/5
result [2]  8/9 37/3
retained [5]  22/11 25/23 26/15 27/21 29/10
retainer [1]  1/17
retention [1]  26/14
return [2]  14/20 16/25
reversal [1]  46/2
reversed [1]  45/24
review [1]  7/22
right [34]  2/20 4/15 8/6 8/10 8/18 9/4 9/6 9/8 11/6 13/18 14/25 17/3 18/8 20/18 20/21 21/1 21/6 21/7 21/11 23/4 27/4 32/3 32/7 32/24 33/21 37/25 39/13 41/22 42/5 44/15 44/15 46/18 49/22 49/24
risk [1]  52/11
risks [1]  52/18
Road [1]  1/17
ROBIN [1]  1/23
ROSENBERG [1]  1/23
Roughly [1]  43/2

rounded [1]  10/6
rule [3]  10/2 12/17 19/2
ruling [2]  11/2 15/15
run [4]  25/4 52/2 52/11 52/18
rushing [1]  17/22

**S**

safe [1]  27/4
said [6]  3/7 5/3 6/14 23/24 33/15 47/13
sale [1]  8/9
salt [1]  52/6
same [3]  10/18 16/24 41/14
say [25]  4/10 5/5 6/5 8/24 13/6 14/1 14/3 22/20 24/18 30/14 30/16 37/18 44/5 44/9 45/23 46/14 46/16 46/19 47/17 48/9 50/15 50/18 50/25 52/15 52/23
saying [11]  4/23 6/2 6/20 7/3 7/16 26/9 28/9 28/25 31/5 48/23 52/9
says [9]  5/19 25/8 26/22 30/22 35/11 47/8 51/18 51/19 52/12
scenario [1]  11/20
scheduled [2]  18/3 50/19
scheduling [1]  53/6
SCHULIS [11]  1/18 2/11 11/9 13/6 21/10 23/15 38/11 39/19 50/18 51/5
se [5]  1/16 10/23 16/4 39/7 40/12
second [8]  8/15 9/11 10/24 15/14 15/23 48/4 49/2 49/6
Section [4]  3/11 10/22 12/9 12/19
Security [1]  23/14
see [17]  2/13 3/1 8/1 15/10 20/19 22/20 23/19 24/16 27/10 28/23 30/12 31/16 37/25 51/17 52/7 53/17 54/3
seek [3]  15/2 32/14 36/19
seeking [2]  15/8 36/23
seems [2]  17/10 36/8
seen [2]  52/4 52/4
seizure [1]  8/10
select [1]  43/17
sending [2]  26/11 37/4
sense [6]  9/9 23/3 32/9 36/22 41/7 50/4
sent [16]  3/21 4/22 4/24 5/24 6/15 6/18 23/1 23/2 23/8 25/7 25/24 26/7 27/23 33/1 48/10 48/12
serve [7]  2/17 3/5 16/22 20/15 39/3 40/2 53/12
served [2]  14/17 14/17
Service [1]  11/1
services [1]  7/13
serving [1]  13/14
session [1]  53/24
set [8]  17/8 17/25 32/17 39/21 39/23 42/7 50/14 50/15
settle [1]  32/10
settling [1]  23/20
seven [1]  43/11
several [1]  4/22
shaping [1]  36/8
she [1]  51/7
sheet [1]  16/12
short [5]  4/14 9/19 15/20 39/25 43/11
should [7]  22/22 34/18 38/3 40/18 41/25 42/4 43/6
shouldn't [1]  14/9
show [2]  5/12 31/11
shows [1]  29/4
Sibley [1]  10/25
sick [2]  14/3 43/12
side [5]  41/20 50/5 52/14 52/17 52/19
sides [1]  41/14
signature [3]  16/22 16/25 54/11

**S**

signed [4]  23/25 23/25 24/2 24/4
significant [2]  12/24 13/1
signing [1]  33/6
simple [1]  47/9
simplify [3]  9/19 10/7 10/19
simplifying [1]  11/4
simply [2]  8/21 32/10
since [2]  11/16 15/3
sir [8]  4/3 13/10 13/25 14/13 16/4 17/1 24/11
53/4
sit [4]  3/2 34/18 43/22 46/12
sits [1]  43/14
sitting [1]  17/22
situation [1]  35/9
situations [1]  35/7
six [3]  34/2 43/10 52/20
so [33]  3/1 4/13 4/24 6/20 7/25 8/2 10/10 10/23
11/4 11/7 11/17 19/21 20/17 20/19 24/17
27/21 27/25 28/12 29/17 30/24 34/17 35/12
37/20 37/20 40/23 42/16 42/19 45/9 45/9
49/20 50/23 51/25 52/2
Social [1]  23/14
sold [3]  26/24 30/15 31/6
solve [2]  52/9 52/10
some [7]  3/23 4/8 14/3 31/16 32/1 34/14
37/25
somebody [7]  4/9 11/9 26/25 30/5 32/17
43/12 43/25
someone [7]  5/11 7/7 7/8 7/14 11/17 40/12
51/18
something [11]  15/24 16/2 16/16 18/24 22/4
22/13 24/18 28/2 36/15 44/17 46/7
sometimes [2]  35/23 42/14
sorry [1]  23/3
sought [1]  15/7
sound [3]  13/5 39/9 44/3
sounds [2]  12/22 36/3
SOUTHERN [2]  1/1 10/14
specific [2]  20/14 50/2
specifically [1]  11/2 48/7
speed [1]  47/6
speedy [2]  42/15
spent [1]  34/8
stand [1]  2/25
standard [1]  22/25
standing [2]  27/18 29/12
start [2]  18/16 18/18
started [1]  28/8
State [1]  27/17
stated [1]  3/21
statement [6]  28/10 28/14 28/24 29/18 29/20
30/22
statements [1]  34/16
states [4]  1/1 1/12 8/21 8/24
stating [2]  3/22 6/18
status [2]  1/11 8/8
statute [3]  10/13 11/17 13/7
statutory [3]  36/4 44/22 49/15
sticking [1]  36/14
still [4]  23/1 27/21 33/7 33/15
Stipes [3]  1/22 54/9 54/10
stipulate [2]  10/11 28/17
stop [6]  9/8 13/18 16/17 34/24 38/3 43/22
stops [1]  38/5
straight [1]  4/25
strict [1]  21/4
stuff [1]  43/20
submit [2]  32/14 47/22
submitting [1]  40/17

subsequent [1]  5/18
such [1]  51/10
sued [1]  27/20
suffer [1]  14/9
suggested [1]  36/15
suggesting [1]  41/9
suggestion [2]  34/18 54/2
suit [1]  19/12
suitable [1]  45/13
Suite [1]  1/20
summarize [1]  53/8
summons [1]  10/5
supplement [1]  36/20
support [1]  26/17
supports [2]  23/22 28/24
supposedly [1]  48/23
Supreme [1]  10/16
sure [10]  3/8 4/20 13/22 16/18 16/20 30/17
40/11 45/12 46/16 52/23
suspect [3]  40/4 46/14 53/21
suspicion [1]  46/5
sustain [2]  23/9 51/21
sustaining [2]  24/23 24/24
swoop [1]  40/8

**T**

table [3]  17/24 21/9 21/13
take [22]  5/8 8/11 8/12 9/13 13/9 17/19 18/14
32/10 35/15 37/18 40/6 42/23 43/3 44/12 46/8
46/15 46/19 51/25 52/6 52/21 53/20 53/22
taken [2]  12/10 28/16
takes [4]  9/22 10/23 17/24 43/8
taking [3]  7/20 33/10 35/5
talk [5]  42/6 46/16 46/22 50/7 53/3
talking [4]  40/5 43/7 44/25 45/6
Tampa [5]  1/20 38/12 38/21 39/8 45/7
teach [1]  52/16
telephone [3]  9/2 24/13 51/5
tell [11]  5/10 7/8 34/3 34/4 37/17 37/18 38/10
42/10 43/2 44/2 50/12
tells [1]  25/18
tempted [1]  52/2
tender [1]  11/14
tenus [2]  11/7 13/16
term [1]  26/7
than [9]  4/18 27/18 31/13 35/1 40/19 44/7
46/20 52/5 53/12
thank [7]  18/9 25/1 47/20 51/8 53/4 53/5 54/3
Thanksgiving [1]  42/20
that [273]
their [12]  8/23 11/19 19/20 19/24 21/2 24/15
31/5 38/22 38/25 40/15 46/17 52/21
them [38]  3/12 4/9 4/18 4/18 4/21 4/24 9/2
9/5 10/10 11/24 14/1 14/2 15/20 16/25 17/4
18/14 19/3 22/4 23/20 24/7 26/15 31/11 35/11
37/4 37/15 37/18 38/21 39/4 39/4 39/20 43/4
45/25 46/16 47/14 47/22 50/3 52/16 52/21
themselves [1]  29/11
then [5]  20/18 21/1 23/2 42/21 44/23
there [44]  2/16 3/2 3/4 3/7 5/18 6/14 9/7 9/13
9/14 9/14 9/15 10/9 10/16 11/16 11/19 12/5
12/16 15/4 15/12 22/24 23/22 24/5 25/14 27/4
29/15 34/14 34/14 34/17 35/11 35/13 38/23
40/5 41/4 42/9 42/11 43/13 45/17 46/1 46/12
46/23 48/6 51/10 51/20 51/24
there's [2]  22/23 47/2
Thereupon [1]  54/4
these [18]  14/9 17/13 23/5 24/24 25/20
27/20 33/14 40/12 41/25 45/7 49/25 51/2
51/24 52/15 52/22 52/24 52/25
they [107]

They'd [1]  38/22
thing [10]  2/23 16/24 23/11 31/23 32/5 35/6
35/22 40/22 46/13 51/10
things [13]  14/4 14/9 17/12 17/23 20/1 34/14
34/15 35/20 40/13 45/6 50/24 51/12 51/24
think [25]  3/7 15/21 29/10 30/17 34/17 34/22
35/7 35/16 40/16 40/18 43/7 43/16 43/21
44/16 45/3 45/14 45/15 46/7 46/21 49/11
49/17 49/25 52/8 53/1 53/18
thinking [3]  17/22 19/23 49/11
third [2]  26/3 48/11
this [86]
those [16]  5/21 9/3 15/10 17/24 22/1 24/2
27/4 27/19 27/22 34/9 37/7 45/3 46/6 47/23
50/23 52/18
thought [3]  7/20 20/16 35/5
thousand [1]  11/5 44/23 46/9
threatening [2]  8/9 8/11
three [5]  5/15 19/16 43/4 43/8 51/14
through [2]  12/18 53/2
tight [3]  39/7 41/8 41/9
time [21]  13/2 13/20 16/13 18/14 34/8 36/17
36/19 39/6 39/18 39/19 39/25 40/22 43/8
43/15 46/20 51/13 52/16 52/21 53/4 53/11
53/19
today [9]  10/7 11/14 15/18 17/2 38/4 42/24
44/25 50/7 53/3
together [2]  17/16 53/6
tomorrow [1]  47/14
too [2]  39/23 50/20
took [2]  9/16 15/3
top [3]  30/13 30/19 42/16
torque [1]  2/24
totally [1]  42/15
tough [1]  40/12
tracking [1]  27/7
training [1]  19/25
transcript [2]  45/21 54/6
transcripts [1]  45/1
trial [37]  11/11 11/12 11/18 11/21 11/22
12/16 12/23 13/3 17/8 17/14 17/21 18/6 18/7
18/10 18/12 34/6 34/10 34/19 34/20 34/21
34/23 35/2 35/3 36/8 36/9 38/2 41/13 41/23
42/15 42/19 43/15 43/23 45/13 47/11 50/16
50/22 50/23
tried [1]  52/9
trouble [1]  7/19
true [1]  3/7
try [4]  39/11 42/20 42/23 51/14
trying [4]  4/3 5/7 7/22 32/19
Tuesday [2]  47/17 47/19
turn [1]  25/13
twice [1]  10/18
two [20]  2/16 3/4 4/13 5/18 9/21 10/18 17/11
17/24 18/3 19/11 23/7 27/20 30/5 30/16 43/8
46/23 46/24 48/12 51/13 52/22

**U**

U.S [3]  14/18 14/21 14/24
U.S.C [1]  3/10
unavailability [1]  51/9
under [18]  3/10 3/14 5/22 7/4 7/6 9/2 10/13
10/22 10/25 11/3 11/20 12/9 12/12 12/17
12/19 16/3 16/8 19/6
understand [13]  2/16 3/4 3/9 3/15 5/16 13/22
26/9 27/9 29/17 30/25 34/22 36/7 37/23
understanding [2]  21/10 24/9
understood [2]  28/9 36/13
Undoubtedly [1]  29/14
unduly [1]  43/3
UNITED [2]  1/1 1/12

## U

unless [1] 10/22
until [2] 5/23 47/15
up [16] 2/14 3/1 3/16 10/6 10/20 12/9 24/18
26/23 30/13 34/13 34/25 36/8 38/24 39/23
40/21 47/5
uploaded [1] 14/22
upon [4] 26/10 27/12 29/23 39/3
upset [1] 51/22
urge [1] 51/16
us [4] 8/22 21/2 27/23 52/10
use [2] 9/4 38/22
used [1] 8/25
usually [1] 43/3

## V

valid [1] 11/25
validate [2] 5/11 44/13
validated [2] 5/23 5/25
validating [1] 6/3
validation [10] 3/10 3/14 4/16 4/22 4/24 5/3
5/5 5/6 23/8 27/13
validity [1] 29/9
venire [1] 43/17
verdict [2] 12/12 12/19
verification [1] 30/2
versus [4] 2/2 10/14 10/25 30/23
very [5] 34/5 41/9 43/6 53/15 54/3
view [4] 14/8 14/14 46/17 48/13
violated [2] 5/25 6/1
violates [1] 7/1
violating [1] 24/6
violation [4] 6/2 23/24 24/3 29/16
violations [4] 9/22 9/24 19/25 46/24

## W

Wait [1] 28/19
waive [1] 39/19
walk [1] 35/8
want [50] 3/8 5/8 9/12 12/13 13/9 13/22 14/5
16/20 16/24 17/13 17/13 17/22 17/23 19/17
20/4 20/21 22/20 24/16 24/24 26/4 30/12
30/25 31/19 32/17 32/18 32/21 34/21 34/24
34/24 35/4 40/16 42/20 42/21 42/22 43/11
43/17 43/21 43/22 43/25 44/16 45/3 46/7
46/21 50/20 51/16 51/25 52/6 53/15 53/20
53/22
wanted [3] 5/5 9/8 24/5
wants [4] 27/10 28/23 36/7 42/21
was [41] 3/7 3/21 4/3 4/6 4/23 6/17 9/14 9/15
9/16 10/5 10/15 14/22 19/6 19/23 21/5 23/25
23/25 24/5 24/16 25/23 26/6 26/24 27/7 27/17
27/18 28/9 28/10 28/15 30/3 31/6 32/5 32/19
33/13 36/17 45/21 45/22 46/2 46/9 46/17 49/7
54/4
wasn't [1] 23/24
way [3] 6/6 26/25 38/15
we [86]
we'd [1] 34/12
We'll [1] 20/23
Wednesday [2] 38/5 39/1
weeks [1] 38/6
well [5] 7/9 14/22 19/14 19/21 20/10
were [19] 6/25 7/3 7/16 7/20 10/6 14/3 14/16
14/17 14/17 14/17 14/21 14/23 23/2 24/8
27/23 33/15 37/9 48/18 50/4
weren't [3] 3/22 7/1 24/4
WEST [4] 1/2 1/8 1/17 1/22
Westwood [1] 1/17
what [91]

whatever [6] 20/4 28/5 28/15 29/4 34/13
45/16
when [14] 7/14 8/21 15/24 16/2 16/6 23/2
24/21 34/12 34/20 38/3 40/12 46/7 50/16 52/8
where [17] 6/17 8/10 8/14 13/21 21/2 26/22
30/14 30/16 35/7 38/10 38/19 39/25 46/1
51/14 52/4 53/17 53/25
whether [6] 7/9 9/15 45/9 45/15 46/18 51/20
which [21] 9/21 10/15 10/16 10/19 10/25
11/5 11/13 14/18 15/4 15/20 19/11 19/24 20/1
20/10 20/13 22/11 22/14 23/6 23/24 27/18
33/4
While [1] 53/12
who [25] 4/2 4/4 5/12 16/18 22/20 25/8 25/18
27/7 32/18 32/21 33/1 33/2 33/25 40/23 40/24
41/1 41/5 43/14 43/17 43/18 43/19 43/25
43/25 46/17 52/15
whoever [1] 38/25
whole [4] 11/4 35/6 43/17 52/12
whom [1] 27/8
why [6] 2/6 7/24 20/16 22/1 22/5 22/21
will [47] 3/3 4/14 13/13 13/20 15/18 15/21
16/22 17/5 17/20 18/5 19/2 21/12 22/8 23/17
23/21 24/9 24/20 26/9 27/7 29/13 31/7 32/15
34/15 34/21 34/22 37/17 37/18 37/22 40/5
41/11 42/17 42/23 43/15 44/12 45/12 45/16
47/14 48/6 48/13 50/12 50/20 50/22 51/7 51/8
51/12 53/21 54/3
willful [1] 23/2
willfulness [2] 22/24 22/24
willing [8] 11/6 11/14 27/18 28/17 35/4 40/6
44/4 44/5
win [1] 12/1
wins [2] 12/15 12/23
wish [2] 35/17 49/24
withdraw [5] 9/13 20/22 20/23 20/24 21/12
withdrawing [1] 21/2
withdrawn [2] 15/17 21/1
within [7] 15/13 15/18 15/22 17/2 17/3 19/22
30/2
without [3] 6/3 51/15 51/15
witness [3] 36/11 40/17 44/1
witnesses [7] 36/12 36/16 40/23 41/1 41/4
41/6 41/12
wondering [1] 51/20
work [7] 17/16 18/5 38/8 39/11 50/19 51/12
53/6
works [1] 40/3
world [1] 35/8
worse [1] 27/4
worst [1] 52/1
worth [2] 35/24 49/11
would [61]
wouldn't [2] 22/5 32/9
wrong [5] 3/6 5/21 7/16 28/9 46/18
wrote [3] 3/12 5/1 31/5

## Y

years [2] 19/21 27/3
yes [26] 2/24 3/19 4/12 5/2 6/7 6/9 6/23 8/5
8/17 14/13 16/15 17/1 24/11 30/8 32/1 37/5
37/24 38/14 38/16 40/25 41/18 48/15 49/4
49/9 50/10 51/1
you [349]
you'll [1] 53/25
your [75]
yourself [1] 52/7
yourselves [1] 34/25

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-80009-CIV-HURLEY

JOHN PINSON,

      **Plaintiff,**

vs.

**ALBERTELLI LAW**
**PARTNERS, LLC, et al,**              **"Exhibit B"**

      **Defendants.**

_____/

### ORDER ON PENDING MOTIONS

    **THIS CAUSE** is before the Court upon various discovery-related motions.  A hearing was

held on October 3, 2016, at which the Court made certain rulings and set forth its rational, all of

which is  incorporated by reference in this order.

    Accordingly, it is **ORDERED** and **ADJUDGED:**

1.    Plaintiff's motion to withdraw or amend deemed admissions [DE 105] is

    **GRANTED.** Defendants may propound, within 5 days of this order, a new request

    for admissions, which shall be sent to the Plaintiff by Federal Express, signed receipt

    required. The Plaintiff shall respond, by Federal Express, within 5 days of receipt of

    the request.

2.    Plaintiff's motions for a continuance [DE Nos. 119 & 122] are **GRANTED**. The

1

case shall be set for trial on the Nov.-Dec. 2016 trial calendar. A separate confirmatory order shall be issued.

3.   Plaintiff's motions to compel responses to interrogatories [DE Nos. 106, 115, 120 & 124] are **DENIED**.

4.   Plaintiff's motions to compel Defendants to respond to Plaintiff's first and second requests for production [DE Nos. 116 & 118] are **DENIED**.  However, the Defendants shall produce certified copies of documents evidencing Plaintiff's underlying mortgage obligation by October 11, 2016.

5.   Defendants' motion for a protective order against further production of documents [DE 108] is **DENIED** as moot.

6.   Rather than propound additional interrogatories, the Parties must utilize depositions for further discovery.

7.   The Parties' motions in limine [DE Nos. 109, 114, 123, 125, 126, 127, 128, 129, & 130] are **DENIED** without prejudice to renewal at the time of trial.

8.   The following deadlines are established:

(a)   Defendants shall produce all documents evidencing the underlying mortgage obligation of Plaintiff by October 11, 2016.

(b)   Parties shall file their witness and exhibit lists by October 14, 2016.

(c)    Discovery shall be completed by October 28, 2016.

(d)   Motions for summary judgment shall be filed no later than October 28, 2016.

2

**DONE and SIGNED** in Chambers at West Palm Beach, Florida this 5th day of October, 2016.

Daniel T. K. Hurley
United States District Judge

copies provided to all counsel

For updated court information, visit unofficial Web site
at http://us.geocities.com/uscts

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

**JOHN PINSON**

      Plaintiff,

vs.                                 **Case No.: 9:14-cv-80009-KLR**

**ALBERTELLI LAW PARTNERS LLC,**
a Florida LLC; and

                                           **"Exhibit C"**

**JAMES E. ALBERTELLI P.A.**
A Florida Professional Association,

      Defendant.

_____/

### DEFENDANT'S RENEWED REQUEST FOR ADMISSIONS TO PLAINTIFF

COMES NOW Defendant, JAMES E. ALBERTELLI P.A. d/b/a ALBERTELLI LAW and successor by merger to ALBERTELLI LAW PARTNERS LLC, (hereinafter "Albertelli Law"), requests, pursuant to Rule 36 of the Federal Rules of Civil Procedure, that Plaintiff, JOHN PINSON, admit the truth of the following matters and the genuineness of the documents described in the request within the time prescribed by the governing Rule:

1.    Plaintiff, JOHN PINSON a/k/a JOHN D. PINSON a/k/a JOHN DAVID PINSON, executed and delivered a Promissory Note ("Note") dated December 23, 2005 and Plaintiff, executed and delivered a Mortgage ("Mortgage") dated December 23, 2005 securing the payment of the Note. The Mortgage was recorded on January 10, 2006 in Official Records Book 19781 at Page 360 of the Public Records of Palm Beach County, Florida and mortgaged the real and personal property located at 526 Westwood Road, West Palm Beach, FL 33401.

2.    The abovementioned Note and Mortgage and valid and were executed by the Plaintiff.

1

3.      Plaintiff has defaulted on the payment of the amounts due under the Note and Mortgage and that the payment due for January 1, 2012, and all subsequent payments due under the Note and Mortgage have not been made.

4.      Plaintiff is obligated to pay the full amounts due under the Note and Mortgage to the mortgage holder as a result of the Plaintiff's breach.

5.      Plaintiff continues to reside in the mortgaged residence despite the non-payment of the mortgage.

6.      Subsequent to the abovementioned default, Plaintiff sent Defendant debt validation requests.

7.      Plaintiff contacted the Defendant and requested validation of the debt, including loan payoff figures and loan reinstatement figures.

8.      Plaintiff invited and anticipated a response to his inquiry, including loan payoff figures and loan reinstatement figures.

9.      The alleged communications that were sent in this case are related to the abovementioned mortgage and note and the default thereupon.

10.     The alleged communications sent by the Defendant in this case were required responses to debt validation requests.

11.     Plaintiffs received monthly accounts statements regarding their mortgage on a monthly basis without experiencing damages or emotional distress since the December 23, 2005 mortgage origination.

12.     Plaintiff has incurred no actual damages by the receipt of monthly accounts statements regarding the abovementioned mortgage.

13.     Plaintiff has incurred no actual damages as a result of the receipt of the responses to the Plaintiff's debt validation requests (the alleged communications).

2

14. Plaintiff was not emotionally distressed upon as a result of the receipt of responses to the Plaintiff's debt validation requests (the alleged communications).

Respectfully submitted,

ALBERTELLI LAW

Submitted: October 14, 2016

/s/ Matthew L. Schulis, Esq.
Matthew L. Schulis, Esq.
FBN: 57116
mschulis@albertellilaw.com
ALBERTELLI LAW
5404 Cypress Center Drive
Suite 300
Tampa, Florida 33609
Telephone: 813-221-4743 x2621
Facsimile: 813-221-9171

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Defendant's Renewed Request for Admissions was furnished via Fed Ex (Tracking No.: 7774 7222 2905) and email/ eServe this 14th day of October, 2016 to the attached service list.

By: /s/ Matthew L. Schulis
Matthew L. Schulis, Esquire
Florida Bar Number: 57116
mschulis@albertellilaw.com
ALBERTELLI LAW
P.O. Box 23028
Tampa, FL 33623
Tel: (813) 221-4743x 2621
Fax: (813) 221-9171
eService: servealaw@albertellilaw.com

3